# FOR PUBLICATION

FILED & ENTERED

OCT 16 2013

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY moser     DEPUTY CLERK

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

RIVERSIDE DIVISION

CITY OF SAN BERNARDINO CALIFORNIA ,

Defendant

Case No.: RS 6: 12-bk-28006 MJ

OPINION

## CITY OF SAN BERNARDINO ELIGIBILITY OPINION

A major creditor of the City of San Bernardino, the California Public Employee Retirement System, objected to the eligibility of the City to file a petition under chapter 9[1] of the Bankruptcy Code on the grounds that it did not desire to effect a plan of adjustment and did not file the petition in good faith. The Court recognizes that the City was not a poster child in organization and prepetition planning before it entered into the complex world of chapter 9 reorganization. The Court also acknowledges that the

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1521. "Rule" references are to the Federal Rules of Bankruptcy Procedure and "Civil Rules" references are to the Federal Rules of Civil Procedure.

1   City got off to a slow start in getting its financial records in order and adopting an

2   interim balanced budget to bridge the gap from the petition date to eventual plan of

3   adjustment.  However, despite the untidy disarray of the City's finances and the early

4   lack of direction toward long-term resolution of its admitted financial distress, in this

5   summary judgment proceeding, the Court overrules the CalPERS objections on their

6   limited stated grounds and finds the City eligible to remain in its chapter 9 proceeding.

7   The factual and legal basis for the Court's decision follows.[2]

8   **Factual Background**

9   The Great Recession and the burst of the housing bubble in 2007 negatively

10   affected the City of San Bernardino like many other cities in California and the entire

11   country.  The drop in housing prices and increase in foreclosures of single family

12   residences resulted in significantly lower property tax revenues, a prime source of

13   revenue for California cities.  The City was particularly hard hit by these phenomena

14   because, due to the cheaper housing and available financing, an influx of people moved

15   to the Inland Empire during the boom, and the consequent bust led to unprecedented

16   foreclosures, one of the highest rates in the country.  Along with the foreclosures came

17   substantial unemployment, as much of the population had been employed in the

18   housing industry, from construction workers to real estate realtors to mortgage brokers,

19   _____

20   [2] This opinion is intended to supplement the oral ruling made by this Court on the summary judgment motion on August 28, 2013, and the docketed Statement of Uncontroverted Facts which supports the order granting the summary judgment.  All three sources are meant to articulate the reasons the Court granted eligibility.

21

1   resulting in a significant drop in household income.[3]  This decline led to less consumer

2   sales and consequently smaller sales tax revenues, another major component of the

3   City's revenues.

4        The City was impacted not only on the revenue side but also by escalating

5   expenses.  The influx of population created a greater demand for public services, from

6   public safety (police and fire) to more mundane matters such as street repair and

7   infrastructure maintenance.[4]  City employee salaries and benefits, as in most

8   municipalities, make up 75% of the City's budget and, as the need for services grew in

9   the boom, so did the number of City employees and consequent expenses.  Adding to

10   the costs were particularly lucrative retirement benefits which the Common Council had

11   negotiated in the collective bargaining agreements with the City's seven unions.

12        The City participates in the California Public Employee Retirement System

13   (CalPERS), a state-run retirement system, which is funded by a combination of an

14   employer share and an employee share.[5]  Until 2011, the City, unlike most California

15   cities, paid not only the employer share but also the employee share to CalPERS, making

16   the City's contributions to retirement rate as a percentage of payroll 39% for safety and

17   25% for other employees.  Along with the current CalPERS obligations were substantial

18   unfunded liabilities to the pension funds based on actuarial tables, past performance of

---

19   [3] The City's unemployment rate was 16.9% as of June 2012, more than double the national rate of 8.2%.

[4] The City's population of approximately 213,000 is spread over 59.3 square miles, compounding the difficulty in providing adequate services.

20   [5] CalPERS has set the City's employer share at 30% for safety employees and 17% for all others, and the employee share at 9% for safety and 8% for all others.

21

1   the funds, retirement age and other contractual factors.  Each year the City must also

2   pay a portion of the unfunded liabilities to CalPERS.[6]

3          Along with the CalPERS obligations, the City has promised its retirees an annual

4   2% cost of living adjustment regardless of the Consumer Price Index or the state of the

5   retirement funds.  In addition, the City's retirement plans also provide for another post-

6   employment benefit consisting of retiree medical care.  Because the City's employees

7   are eligible to retire at either age 50 (safety) or 55 (other employees), many employees

8   retire before they are eligible for Medicare, creating a significant cost for the City.  The

9   cost of this perk has not been funded through the working life of the employees and the

10  City has little money set aside to fund these benefits, resulting in another substantial

11  unfunded liability.

12         As the economy worsened and revenues decreased, the City took some stop gap

13  measures to try to stop the bleeding.  It implemented a hiring freeze and down-sized

14  departments, reducing the workforce by 20%.  It negotiated and imposed concessions

15  on its unions, saving about $10 million per year.[7]  It exhausted its general fund reserves

16  and sold excess assets to provide cash to fund ongoing operations.  While the financial

17  crisis deepened, the City's finance department, either because it was understaffed or

18  because it was incompetent (or both), fell behind in providing basic accounting records

19  _____

20  [6] It is the Court's understanding that most cities in California have unfunded liabilities to CalPERS.
[7] One negotiated or imposed term was that beginning with new employees in 2011, employees would pay the employee share to CalPERS.

21

1   for the City, including bank reconciliations.  The financial picture for the City was blurred

2   at best and the City was sliding toward severe cash flow problems.

3          A major change in City personnel from late December 2011 through May 2012

4   awakened the Common Council to the full import of the impending financial crisis.  The

5   City's former Director of Finance retired at the end of December 2011 and the City

6   Manager resigned effective May 1, 2012.  The new Director of Finance, James P.

7   Simpson, began analyzing the City's financial condition in May 2012, while attempting to

8   formulate a budget for 2012-13.  In doing so, he discovered the bookkeeping woes

9   described above and even worse.  He determined that the budget projection for 2012-

10  13 resulted in a $45.9 million cash deficit with no general fund reserves; the cash

11  balances for the prior two fiscal years had been overstated; the beginning cash deficit

12  for the next fiscal year was over $18.2 million; and the City did not have enough

13  unrestricted cash or reserves to pay its current financial obligations due and those

14  obligations to become due beginning in July 2012, and continuing indefinitely.

15         On July 9, 2012, the City's Department of Finance issued a report "San Bernardino

16  Budgetary Analysis and Recommendations for Budget Stabilization" (the Budget Report)

17  which was presented to the Common Council at a publicly noticed meeting on July 10,

18  2012.  The presentation of the Budget Report on July 10, 2012, was the first

19

20

21

1  comprehensive report to the Common Council regarding the fiscal crisis facing the City.[8]

2  The Common Council addressed the Budget Report at three meetings in July 2012.  At

3  meetings on July 16 and 18, 2012, the Common Council adopted Resolutions 2012-205

4  and 2012-206 which (1) declared a fiscal emergency and (2) authorized the City Attorney

5  to file a chapter 9 petition in the bankruptcy court and the City Attorney and other

6  management staff to take all steps necessary to prosecute the chapter 9 proceeding.

7  Compliant with these resolutions, on August 1, 2012, the City filed its petition for

8  chapter 9 in the Central District of California, Riverside Division.[9]

9  **Procedural Background in Chapter 9**

10      The City filed its Statement of Qualifications on August 13, 2013, and its

11  Amended Statement of Qualifications on August 31, 2013.[10]  Based on a deadline set by

12  the Court, only two parties filed objections to eligibility:  CalPERS and the San

13  Bernardino Public Employees Association (SBPEA).[11]  CalPERS objected on the grounds

14

---

15  [8] CalPERS has argued and for the purposes of this opinion the Court does acknowledge that earlier reports of impending financial doom were presented to the City by its consultants as early as 2007 and that some of these reports contained suggested actions which the City could take to stave off financial crisis.  The City did not take

16  many of the recommended steps. As a consequence, the Common Council was not totally unaware of the unstable fiscal condition of the City.

17  [9] The August 1, 2012 filing date was earlier than the City staff and its bankruptcy counsel had anticipated filing. The initial projected filing date was late August.  The earlier filing date was precipitated by the City's belief that a party which held a stipulated civil rights judgment against the City was seeking a writ from the federal district court

18  which would allow it to execute on the City's bank account.  The City asserted this belief as an alternative ground to meet eligibility under § 109(c)(5)(D).  However since no party objected to eligibility under § 109(c)(5) and the City also qualified under § 109(c)(5)(C), the Court need not determine whether this criteria was met.  Suffice it to

19  say, the belief did lead to an earlier filing date.
[10] The only difference between the two statements was the addition in the Amended Statement of the alternative ground for § 109(c)(5) eligibility under subpart (D).

20  [11] Several individual interested parties filed "objections" with the court but none of these individual objections stated an opposition to the grounds for eligibility set forth in § 109(c).

21

1  that the City did not "desire to effect a plan to adjust debts" as required under § 109(c)

2  (4) and that the City did not file the petition in good faith, which is a ground for

3  dismissal under § 921(c).  SBPEA objected on the basis that the City was not authorized

4  by state law to file a chapter 9 because it had not complied with Assembly Bill 506 (AB

5  506) as mandated by § 109(c)(2) [12] and because the City was not insolvent as required

6  by § 109(c)(3).  SBPEA also asserted the petition was not filed in good faith.  Subsequent

7  to the objection deadline, the Court held a status conference to schedule the case, but a

8  discovery deadline was not set because the parties wished to engage in informal

9  discovery.  As will be further described below, the Court held a series of these status

10  conferences on case progress but at the mutual request of the City and CalPERS never

11  set a discovery deadline.  The Court, however, also did not issue an order staying

12  discovery.

13      While the initial procedural matters were taking place, in September and October

14  2012, the City adopted a Pre-Pendency Plan as adjusted by a 9-Point Adjustment Plan.

15  The Pre-Pendency Plan did not present a balanced budget from a cash flow perspective,

16  but anticipated that expense adjustments were necessary to balance available cash with

17  expected expenses during the first year in chapter 9.  Subsequently, the City on

18  November 26, 2012, approved a Pendency Plan, which was a balanced budget for that

19  _____

[12] AB 506 enacted by the State of California in 2011 and effective on January 1, 2012, is the common California
nomenclature for Cal. Gov't Code § 53760, et seq.  It requires a city to participate in a neutral evaluation process
pursuant to § 53760.3 or, in the alternative, to declare a fiscal emergency before it may file a bankruptcy petition.
Because SBPEA subsequently withdrew its objection, this opinion does not address the AB 506 issues.

20

21

first year but was dependent on the City either negotiating or imposing certain

conditions on the employees.  Both the Pre-Pendency Plan and the Pendency Plan were

short-term budgets and neither purported to address the longer term planning required

by a chapter 9 plan of adjustment.  As asserted frequently by CalPERS, the City's

financial department was understaffed and no person was assigned the task of drafting

a plan of adjustment.

In order to implement the Pendency Plan, the City authorized two employees to

meet with the seven unions to negotiate the concessions required by that budget.[13]

Four of the unions reached agreement with the City and accepted the changes, which

became effective on February 1, 2013.  Three unions, police, fire, and SBPEA, did not.

On January 28, 2013, the City unilaterally imposed the modifications, also effective on

February 1, 2013, so that it could balance the Pendency Plan budget.  On April 22, 2013,

the City adopted budgets for the General Fund for fiscal years 2012-13 and 2013-2014.

Meanwhile, informal discovery continued between the City, CalPERS, and the

other interested parties but little progress was made in moving the case toward an

eligibility hearing to resolve the CalPERS and SBPEA objections.  However, at a status

conference in April or May 2013, SBPEA formally withdrew its objection under §

109(c)(3), conceding that the City was insolvent.  At that time, with respect to the

---

[13] The concessions required from the unions pertained to the employee share of the contributions to CalPERS, not salary.  CalPERS has asserted that these changes in contributions are not authorized by state law and the three nonconsenting unions – Police, Fire, and the SBPEA – echo those arguments.  For the purpose of this opinion, the court only notes the practical effect on the employees' net take home pay and the budget; the take home pay is substantially negatively impacted but the concessions allowed the Pendency Plan budget to balance.

1 | remaining contested eligibility issues under §§ 109(c)(2) and (c)(4) and the good faith

2 | requirement under § 921(c), the Court openly questioned whether there were any

3 | disputed material facts that would require formal discovery.  Subsequently, at a status

4 | conference in early June 2013 the Court suggested that a summary judgment motion

5 | could resolve the remaining issues.  While an unusual approach in a contested matter as

6 | opposed to an adversary proceeding, resolution by a summary judgment motion is not

7 | unprecedented.  When CalPERS protested that it wished to conduct essential formal

8 | discovery on the eligibility issues, the Court directed CalPERS to brief those arguments in

9 | a Civil Rule 56(d) motion, made applicable in bankruptcy proceedings by Rule 7056, and

10 | set the Civil Rule 56 (d) motion to be heard at the same time the City's summary

11 | judgment motion would be argued.

12 | **The Propriety of Summary Judgment to Resolve Eligibility**

13 | A summary judgment motion under Civil Rule 56(d), as incorporated by Rule

14 | 7056, is properly granted when the movant shows that there is no genuine dispute as to

15 | any material fact and the movant is entitled to judgment as a matter of law.  *Celotex*

16 | *Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  In making this determination, conflicts are

17 | resolved by viewing all facts and reasonable inferences in the light most favorable to the

18 | non-moving party.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

19 | In deciding a contested motion for summary judgment, a court is required to

20 | make decisions of law based on a statement of uncontroverted facts and is prohibited

21 |

1    from granting summary judgment where material disputed facts are at issue.

2    Accordingly, this Court in granting the City's motion for eligibility must address the

3    critical issue of whether material disputed facts are at issue.  Civil Rule 56(d) allows a

4    party, such as CalPERS here, to assert as a defense to summary judgment a need to

5    conduct further discovery.  In particular, "where, as here, [non-moving party's] case

6    turns so largely on [its] ability to secure evidence within the possession of [moving

7    party], courts should not render summary judgment because of gaps in a [non-moving

8    party's] proof without first determining that [non-moving party] has had a fair chance to

9    obtain necessary and available evidence from the other party." *Carmona v. Toledo*, 215

10   F.3d 124, 133 (1st Cir. 2000).

11        Operating within the universe of the remaining contested eligibility

12   requirements—desire to effect a plan, good faith in filing the petition and compliance

13   with AB 506 in meeting state authorization to file—the Court observed that the

14   subjective state of mind of any employee or representative of a city was not at issue

15   because a city, as an entity, takes objective actions such as adopting resolutions,

16   presenting budgets, and negotiating with unions.  Based on these considerations, the

17   Court invited the objecting parties to present in a Civil Rule 56(d) motion those factual

18   issues which they believed to be material and disputed and upon which they needed

19   further discovery before eligibility could be determined.  The Court observed that if the

20   Civil Rule 56(d) motion revealed that formal discovery was necessary for disputed

21

1    material factual issues, then the factual disputes would need to be resolved in an

2    evidentiary hearing after perhaps months of such discovery.

3         The remaining contested issues narrowed by the time the Civil Rule 56(d) motion

4    was filed; SBPEA reached an agreement with the City whereby it accepted on a short-

5    term basis the conditions imposed on it on January 28, 2013, and withdrew its objection

6    to eligibility.  That eliminated the challenge under § 109(c)(2), leaving only CalPERS as an

7    objecting party and only §§ 109(c)(4) and 921(c) in play.[14]  Addressing CalPERS Civil Rule

8    56(d) motion, the Court found that none of the facts that it asserted were material and

9    disputed would impact the decision on "desire" and good faith.

10         The Court will address why the purported facts are either irrelevant or, even

11    taken as true in the most negative light to the City, do not show a lack of desire or good

12    faith.  The Court categorizes the Civil Rule 56(d) discovery requests into groups as

13    follows: (1) discovery on historical facts pertaining to activities at the City between 2006

14    and early 2012; (2) discovery on facts immediately prepetition; (3) discovery on post

15    petition facts pertaining to City actions during the chapter 9; and (4) discovery directed

16    toward depositions of City officials or consultants and on document requests not yet

17    satisfied.

---

18    [14] CalPERS argued in its opposition that its objections to eligibility filed at the court deadline were "preliminary"
and that it had reserved the right to supplement those objections (without specifying which ground it wished to
19    assert that had not been previously challenged).  The Court rejected the notion that new objections could be
raised after the deadline date because no court order allowed the right to supplement. The whole purpose of the
objection deadline was to fix the eligibility issues so that a chapter 9 could proceed in an orderly manner, and
20    CalPERS had not attempted to supplement its objections prior to the summary judgment motion and therefore had
waived any right it might have claimed to do so.

21

1   CalPERS argues that it should have discovery about consultant and staff reports

2   presented to the City as early as 2006 which alerted the Common Council about

3   unstable financial issues and budgetary concerns and made recommendations of steps

4   the City could take to alleviate the impending crisis.  CalPERS asserts that these issues

5   are material to good faith or desire because the discovery will reveal that the City knew

6   or should have known about the budgetary shortfalls and cash crisis for several years,

7   yet took no materials steps to alleviate the problem until it declared a financial

8   emergency on July 18, 2012.

9   The Court finds these remote facts irrelevant to determining desire or good faith

10  on the petition date.  The inactivity of the City to forestall cash flow insolvency in prior

11  years does not mean, as a matter of law, the City is forever forbidden to file chapter 9

12  when the full impact of the cash situation was presented to the Common Council on July

13  10, 2012.  Just because it did not act earlier does not mean it cannot act now if the City

14  finds, as it did, that the City was cash flow insolvent and could not pay its bills as they

15  came due on July 1, 2012, and onward without the protection of a bankruptcy

16  proceeding where it could defer or impair liabilities.  No matter that some earlier

17  actions by the City might have lessened the shortfalls in July 2012.  The undisputed

18  material facts are the cash flow crunch existed and no immediate remedies could

19

20

21

1  address it other than the relief that chapter 9 afforded.[15]  Historical facts have no import

2  on the Court's decision.

3        The Court will accept as true many of the "negative" facts that occurred

4  immediately prepetition which CalPERS argues are material and disputed.  The Court's

5  legal analysis which follows will encompass those facts and demonstrate why, taken as

6  true, they do not defeat eligibility on the contested grounds.  Because the Court adopts

7  them, no dispute exists and no discovery is needed.[16] A summary of the facts follows:

> (a) the City had not formulated a proposed plan of adjustment or even a term sheet before it filed;
> (b) the City did not enter into meaningful negotiations with its major creditors prepetition;
> (c) the City entered into several stipulated judgments to settle civil rights litigation prepetition upon which it immediately defaulted;
> (d) the City's financial records were in disarray, including delinquent audited financials, lack of bank reconciliations, imprecise cash projections, and incomplete interfund accounting;
> (e) the City's finance department was understaffed;
> (f) the City paid more than a million dollars in cash outs to terminating employees within 60 days of filing, including a substantial sum immediately before the petition date;
> (g) the City had no pre-filing plan to pay post petition expenses and obligations to CalPERS;

---

[15] The prior knowledge of the City of the upcoming fiscal crisis might have relevance on the declaration of emergency to meet the AB 506 requirements which allowed the City to bypass neutral evaluation.  Since SBPEA withdrew its objection, that uncontested criteria is not before the Court to decide.

[16] The legal analysis below demonstrates why any individual mindset or subjective intent is not material in assessing the objective actions of the City which affect eligibility.  Discovery consisting of depositions of City officials or consultants would not elicit any objective information not already in the City records.  Most communications are not only irrelevant but also protected by the closed session or legislative privileges accorded such communications in California.  Cal. Gov't Code § 54963(a); *see City of Fairfield v. Superior Court*, 14 Cal. 3d 768, 772 (1975).

(h) other than as set forth in the Budget Report and reflected by downsizing of personnel and employment freezes, the City had not considered financial alternatives to face the cash flow crisis other than filing chapter 9; and

(i) the City's Water Fund had more than $37,000,000 in immediately available cash.

The post petition facts which CalPERS argues are material and subject to discovery because they are disputed do not lend themselves to objective discovery.  As with a number of the asserted prepetition facts, the Court will adopt those facts as uncontroverted and provide in the legal analysis below an explanation for why even if true they do not defeat the City's petition for eligibility:

(a) during the 13 months of post petition activity in the chapter 9 case, the City did not undertake meaningful negotiations with its major creditors which focused on a proposed plan;

(b) the City did not adopt a Pendency Plan until November 26, 2012, and only then because the Court made clear that the existence of a Pendency Plan was a factor to be considered under § 109(c)(4);

(c) the Pendency Plan was only 10 pages long and contained no detailed financials;

(d) no City employee or agent was assigned to draft the plan of adjustment;

(e) CalPERS did not receive reconciled bank statements and other requested financial documents until April 2013, or later;

(f) the City did not have cash projections  until April 2013;

(g) the City did not adopt a 2012-2013 budget until April 2013;

(h) the City paid certain vendors on their prepetition invoices post petition;

(i) the City did not pay post petition obligations to CalPERS;

(j) the City did not have enough manpower in its finance department;

1     (k)  the City accrued cash post petition while not paying all monies due to
CalPERS;

2     (l)   the City did not provide all requested financial information to
creditors; and

3     (m) the City imposed wage and benefit conditions on the three unions
which did not agree to them, effective February 1, 2013.

In addition to these areas of requested discovery by CalPERS is a demand to

depose certain City employees.  First, the factual expertise of Mr. Simpson, prior

Director of Finance for the City, and Mr. Bush, financial consultant to the City are

irrelevant because insolvency is not at issue.  Second, Mr. Kennedy, Mr. Pachon, Mr.

McNeely, Mr. Wilson, Mr. Weinberg, and Mr. Majaj's knowledge is limited to facts too

remote in time to be relevant.  Lastly, any testimony would be subject to closed session

or legislative privilege to the extent there were inquiries about the witness' state of

mind.  Objective facts are all known in the City records.

In summary, the Court denies the Civil Rule 56(d) motion as grounds to delay

ruling on eligibility because CalPERS is entitled to formal discovery only on material

disputed facts.  The inquiries which are relevant to the determination of whether the

City desired to effect a plan of adjustment on the petition date and whether the City

filed in good faith are centered on objective facts, which are measured by the acts of the

City, and not by a subjective inquiry into the state of mind of any employee, consultant

or agent.  The relevant objective facts are either admittedly undisputed or the Court will

adopt them as true for the purpose of its analysis on these two legal principles.

1    The consequence of the Court's approach  in determining there are no disputed

2    material facts is that it may grant summary judgment for the non-moving party, here

3    CalPERS (Civil Rule 56(f)(1)).[17] As shown below, the uncontroverted facts lead the Court

4    to conclude the City is eligible for chapter 9.

5                                          **Analysis**

6                        (a) General Requirements; Uncontested Provisions

7    Eligibility for an order for relief under chapter 9 is governed by five mandatory

8    requirements.  Four of these requirements are set forth in the provisions of §§

9    109(c)(1)-(4).  Alternatives for the fifth requirement are set forth in § 109(c)(5).

10    In addition, the Court may dismiss a chapter 9 petition under § 921(c), even

11    where all of the § 109(c) requirements are met, if the debtor did not file the petition in

12    good faith.  "Unlike the eligibility requirements of § 109(c), the court's power to dismiss

13    a petition under § 921(c) is permissive, not mandatory."  *In re Pierce Cnty. Hous. Auth.*,

14    414 B.R. 702, 714 (Bankr. W.D. Wash. 2009) ("*Pierce County"*) (citing 6 *Collier on*

15    *Bankruptcy* 921-7 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. 2009) [hereinafter

16    *Collier*]).

17    The chapter 9 petitioner has the burden to show that it is eligible to file under §

18    109(c).  *In re City of Stockton, Cal.,* 475 B.R. 720, 725-26 (Bankr. E.D. Cal. 2012)

19    _____

20    [17] If the Court granted for nonmovant CalPERS on § 109(c)(4) the result would be dismissal for ineligibility.  If it
granted for nonmovant CalPERS on § 921(c), the Court could exercise its discretion to not dismiss the case.  *In re
Pierce Cnty. Hous. Auth.*, 414 B.R. 702, 710 (Bankr. W.D. Wash. 2009).

21

1    ("*Stockton*"); *Int'l Assn. of Firefighters, Local 1186 v. City of Vallejo (In re City of Vallejo),*

2    408 B.R. 280, 289 (9th Cir. BAP 2009) ("*Vallejo*"); *In re Valley Health Sys.*, 383 B.R. 156,

3    161 (Bankr. C.D. Cal. 2008) ("*Valley Health*").  "The quantum of proof, there being no

4    contrary indication in statute or in controlling decisional law, is the familiar

5    preponderance-of-evidence standard of basic civil litigation.  Nothing suggests there

6    should be a higher burden.  This conclusion comports with the argument by the authors

7    of the *Collier* treatise that the burden should be liberally applied in favor of granting

8    relief."  *Stockton*, 475 B.R. at 726 (citing 2 *Collier* § 109.04[3]).  The § 109(c) eligibility

9    requirements are to be construed broadly "to provide access to relief in furtherance of

10    the Code's underlying policies."  *Valley Health*, 383 B.R. at 161 (quoting *Hamilton Creek*

11    *Metro. Dist. v. Bondholders Colo. Bondshares (In re Hamilton Creek Metro. Dist.)*, 143

12    F.3d 1381, 1384 (10th Cir. 1998)).

13         The issues before the Court are controlled by any objections that were filed with

14    the Court by October 24, 2012.  The SBPEA union and CalPERS were the two original

15    objecting parties.  After SBPEA withdrew its objections to the City's eligibility, the

16    CalPERS objections under § 109(c)(4)—whether the City has presented undisputed

17    material facts to show the City's desire to effect a plan as a matter of law—and § 921—

18    whether the undisputed evidence establishes that the City's chapter 9 petition was filed

19    in good faith—are the only contested matters before the Court.

20    ///

21

1      *I)      Municipality: § 109(c)(1)*

2          The City of San Bernardino is a municipal corporation and a political subdivision

3   of the State of California.  This issue is uncontested.

4      *II)      Specifically Authorized To Be a Debtor by California Law: § 109(c)(2)*

5          It is undisputed that the Common Council passed by a majority vote a resolution

6   authorizing the filing of a petition under chapter 9 of the Bankruptcy Code.  The

7   Common Council also adopted a resolution declaring a financial emergency as required

8   by Cal. Gov't Code § 53760(b).  The City met the State requirements and is authorized to

9   file a chapter 9 under California law.  This issue is uncontested.

10     *III)      Insolvency: § 109 (c)(3)*

11         The uncontroverted facts establish that the City is insolvent.  The City was unable

12  to pay its forthcoming obligations when the resolutions were passed and faced a cash

13  deficit of $45.9 million for fiscal year 2012-2013.  This issue is uncontested.

14     *IV)      Negotiations With All of the City's Creditors Was Impracticable:  § 109(c)(5)(C)*

15         The following uncontroverted facts support the finding that negotiations were

16  impracticable: there are a large number of creditors in one or more classes; there is a

17  lack of a viable business plan that addresses the City's ongoing financial problems; and

18  there is a need to act quickly to protect the public from harm.  This issue is uncontested.

19  *Vallejo*, 408 B.R. at 298.

20  *///*

21

1

(b) General Requirements; Contested Provisions

2

I)     *Desire to Effect a Plan: § 109(c)(4)*

3

"An entity may be a debtor under chapter 9 of this title if and only if such

4

entity . . . desires to effect a plan to adjust such debts."  § 109(c)(4).  Although

5

uncommon, "[t]hose cases that have considered the issue demonstrate that no bright-

6

line test exists for determining whether a debtor desires to effect a plan because of the

7

highly subjective nature of the inquiry under § 109(c)(4)."  *Vallejo*, 408 B.R. at 295.  This

8

requirement may be satisfied with direct and circumstantial evidence.  *Id.*; *In re City of*

9

*Stockton*, *Cal.,* 493 B.R. 772, 791 (Bankr. E.D. Cal. 2013) ("*Stockton II*") (noting that

10

"[e]vidence probative of intent includes attempt to resolve claims, submitting a draft

11

plan, and other circumstantial evidence.").  So long as the evidence shows that the

12

"purpose of the filing of the chapter 9 petition not simply be to buy time or evade

13

creditors," a bankruptcy court may properly find that the § 109(c)(4) requirement has

14

been met.  *Vallejo*, 408 B.R. at 295 (quoting 2 *Collier* § 109.04[3][d]); *In re Boise Cnty.*,

15

465 B.R. 156, 168 (Bankr. D. Idaho 2011) ("*Boise County*").

16

"The cases equate 'desire' with 'intent' and make clear that this element is highly

17

subjective."  *Stockton II*, 493 B.R. at 791 (citing *Vallejo,* 408 B.R. at 295).  Subjective

18

inquiry should not be misunderstood as an inquiry into a subjective state of mind.

19

Courts in the Ninth Circuit and other circuits conduct a subjective inquiry when

20

determining whether the municipality's objective acts demonstrate the requisite

21

1    "desire" or "intent."  *Vallejo,* 408 B.R. at 295; *Stockton II*, 493 B.R. at 791 (finding that

2    circumstantial evidence indicating the debtor's desire to effect a plan existed where the

3    debtor could either excuse certain impaired contracts by confirming a chapter 9 plan or

4    reach an agreement with the affected parties); *In re Cnty. of Orange,* 183 B.R. 594, 607

5    (Bankr. C.D. Cal. 1995) ("*Orange County*") (finding a comprehensive settlement

6    agreement along with other steps taken sufficiently demonstrated efforts to resolve

7    claims which satisfied § 109(c)(4)); *In re Sullivan County Reg'l Refuse Disposal Dist.,* 165

8    B.R. 60, 76 (Bankr. D.N.H. 1994) ("*Sullivan County*") (finding a draft plan of adjustment

9    post petition met the requirement of § 109(c)(4)).

10    The City filed a Qualification Statement signed by the City Manager that stated

11    under penalty of perjury that the City desires to effect a plan to adjust its debts.  The

12    Court places little weight on the Qualification Statement, recognizing that any

13    municipality could prepare that conclusionary document.  The Court notes, however,

14    the following additional steps which demonstrate desire: preparing and presenting the

15    Budget Report at the public meeting of the Mayor and Common Council on July 10,

16    2012; preparing  and presenting the staff report to the Common Council on July 18,

17    2012; conducting open public meeting discussions of what these reports projected as

18    the City's financial future; voting to declare a fiscal emergency and approve the

19    resolutions; preparing a cash flow analysis report; preparing the Fiscal Emergency Plan,

20    which was presented to the Common Council and approved before the petition date;

21

1    preparing and discussing the Pre-Pendency Plan at the Common Council meetings in late

2    August 2012 and then approving the Pre-Pendency Plan as adjusted by a 9-Point

3    Adjustment Plan in September 2012 and on October 1, 2012; and approving its

4    Pendency Plan on November 26, 2012.  These actions are of public record and they

5    objectively demonstrate that the City desired to effect a plan.

6         These uncontroverted facts sufficiently show that after taking steps to cut costs

7    and raise revenue, the City—faced with a 45.9 million dollar cash deficit—had little

8    choice but to restructure its debt.  Prior to filing, the City had depleted any reserves it

9    had in its general fund and had cut salaries and jobs of its employees.  These cuts had

10   already negatively impacted City services and safety. The Budget Report also indicated

11   that the City liquidated what assets it could and had made limited attempts to raise its

12   revenue.  Upon filing its chapter 9 petition, the City defaulted on numerous obligations,

13   including payments owed to CalPERS, health benefit payments owed to retirees and

14   payments owed to pension obligation bondholders and other bondholders.

15        The Pre-Pendency Plan and Budget Report reinforced the reality that the City did

16   not have enough money to pay all of its contracts and would need to impair contracts,

17   voluntarily or otherwise, in order to achieve a balanced budget.  The City did this with its

18   employees; the City reached agreements with four of its seven unions on modifications

19   to their respective collective bargaining agreements and voted to impose modifications

20   on the remaining three unions.  The undisputed circumstances which precipitated the

21

1    City's filing and the steps taken after the petition date show that the City began

2    implementation of the steps necessary to restructure its debt.

3         The sparse reported case law where a municipality was found ineligible under §

4    109(c)(4) turned on filing to evade a creditor.  In *Sullivan County*, a bankruptcy court

5    found that the decision to file chapter 9 was a litigation tactic to hold off the major

6    creditor's "threatened shut-out. "  *Sullivan County*, 165 B.R. at 82.  In that case, the

7    option to file chapter 9 was not memorialized on the written agenda of the board

8    meeting and there was no evidence that the district engaged in a discussion regarding

9    what type of plan might be appropriate under chapter 9. Rather, the district filed

10   preemptively to ward off a threatened action of its only creditor, which caused the court

11   to declare it ineligible under § 109(c)(4).  *Id.*

12        The triggering event that often forces a bankruptcy filing under other chapters is

13   aggressive creditor activity, but this is not the case here.  Unlike the single major

14   creditor scenario in *Sullivan County*, the City's decision to file chapter 9 was a logical and

15   arguably inevitable result of a debt structure that it could no longer keep current.  Faced

16   with inevitable default on its obligations because of insufficient cash, the City took the

17   affirmative step to file chapter 9 so that it could restructure the debt and impair the

18   creditors as necessary to achieve a balanced budget.[18]

19   _____

20   [18] As noted previously, the precise date the City filed its petition was driven by the steps a civil rights judgment
     creditor was taking to execute on the City's bank accounts.  However, the resolutions to declare a fiscal emergency
     and file the petition had been passed two weeks prior and before the creditor action was threatened.

21

1    CalPERS contends that to determine the City's intent, it is entitled to depose the

2  relevant decision-makers for the City.  When conducting the § 109(c)(4) inquiry, courts

3  have only looked at the municipality's objective actions as an entity.  *Vallejo*, 408 B.R. at

4  295; *In re City of Stockton, Cal.*, 475 B.R. 720, 726 (Bankr. E.D. Cal. 2012); *In re Pierce*

5  *Cnty. Hous. Auth.,* 414 B.R. 702, 710 (Bankr. W.D. Wash. 2009).  The subjective intent of

6  an individual councilmember is immaterial in determining whether a municipal body

7  had the requisite intent or good faith.

8    CalPERS argues that the adoption of the Pendency Plan is not evidence of a

9  "desire to effect" because the Court put pressure on the City to adopt it.  The objective

10 fact is the City did adopt the Pendency Plan in November 2012 and the Court may

11 consider this as evidence of desire.

12   CalPERS asserts that § 109(c)(4) requires some form of plan of adjustment be

13 presented to creditors prior to filing and that the City have staff tasked to prepare and

14 formulate the plan immediately post petition.  CalPERS also argues that the admittedly

15 woeful state of the City's financial records upon and after filing make desire impossible

16 to achieve.  The Court disagrees that those factors defeat a showing under § 109(c)(4).

17 The lack of an early plan might have an impact on some of the alternative prongs of §

18 109(c)(5), but not on desire.  And the disarray of the City's financial books more

19 persuasively enforces why it needed a breathing space to get them in order before it

20 could effect the plan of adjustment.

21

1    It is widely endorsed that "no bright-line test exists for determining whether a

2    debtor desires to effect a plan because of the highly subjective nature of the inquiry

3    under § 109(c)(4)."  *Vallejo*, 408 B.R. at 295; *Stockton*, 475 B.R. at 726; *Pierce County*,

4    414 B.R. at 710; *Boise County*, 465 B.R. at 169.  Moreover, the cases CalPERS cites to for

5    this proposition are not specific to a determination of intent for purposes of § 109(c)(4)

6    and thus offer no persuasive weight.  As such, the fact the City did not have some form

7    of plan in place at the Petition Date is immaterial.

8    Other factors that CalPERS argues defeat "desire" such as the cash outs to

9    terminating employees just before the filing date, the negotiation of civil rights

10   settlements upon which the City immediately defaulted, and the payments post petition

11   of some prepetition bills are all issues which need to be addressed in any plan before it

12   can be approved by the Court.  But they are not material to "desire;" nor is the fact that

13   the City did not have a method in mind to address the immediate post petition defaults

14   to CalPERS.   Again, those are plan issues and must be addressed in the course of

15   negotiating or litigating treatment in the plan.

16   Finally, CalPERS submits that the uncontroverted fact that the City's Water Fund

17   had a large cash balance before and after the petition date which the City did not tap to

18   attempt to balance its books is evidence of lack of desire to effect a plan.  This argument

19   has no legal legs.  It is a matter of California constitutional law that the City may not use

20   funds belonging to the Water Department for general fund purposes.  Amendments to

21

1    the Constitution enacted by Proposition 218 in 1996, which added Articles XIIIC and

2    XIIID, expanded restrictions on local government revenue-raising and imposed

3    limitations on local government use of special fees, including water and sewer fees.  C.A.

4    Const. art. XIIIC and XIIID.  Article XIIID covers water fees and prohibits the use of such

5    fees for general governmental services, including police, fire and other services.  *Bighorn*

6    *Desert View Water Agency v. Verjil*, 39 Cal. 4th 205, 216-17 (2006); *Richmond v. Shasta*

7    *Cmty. Servs. Dist.*, 32 Cal. 4th 409 (2004).  Thus, the City was legally prohibited by the

8    California Constitution from using Water Department funds for general fund purposes.

9        Similarly, the City could not have borrowed funds from the Water Department

10   without incurring debt that it could not repay within one year.  Article XVI, Section 18 of

11   the Constitution prohibits the City from incurring a debt in any year that exceeds the

12   available revenues of the City for that year without the approval of a two-thirds vote of

13   qualified voters.  C.A. Const. art. XVI, § 18.  Looking at its dire financial status in July

14   2012, the City could not reasonably conclude that it would be able to repay to the

15   Water Fund any loans it made within that fiscal year.  The Water Fund cash was thereby

16   out of reach to address the City's insolvency and this issue is an outlier to the Court's

17   analysis.

18       Accordingly, the uncontroverted facts provide a broad basis on which the Court

19   may find that the City has shown a desire to effect a plan by giving an official statement

20   of its intent to adjust its debt, taking actions to approve a Pendency Plan, and by

21

1    circumstantial evidence that indicated the City needed relief in a chapter 9 proceeding

2    to give it space to restructure its debt.

3        II)    *Good Faith: § 921(c)*

4            Section 921(c) provides that a court may dismiss a chapter 9 petition if the debtor

5    did not file the petition in good faith. *Pierce County*, 414 B.R. at 714. "Unlike the

6    eligibility requirements of § 109(c), the court's power to dismiss a petition under §

7    921(c) is permissive, not mandatory." *Id*. Although Judge Klein in *Stockton II*, 493 B.R. at

8    794-795, concluded that a rebuttable presumption arises when the City meets its

9    burden under § 109(c), this Court need not shift the burden because it finds that the

10   City has met its burden by a preponderance of the evidence and shown that its chapter

11   9 petition was filed in good faith.

12           In *Pierce County*, the court found that relevant facts to the good faith analysis

13   include "(i) the debtor's subjective beliefs; (ii) whether the debtor's financial problems

14   fall within the situations contemplated by chapter 9; (iii) whether the debtor filed its

15   chapter 9 petition for reasons consistent with the purposes of chapter 9; (iv) the extent

16   of the debtor's prepetition negotiations, if practicable; (v) the extent that alternatives to

17   chapter 9 were considered; and (vi) the scope and nature of the debtor's financial

18   problems." *Pierce County*, 414 B.R. at 714. Courts look to objective acts of a city to

19   determine good faith. *In re Town of Westlake, Tex.*, 211 B.R. 860, 868 (Bankr. N.D. Tex.

20   1997) (finding that the chapter 9 debtor filed in good faith because it faced "frozen

21

1   funds, multiple litigation, and disannexation of a substantial portion of its tax base.");

2   *Stockton II*, 493 B.R. at 794-95 (looking to the city's effort to cut spending, its cash and

3   service insolvency, its efforts to negotiate with creditors, and its inability to achieve

4   significant reductions without being able to impair contracts, to find that the § 921(c)

5   good faith presumption was strong).  As in many other considerations of good faith in

6   the context of bankruptcy, the test is a totality of the circumstances where the Court is

7   given the power to weigh the numerous factors in light of the circumstances as a whole

8   in determining whether good faith is lacking.[19]

9       The Court finds that the City filed in good faith by relying on uncontroverted

10  facts.  At the July 18, 2012 meeting, the Common Council adopted Resolution 2012-205,

11  declaring a fiscal emergency.  In Resolution 2012-205, the Common Council made the

12  official findings that (1) the City was or would be unable to pay its obligations within the

13  next 60 days, and that the financial state of the City jeopardized the health, safety, or

14  well-being of the residents of the City absent the protections of chapter 9 of the United

15  States Bankruptcy Code; and (2) given the City's dire financial condition, it was in the

16  best interest of the City to declare a fiscal emergency.  The Common Council, as an

17  authoritative body, did so because they knew that the City was insolvent and believed

18

19  ────────────────────
    [19] The Court notes parenthetically that the counter to good faith is bad faith, which often arises in the context of
    other bankruptcy matters.  Evidence of bad faith is concealing assets, lying to the court, multiple and abusive
20  filings – all of them affirmative acts of bad behavior.  None of the typical bad faith factors are argued to the Court
    in this proceeding.

21

1   that the City could no longer pay its employees on July 1st without impairing contracts.

2   The Court finds that this factor weighs in favor of a finding of good faith.

3        The City's financial problems fall within the situations contemplated by chapter 9.

4   Here, the City cannot achieve a balanced budget unless it is allowed to reorganize its

5   debt.  The City cannot keep current with its mounting obligations because it is insolvent.

6   The City's filing is consistent with the purposes of chapter 9, which is to give a debtor a

7   "breathing spell" so that it may establish a plan of adjustment.  *In re Cnty. of Orange*,

8   183 B.R. 594, 607 (Bankr. C.D. Cal. 1995).  The findings in Resolution 2012-205

9   demonstrate that the City filed the Petition for this exact purpose.

10       Although the Court finds that the City did not engage in meaningful prepetition

11  negotiations with its creditors, did not seriously consider alternatives to filing chapter 9

12  (other than those considered in the Budget Report) when faced with the severe cash

13  flow shortage in July 2012, honored its contractual obligations to its terminating

14  employees by paying large cash outs just before the petition date, and was generally

15  unprepared to formulate a plan of adjustment either before or soon after it filed, none

16  of these uncontroverted facts add up to lack of good faith in filing.  Were the purposes

17  of chapter 9—to give a municipality a breathing space from a cash crunch and an

18  opportunity to address its long term solvency through an organized process of

19  proposing a long term plan of adjustment—met here?  The Court answers this question

20  "yes."  Was there an alternative available to the City when it was faced with a $45.9

21

1  million cash deficit in the upcoming fiscal year and inevitably was going to default on its

2  obligations as they came due?  The Court answers this question "no."  To deny the

3  opportunity to reorganize in chapter 9 based on lack of good faith would be to ignore

4  fiscal reality and the general purposes of the Bankruptcy Code.  The Court will not deny

5  that opportunity.

6  Even if the Court were to find that the City did not file in good faith, which it

7  declines to do, case law instructs that the dismissal is not mandatory.  *Pierce County*,

8  414 B.R. at 714.  Having had a firsthand view of this City and its struggles, the attitudes

9  and actions of its major creditors, the concerns of its unions, particularly the safety

10  employees, and the paucity of options for a City with such substantial, undisputed fiscal

11  woes, this Court would exercise its discretion to not dismiss this case.

12  Almost no cases have addressed this permissive nature of § 921(c), but the Court

13  can take some instruction from the Ninth circuit in *In re City of Desert Hot Springs*, 339

14  F.3d 782 (9th Cir. 2003), where the circuit ruled that an order denying a motion to

15  dismiss under § 921(c) and objections to eligibility is an interlocutory order which

16  cannot be appealed without leave of the BAP, which in that case had been denied.  In

17  reaching its decision that the ruling was not final, the Ninth circuit found that there was

18  no irreparable injury to the movant that could not be addressed after finality:

19

20  The denial of an objection to and a motion to dismiss a chapter 9 bankruptcy
   does not irreparably injure a party so that later addressing the issue would be

21

futile.  We therefore hold that such a denial is not a final decision and cannot be immediately appealed to this court.

*Id.* at 792.

In reaching this conclusion, which is contrary to a similar denial of a motion to dismiss for bad faith in a chapter 11 case, the Ninth circuit observed that the purpose and statutory scheme of a chapter 9 proceeding were different than those in chapter 11, but also found that a creditor was not without further remedy if its motion to dismiss was denied by the bankruptcy court.

> When determining whether an order is final, in the context of objections to and motions to dismiss a bankruptcy, our cases are concerned with whether an order finally determines an issue in such a way that addressing the issue later would not serve to prevent a party from suffering irreparable injury. [citations omitted] A court's denial of such a motion merely allows the municipality to proceed with the bankruptcy.  We are not convinced that Congress's whole municipal bankruptcy statutory scheme is so skewed in favor of the municipality that the commencement of proceedings itself causes irreparable injury.  To so hold would essentially say that a creditor's rights are determined before the bankruptcy process really begins.

*Id.* at 790.

This holding instructs this Court that by granting eligibility for the City and overruling CalPERS objections, the Court is not condemning CalPERS to an unfair or injurious outcome in the proceeding.  The plan process is complex and will be lengthy, involving potentially extensive negotiations before the Court-appointed mediator.  This Court is well aware, as observed by Judge Klein in his *City of Stockton* opinions, that most chapter 9 plans are consensual, having been achieved after good faith and willing participation in a mediation process.  However, if that process fails to reach consensus, ultimate approval of any plan of adjustment lies with this Court, which would have to

1    bless any creditor impairment.  CalPERS will have further opportunities to argue its

2    potential injury to the Court and to protect its interests, just as the other creditors have

3    those remedies.

4         As the Court observed when making its oral ruling on this motion, at least six

5    other major creditors or classes of creditors exist here: the guarantors of the Pension

6    Obligation Bonds[20]; the guarantors of other general obligation bonds; the police and fire

7    unions; the remaining five unions of City employees; the potential class of unsecured

8    creditors (which might have subclasses); and the potential class of City retirees.  Each of

9    these creditor groups stands to be substantially impacted by the City's chapter 9

10   proceeding[21]; each of these creditor groups was given the opportunity to object to the

11   City's eligibility or good faith in filing.  None of them objected because they conceded

12   the City was insolvent and needed a long term, orderly process to sort out its finances

13   and propose a path out of its abyss.  The Court rightly notes that the best interest of all

14   these creditor groups is served by proceeding forward in chapter 9.

15        Only the interest of CalPERS would be served if the Court dismissed this case.

16   Exactly how that interest would be served is far from crystal clear.  The cash deficit of

17   the City is real and unchallenged.  The City cannot pay its obligations with money it does

18   not presently have.  Impairment of contracts seems inevitable in order for the City to

19   _____

[20] The Pension Obligation Bonds were issued in the mid-2000's to generate a substantial cash paydown by the City
of its unfunded liabilities to CalPERS.  As a result CalPERS benefited from the cash generated by these bonds.

20   [21] Almost all have already been impacted at least short term because the City has deferred payments to these
classes of debt since the petition date.

21

1  reach cash stability and only the chapter 9 process accords the City the legal opportunity

2  to do so.  How far that impairment might reach is a question to be negotiated or

3  answered by this Court on a later day.   Dismissal would leave this quagmire without

4  orderly court oversight.  This Court believes that oversight is critical to the financial

5  future of the City and its creditors.

6                                    **Conclusion**

7         The purposes of chapter 9 are met by this proceeding.  The integrity of the

8  bankruptcy system is not offended by this proceeding.  The City, its citizens, and its

9  creditors deserve a chance to achieve an orderly financial future.  The Court finds the

10  City of San Bernardino eligible to proceed in its chapter 9 case.

11                                      ###

12

13

14

15

16

17

18         Date: October 16, 2013

           Meredith A. Jury
           United States Bankruptcy Judge

19

20

21

| In re:    City of San Bernardino California | CHAPTER:  9 |
|---|---|
| | CASE NUMBER:  RS 6:12-bk-28006-MJ |

**NOTE TO USERS OF THIS FORM**:

**1)** Attach this form to the last page of a proposed Order or Judgment.  Do not file as a separate document.
**2)** The title of the judgment or order and all service information must be filled in by the party lodging the order.
**3) Category I.** below:  The United States trustee and case trustee (if any) will always be in this category.
**4) Category II.** below:  List ONLY addresses for debtor (and attorney), movant (or attorney) and person/entity (or attorney) who filed an opposition to the requested relief. <u>DO NOT</u> list an address if person/entity is listed in category I.

### NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that the attached order was entered on the date indicated as AEntered@ on the first page of this judgment or order and will be served in the manner indicated below:

**I.  <u>SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (ANEF@)</u>** B Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s),  I, deputy clerk who is making this entry; certify that service on all parties under Section II  was completed**,** the foregoing document was served on the following person(s) by the court via NEF and hyperlink to the judgment or order. The following person(s) are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email address(es) indicated below.

Jerrold Abeles on behalf of Interested Party Ambac Assurance Company
abeles.jerry@arentfox.com, labarreda.vivian@arentfox.com

Jerrold Abeles on behalf of Interested Party Erste Europische Pfandbrief-und Kommunalkreditbank AG
abeles.jerry@arentfox.com, labarreda.vivian@arentfox.com

Jerrold Abeles on behalf of Interested Party Wells Fargo Bank, N.A.
abeles.jerry@arentfox.com, labarreda.vivian@arentfox.com

Franklin C Adams on behalf of Creditor San Bernardino Associated Governments
franklin.adams@bbklaw.com, arthur.johnston@bbklaw.com;lisa.spencer@bbklaw.com;bknotices@bbklaw.com

Franklin C Adams on behalf of Creditor San Bernardino Local Agency Formation Commission
franklin.adams@bbklaw.com, arthur.johnston@bbklaw.com;lisa.spencer@bbklaw.com;bknotices@bbklaw.com

Franklin C Adams on behalf of Interested Party Courtesy NEF
franklin.adams@bbklaw.com, arthur.johnston@bbklaw.com;lisa.spencer@bbklaw.com;bknotices@bbklaw.com

Joseph M Adams on behalf of Interested Party Courtesy NEF
jadams@adamspham.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                                    **F 9021-1.1**

| In re: | City of San Bernardino California | CHAPTER: 9 |
|---|---|---|
| | | CASE NUMBER:  RS 6:12-bk-28006-MJ |

Andrew K Alper on behalf of Interested Party Courtesy NEF
aalper@frandzel.com, efiling@frandzel.com;ekidder@frandzel.com

Thomas V Askounis on behalf of Interested Party Courtesy NEF
taskounis@askounisdarcy.com

Julie A Belezzuoli on behalf of Defendant California Department of Finance
julie.belezzuoli@kayescholer.com

Julie A Belezzuoli on behalf of Defendant Office of State Controller, State of California
julie.belezzuoli@kayescholer.com

Julie A Belezzuoli on behalf of Defendant Ana J Matosantos
julie.belezzuoli@kayescholer.com

Julie A Belezzuoli on behalf of Defendant John Chiang
julie.belezzuoli@kayescholer.com

Anthony Bisconti on behalf of Creditor Certain Retired Employees of the City of San Bernardino
tbisconti@bmkattorneys.com, admin@bmkattorneys.com

Anthony Bisconti on behalf of Interested Party Courtesy NEF
tbisconti@bmkattorneys.com, admin@bmkattorneys.com

Brett Bissett on behalf of Creditor California Public Employees' Retirement System
brett.bissett@klgates.com, carolyn.orphey@klgates.com;klgatesbankruptcy@klgates.com

Brett Bissett on behalf of Interested Party Courtesy NEF
brett.bissett@klgates.com, carolyn.orphey@klgates.com;klgatesbankruptcy@klgates.com

Jeffrey E Bjork on behalf of Interested Party Courtesy NEF
jbjork@sidley.com

Michael D Boutell on behalf of Creditor Comerica Bank
mdbell@comerica.com

J Scott Bovitz on behalf of Creditor U.S. TelePacific Corp.
bovitz@bovitz-spitzer.com

John A Boyd on behalf of Interested Party Courtesy NEF
fednotice@tclaw.net

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009

F 9021-1.1

| In re: | City of San Bernardino California | CHAPTER: 9 |
|---|---|---|
| | | CASE NUMBER: RS 6:12-bk-28006-MJ |

John A Boyd on behalf of Interested Party Thompson & Colegate LLP
fednotice@tclaw.net

Jeffrey W Broker on behalf of Creditor The Glen Aire Mobilehome Park Corporation
jbroker@brokerlaw.biz

Jeffrey W Broker on behalf of Interested Party Courtesy NEF
jbroker@brokerlaw.biz

Deana M Brown on behalf of Interested Party Courtesy NEF
dbrown@milbank.com

Michael J Bujold on behalf of U.S. Trustee United States Trustee (RS)
Michael.J.Bujold@usdoj.gov

Shirley Cho on behalf of Interested Party National Public Finance Guarantee Corp.
scho@pszjlaw.com

Alicia Clough on behalf of Defendant California Department of Finance
alicia.clough@kayescholer.com, managingattorneyofficeassignments@kayescholer.com

Alicia Clough on behalf of Defendant Office of State Controller, State of California
alicia.clough@kayescholer.com, managingattorneyofficeassignments@kayescholer.com

Alicia Clough on behalf of Defendant State of California
alicia.clough@kayescholer.com, managingattorneyofficeassignments@kayescholer.com

Alicia Clough on behalf of Defendant Ana J Matosantos
alicia.clough@kayescholer.com, managingattorneyofficeassignments@kayescholer.com

Alicia Clough on behalf of Defendant John Chiang
alicia.clough@kayescholer.com, managingattorneyofficeassignments@kayescholer.com

Marc S Cohen on behalf of Defendant California Department of Finance
mcohen@kayescholer.com, dhernandez@kayescholer.com

Marc S Cohen on behalf of Defendant Office of State Controller, State of California
mcohen@kayescholer.com, dhernandez@kayescholer.com

Marc S Cohen on behalf of Defendant State of California

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

_January 2009_                                                                                          **F 9021-1.1**

| In re:   City of San Bernardino California | CHAPTER: 9 |
|---|---|
| | CASE NUMBER:  RS 6:12-bk-28006-MJ |

mcohen@kayescholer.com, dhernandez@kayescholer.com

Marc S Cohen on behalf of Defendant Ana J Matosantos
mcohen@kayescholer.com, dhernandez@kayescholer.com

Marc S Cohen on behalf of Defendant John Chiang
mcohen@kayescholer.com, dhernandez@kayescholer.com

Ronald R Cohn on behalf of Interested Party Courtesy NEF
rcohn@horganrosen.com

Christopher H Conti on behalf of Interested Party San Bernardino Public Employees Association
chc@sdlaborlaw.com, sak@sdlaborlaw.com

Christopher J Cox on behalf of Interested Party National Public Finance Guarantee Corp.
chris.cox@weil.com, janine.chong@weil.com

Christina M Craige on behalf of Interested Party Courtesy NEF
ccraige@sidley.com

Alex Darcy on behalf of Creditor Marquette Bank
adarcy@askounisdarcy.com, akapai@askounisdarcy.com

Susan S Davis on behalf of Interested Party Courtesy NEF
sdavis@coxcastle.com

Robert H Dewberry on behalf of Creditor Allison Mechanical, Inc.
robert.dewberry@dewlaw.net

Todd J Dressel on behalf of Creditor Pinnacle Public Finance, Inc.
dressel@chapman.com, lubecki@chapman.com

Chrysta L Elliott on behalf of Interested Party Courtesy NEF
elliottc@ballardspahr.com, manthiek@ballardspahr.com

Scott Ewing on behalf of Interested Party Rust Consulting/Omni Bankruptcy
contact@omnimgt.com, sewing@omnimgt.com;katie@omnimgt.com

John A Farmer on behalf of Creditor County of San Bernardino, California
jfarmer@orrick.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009

**F 9021-1.1**

| In re: | City of San Bernardino California | CHAPTER: 9 |
|---|---|---|
| | | CASE NUMBER:  RS 6:12-bk-28006-MJ |

Brian W Freeman on behalf of Creditor Kim Thompson
brian@pedigolaw.com, brian@brianwfreeman.com

Victoria C Geary on behalf of Defendant California State Board Of Equalization
victoria.geary@boe.ca.gov

Victoria C Geary on behalf of Defendant Cynthia Bridges
victoria.geary@boe.ca.gov

Paul R. Glassman on behalf of Attorney Paul R. Glassman
pglassman@sycr.com

Paul R. Glassman on behalf of Debtor City of San Bernardino, California
pglassman@sycr.com

Paul R. Glassman on behalf of Plaintiff City of San Bernardino, California
pglassman@sycr.com

Robert P Goe on behalf of Creditor Miramontes Const. Co., Inc.
kmurphy@goeforlaw.com, rgoe@goeforlaw.com;mforsythe@goeforlaw.com

David M Goodrich on behalf of Creditor San Bernardino City Professional Firefighters Local 891
dgoodrich@marshackhays.com, ecfmarshackhays@gmail.com

Christian Graham on behalf of Creditor Miramontes Const. Co., Inc.
cgraham23@dlblaw.net

Everett L Green on behalf of U.S. Trustee United States Trustee (RS)
everett.l.green@usdoj.gov

Chad V Haes on behalf of Creditor San Bernardino City Professional Firefighters Local 891
chaes@marshackhays.com, ecfmarshackhays@gmail.com

Chad V Haes on behalf of Interested Party Courtesy NEF
chaes@marshackhays.com, ecfmarshackhays@gmail.com

James A Hayes on behalf of Interested Party Courtesy NEF
jhayes@jamesahayesaplc.com

M Jonathan Hayes on behalf of Interested Party Courtesy NEF
jhayes@srhlawfirm.com,

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

| In re: | City of San Bernardino California | CHAPTER: 9 |
|---|---|---|
| | | CASE NUMBER:  RS 6:12-bk-28006-MJ |

roksana@srhlawfirm.com;carolyn@srhlawfirm.com;shawnj@srhlawfirm.com;rosarioz@srhlawfirm.com;jhayesecf@gmail.com;j@alkazian.com

D Edward Hays on behalf of Creditor San Bernardino City Professional Firefighters Local 891
ehays@marshackhays.com, ecfmarshackhays@gmail.com

Eric M Heller on behalf of Interested Party Courtesy NEF
eric.m.heller@irscounsel.treas.gov

Jeffery D Hermann on behalf of Creditor County of San Bernardino, California
jhermann@orrick.com

Jeffery D Hermann on behalf of Defendant County of San Bernardino
jhermann@orrick.com

Bonnie M Holcomb on behalf of Interested Party Courtesy NEF
bonnie.holcomb@doj.ca.gov, rosita.eduardo@doj.ca.gov

Whitman L Holt on behalf of Interested Party Courtesy NEF
wholt@ktbslaw.com

Michelle C Hribar on behalf of Interested Party San Bernardino Public Employees Association
mch@sdlaborlaw.com

Steven J Katzman on behalf of Creditor Certain Retired Employees of the City of San Bernardino
SKatzman@bmkattorneys.com, admin@bmkattorneys.com

Steven J Katzman on behalf of Interested Party Courtesy NEF
SKatzman@bmkattorneys.com, admin@bmkattorneys.com

Jane Kespradit on behalf of Interested Party Courtesy NEF
jane.kespradit@limruger.com, amy.lee@limruger.com

Mette H Kurth on behalf of Interested Party Ambac Assurance Company
kurth.mette@arentfox.com

Mette H Kurth on behalf of Interested Party Erste Europische Pfandbrief-und Kommunalkreditbank AG
kurth.mette@arentfox.com

Mette H Kurth on behalf of Interested Party Wells Fargo Bank, N.A.
kurth.mette@arentfox.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9021-1.1**

| In re: | City of San Bernardino California | CHAPTER: 9 |
|---|---|---|
| | | CASE NUMBER:  RS 6:12-bk-28006-MJ |

Mette H Kurth on behalf of Trustee Ambac Assurance Company, Erste Europaische Pfandbrief-Und Kommunalkreditbank Ag And Wells Fargo Bank, N.A.
kurth.mette@arentfox.com

Sandra W Lavigna on behalf of Interested Party U. S. Securities and Exchange Commission
lavignas@sec.gov

Michael B Lubic on behalf of Creditor California Public Employees' Retirement System
michael.lubic@klgates.com, jonathan.randolph@klgates.com

Michael B Lubic on behalf of Interested Party California Public Employees' Retirement System
michael.lubic@klgates.com, jonathan.randolph@klgates.com

Richard A Marshack on behalf of Interested Party Courtesy NEF
rmarshack@marshackhays.com, lbergini@marshackhays.com;ecfmarshackhays@gmail.com

David J McCarty on behalf of Interested Party David J. McCarty
dmccarty@sheppardmullin.com

Reed M Mercado on behalf of Interested Party M. Reed Mercado
rmercado@sheppardmullin.com

Fred Neufeld on behalf of Debtor City of San Bernardino, California
fneufeld@sycr.com

Fred Neufeld on behalf of Plaintiff City of San Bernardino, California
fneufeld@sycr.com

Aron M Oliner on behalf of Interested Party San Bernardino Police Officers Association
roliner@duanemorris.com

Scott H Olson on behalf of Creditor Kohl's Department Stores, Inc.
solson@seyfarth.com

Dean G Rallis, Jr on behalf of Interested Party Courtesy NEF
drallis@sulmeyerlaw.com

Christopher O Rivas on behalf of Interested Party Courtesy NEF
crivas@reedsmith.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009

F 9021-1.1

| In re: | City of San Bernardino California | CHAPTER: 9 |
|---|---|---|
| | | CASE NUMBER:  RS 6:12-bk-28006-MJ |

Kenneth N Russak on behalf of Interested Party Courtesy NEF
krussak@frandzel.com, efiling@frandzel.com;dmoore@frandzel.com

Gregory M Salvato on behalf of Interested Party Courtesy NEF
gsalvato@salvatolawoffices.com, calendar@salvatolawoffices.com

Mark C Schnitzer on behalf of Attorney Mark C. Schnitzer
mschnitzer@rhlaw.com, mcschnitzer@gmail.com

Diane S Shaw on behalf of Interested Party Courtesy NEF
diane.shaw@doj.ca.gov

Ariella T Simonds on behalf of Interested Party Courtesy NEF
asimonds@sidley.com

Leonard Steiner on behalf of Defendant Jose Munoz
ls@steinerlibo.com, jasoncarter@steinerlibo.com;aam@steinerlibo.com

Jason D Strabo on behalf of Creditor U.S. Bank National Association, not individually, but as Indenture Trustee
jstrabo@mwe.com, cnorris@mwe.com

Cathy Ta on behalf of Interested Party Courtesy NEF
cathy.ta@bbklaw.com, Arthur.Johnston@bbklaw.com;lisa.spencer@bbklaw.com

Sheila Totorp on behalf of Creditor Landmark American Insurance Company
stotorp@clausen.com, jbrzezinski@clausen.com

Benjamin R Trachtman on behalf of Interested Party Courtesy NEF
btrachtman@trachtmanlaw.com, sstraka@trachtmanlaw.com

Matthew J Troy on behalf of Creditor United States of America
matthew.troy@usdoj.gov

United States Trustee (RS)
ustpregion16.rs.ecf@usdoj.gov

Anne A Uyeda on behalf of Interested Party Courtesy NEF
auyeda@bmkattorneys.com

Annie Verdries on behalf of Interested Party Courtesy NEF
verdries@lbbslaw.com, Autodocket@lbbslaw.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

| In re:        City of San Bernardino California | CHAPTER:  9 |
|---|---|
| | CASE NUMBER:  RS 6:12-bk-28006-MJ |

Brian D Wesley on behalf of Interested Party Courtesy NEF
brian.wesley@doj.ca.gov

Kirsten A. Worley on behalf of Creditor Safeco Insurance Company Of America
kw@wlawcorp.com, admin@wlawcorp.com

Clarisse Young on behalf of Interested Party Courtesy NEF
youngshumaker@psmlawyers.com, sally@psmlawyers.com

Pamela Jan Zylstra on behalf of Interested Party Courtesy NEF
zylstralaw@gmail.com

G   Service information continued on attached page

**II.  SERVED BY THE COURT VIA U.S. MAIL:** I deputy clerk who is making this entry; certify that service on all parties under Section II  was completed**,** A copy of this notice and a true copy of this judgment or order was sent by United States Mail, first class, postage prepaid, to the following person(s) and/or entity(ies) at the address(es) indicated below:

| | |
|---|---|
| **City of San Bernardino, California**<br>City Hall<br>300 North "D" Street<br>San Bernardino, CA 92418 | |

G   Service information continued on attached page

**III.  TO BE SERVED BY THE LODGING PARTY:** Within 72 hours after receipt of a copy of this judgment or order which bears an AEntered@ stamp, the party lodging the judgment or order will serve a complete copy bearing an AEntered@ stamp by U.S. Mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following person(s) and/or entity(ies) at the address(es), facsimile transmission number(s), and/or email address(es) indicated below:

G   Service information continued on attached page

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*

**F 9021-1.1**

| In re: | City of San Bernardino California | CHAPTER: 9 |
|---|---|---|
| | | CASE NUMBER:  RS 6:12-bk-28006-MJ |

**ADDITIONAL SERVICE INFORMATION** (if needed):

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                   **F 9021-1.1**