1  David M. Goodrich (CA Bar No. 208675)
      dgoodrich@sulmeyerlaw.com
2  **Sulmeyer**Kupetz
   A Professional Corporation
3  333 South Hope Street, Thirty-Fifth Floor
   Los Angeles, California 90071-1406
4  Telephone: 213.626.2311
   Facsimile: 213.629.4520
5
   Corey W. Glave (CA Bar No. 164746)
6  SBCPFattorney@gmail.com
   Attorney at Law
7  1042 2nd Street
   Hermosa Beach, California 90254
8  Telephone: 323.547-0472
9  Attorneys for San Bernardino City Professional
   Firefighters, Local 891, et al.
10

11         **UNITED STATES BANKRUPTCY COURT**

12          **CENTRAL DISTRICT OF CALIFORNIA**

13              **RIVERSIDE DIVISION**

14  In re                              | Case No. 6:12-bk-28006 MJ

15  City of San Bernardino, CA,        | Chapter 9

16              Debtor.                | CIVIL COMPLAINT FOR:

17  ─────────────────────────────      | (1)  VIOLATIONS OF CIVIL RIGHTS
                                            [42 U.S.C. § 1983];
18  San Bernardino City Professional Firefighters,   | (2)  VIOLATIONS OF FAIR LABOR
    Local 891, Gregory Parker; Sam Bashaw;                STANDARDS ACT [29 U.S.C. § 201]
19  Chris Nigg; Thomas Jeff English; Richard         | (3)  WRIT OF MANDATE
    Lentine; Steve Tracy; and Kenneth Konior,             [C.C.P. § 1085-PERL]
20                                     | (4)  DECLARATORY RELIEF
              Plaintiffs,                              [PERL]
21                                     | (5)  WRIT OF MANDATE
         vs.                                           [C.C.P. § 1085-City Charter]
22  City of San Bernardino, CA,; Alan Parker, in     | (6)  DECLARATORY RELIEF
    his official and individual capacity; and Does         [City Charter]
23  1-10, inclusive,                   | (7)  VIOLATIONS OF CALIFORNIA LABOR
                                             CODE
24              Defendants.            | (8)  DECLARATORY RELIEF
                                             [Violations of State Law]
25
                                       | Jury Trial Requested
26
                                       | Initial Status Conference:
27                                     | Date:   to be set by Clerk
28
─────────────────────────────

2446371.1

1    Plaintiffs San Bernardino City Professional Firefighters, Local 891 ("SBCPF"), Gregory

2  Parker, Sam Bashaw, Chris Nigg, Thomas Jeff English, Richard Lentine, Steve Tracy and Kenneth

3  Konior, (collectively "Plaintiffs") commence this proceeding against defendant and debtor City of

4  San Bernardino, California ("City"), and defendant Alan Parker, in his official capacity as City

5  Manager for the City of San Bernardino and in his individual capacity, and Does 1-10, inclusive

6  (collectively "Defendants"), and allege as follows:

7                    <u>**JURISDICTION, VENUE AND DEMAND FOR JURY TRIAL**</u>

8    In accordance with the requirements of Local Bankruptcy Rule 7008-1, the Plaintiffs hereby

9  allege that: (1) the claims for relief set forth in the Complaint are not core proceedings under 28

10  U.S.C. § 157(b)[1]; (2) Plaintiffs do not consent to the entry of final orders and judgment by the

11  Bankruptcy Court[2]; (3) venue lies in this judicial district pursuant to 28 U.S.C. § 1409; (4) this is a

12  proceeding that relates to claims that have arisen during the pendency of the Debtor's Chapter 9

13  case, styled <u>*In re City of San Bernardino, California.*</u> (Case No. 8:12-bk-28006-MJ) currently

14  pending in the Riverside Division of the United States Bankruptcy Court for the Central District of

15  California (the "<u>Bankruptcy Court</u>"); (5) pursuant to 28 U.S.C. § 1391(b)(1) and (c)(2), venue is

16  appropriate in this Central District of California as the Defendant resides in this judicial district; and

17  (6) the Defendant has consented to jurisdiction of the Bankruptcy Court under 11 U.S.C. § 904.

18         2.        Plaintiffs request a jury trial in this proceeding.

19                                  <u>**PARTIES**</u>

20         3.        Plaintiff San Bernardino City Professional Firefighters, Local 891 ("SBCPF") is an

21  employee organization formed in accordance with California Government Code § 3500, et seq., and

22  is the recognized representative for all City Fire Department employees holding the rank of

23  Captain, Engineer, and Firefighter (which includes Firefighter/Paramedics).

24  _____

25  [1] This Complaint has been filed in the Bankruptcy Court as a result of the Bankruptcy Court's
26  denial of the SBCPF's Motion for an Order Confirming that the Automatic Stay does not apply to
     the claims for relief alleged herein.  Plaintiff reserves all rights to avail itself of the jurisdiction of
27  any appropriate non-bankruptcy forum should it be permitted to do so.

28  [2] A Motion to Withdraw the Reference for this proceeding will be filed with the District Court.

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL  213.626.2311 • FAX  213.629.4520

4.      Plaintiffs Gregory Parker, Sam Bashaw, Chris Nigg, Thomas Jeff English, Richard Lentine, Steve Tracy and Kenneth Konior at all times hereinafter-mentioned were employed and/or are employed by the City as firefighters, firefighter/paramedics, fire engineers, and/or fire captains.  All Plaintiffs were and/or are active in the activities of the SBCPF and in supporting political issues of the SBCPF.

5.      Defendant City of San Bernardino, California ("City"), is a political subdivision of the State of California and at all times herein-mentioned, employed the individual Plaintiffs in their respective capacities in the San Bernardino Fire Department.

6.      The City of San Bernardino Fire Department is an official department and agency of the City of San Bernardino government, authorized and established to provide the City's fire protections and prevention services and well as emergency medical aid service.

7.      Defendant Alan Parker ("Parker") was and is the City Manager for the City and is charged with the supervision, management of personnel, and administration of the City.  Plaintiffs are informed, believe and thereon allege that Defendant Parker participated, supervised and/or was actively involved, both in his official capacity and/or in his individual capacity, in the incident(s) giving rise to this Complaint (described below).

8.      All of the acts complained of herein by Plaintiffs against Defendants were done and performed by said defendants by and through their authorized agents, servants and/or employees, and each of them, all of whom at all relevant times herein were acting within the course, purpose and scope of said agency, service and/or employment capacity and/or in their individual capacity but purportedly within the course, purpose and scope of said agency, service and/or employment capacity.  Moreover, Defendants and their agents ratified all of the acts complained of herein.

9.      At all times herein mentioned, Does 1-10, inclusive, were the agents, servants and employees of Defendants, and in doing the things hereinafter alleged, were acting within the scope of their authority as such agents, servants and employees with the permission and consent of the Defendant City.  Plaintiffs will amend this Complaint to allege true names and capacities of Does 1-10, inclusive when ascertained.

Sulmeyer Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

10.     Plaintiffs are informed, believe and thereon allege that Defendants, and each of them, conspired and agreed among themselves to do the acts complained of herein and were, in doing such acts, acting pursuant to and in furtherance of said conspiracy, and each defendant sued herein is jointly and severally responsible and liable to Plaintiffs for the damages alleged herein.

11.     Defendant City is sued in its own right under 42 U.S.C. § 1983 because Plaintiffs are informed, believe and thereon allege that, the City's policies, customs, and practices caused the constitutional violations claimed by Plaintiffs herein.  Defendant City is responsible for the actions and inactions of the named and unnamed defendants, policy makers and employees involved in this incident. The acts alleged herein were either undertaken as part of an unwritten policy and/or practice to retaliate against employees who engage in protected activity, said acts were undertaken by an official with final policy-making authority, the official with final policy-making authority had a policy of inaction and such inaction amounted to a failure to protect the constitutional rights of Plaintiffs, and/or the official(s) responsible for establishing final policy made a deliberate choice to follow a course of action that would cause said violations of Plaintiffs' rights, and therefore, acquiescence in a pattern of unconstitutional behavior.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

12.     On August 1, 2012 (the "Petition Date"), a voluntary petition under Chapter 9 of Title 11 of the United States Code was filed by the City.

13.     On January 28, 2013, the City imposed interim modifications to the SBCPF's expired Memorandum of Understanding, and subsequent city resolutions imposing terms and conditions of employment (collectively referred to herein as the "MOU").  The City claimed that these modification were critical to the successful implementation of the City's Pendency Plan.

14.     The City further claimed that the practical effect of the City's imposed interim modifications and/or rejection of the MOU was that the members the SBCPF would have to live with the same changes to the terms and conditions of employment that the consenting unions agreed to.  The consenting unions, however, had much less drastic changes implemented to their terms and conditions of employment.

15.    The interim modifications to the terms and conditions of employment for the Plaintiffs included the City taking wages earned by Plaintiffs and other similarly situated employees and using this property for general public matters (general fund expenses).

16.    The SBCPF attempted to bring legal action to challenge these unilaterally imposed interim modifications in non-bankruptcy forums, but this Court denied Plaintiffs the ability to do so.

17.    On March 4, 2013, the City moved to reject the MOU between the City and the SBCPF.  As part of the motion's pleadings, the City indicated that it was prepared, after implementing the February 1, 2013 interim modifications, to negotiate more realistic agreements with the dissenting unions (including the SBCPF), even though the interim modifications would remain in place upon rejection of the contracts.

18.    In early discussions with the SBCPF, Defendant Parker indicated that he did not believe it was or would be necessary to contract out the fire services performed by members of the SBCPF.  Plaintiffs are informed and believe and based thereon allege that Defendant Parker has openly stated that the City Charter prohibits the contracting out of police and fire services.

19.    In October 2013, the City and Defendant Parker requested, outside of mediation, that the SBCPF enter into discussions for a new MOU and then suggested that the best forum for those negotiations was mediation.  The City also informed the Court that the City was, in mediation, trying to negotiate a new MOU with the SBCPF.  Moreover, once out of mediation, the parties began meeting and conferring, under state law, for a new MOU.  Defendants, under the supervision of Defendant Parker, terminated all efforts to negotiate with the SBCPF.

20.    In or about May 2014, the City chose to put forth a ballot measure that would repeal Section 186 of the San Bernardino City Charter.  Plaintiffs strongly opposed this repeal and openly campaigned against the ballot measure.

21.    The repeal of Charter § 186 did not pass.  Thereafter, Plaintiffs are informed and believe, and thereon allege that, Defendant Parker developed a pattern and practice of retaliating against people and/or entities that do not support his plans for the City.  It is believed, for example, Defendant Parker refused to enter negotiations with at least one group that opposed his efforts to repeal Charter § 186.  Defendant Parker is believed to have stated in communications that because a

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1    group had opposed the repeal of § 186 he had "nothing to put on the table to them" and that he was

2    not inclined to continue mediation.

3        22.    After the repeal of Charter § 186 failed, Defendants have continually threatened to

4    contract out the services provided by the San Bernardino City Fire Department to either the San

5    Bernardino County Fire Department ("County Fire") or the California Department of Forestry and

6    Fire Protection ("Cal Fire").  Defendant Parker has also indicated in written communications with

7    others that it is his desire, as City Manager, to contract out emergency medical services, normally

8    conducted by San Bernardino City Fire Department employees, to private providers.

9        23.    The City has gone so far as to have the City's Mayor and Common Council approve

10    the filing of legal action against Cal Fire in an effort to force Cal Fire to provide the City a bid for

11    services.

12        24.    Plaintiffs contend that the City Charter prohibits the City from contracting out of fire

13    services.  Furthermore, Plaintiffs contend that under California Government Code § 37103 and/or

14    § 53060, the City many not contract with private entities for municipal services which could not be

15    considered "special services" within the meaning of those statutes.  Consequently, an attempt to

16    contract out services performed by the San Bernardino City Fire Department, especially those

17    performed by the membership of the SBCPF, would be unlawful.

18        25.    On September 11, 2014, the Bankruptcy Court heard and granted, in part, the City's

19    motion for authority to reject the SBCPF MOU.  The Bankruptcy Court specifically denied the

20    City's request for authorization and/or approval of Defendants' unilaterally imposed 2013 interim

21    modifications as well as its request for authorization or approval of the Defendants' proposed 2014

22    modifications to the terms and conditions of employment.

23        26.    No discussions have been held by the parties since September 2014.  Instead, the

24    City, with a request to continue negotiations pending, moved forward, without any consent or

25    approval by the Court, to unilaterally implement additional changes to the terms and condition of

26    employment for the SBCPF.  This occurred on October 6, 2014.

27        27.    The October 6, 2014 modifications again included the City taking wages earned by

28    Plaintiffs and other similarly situated employees and using this property for general public matters

Sulmeyer Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL  213.626.2311 • FAX  213.629.4520

1  (general fund expenses), but this time at a higher percentage rate of the earned wages than done

2  with the 2013 interim modifications.

3        28.     Both sets of modifications included pension "cost-sharing" wherein the City

4  involuntarily takes between 13.989% and 16.9% of the earned, but unpaid wages of the employees

5  to cover general fund expenses of the City.

6        29.     Having gone more than four months with no communications from the City

7  regarding negotiations since rejection was granted, on January 26, 2015, the SBCPF received a

8  request from Defendant Parker, as the chief negotiator for the City, to meet with the SBCPF in

9  order to "continue discussions regarding bargaining proposals." The SBCPF began making

10 preparations to meet with the City and sought clarification as to what was to be discussed. The City

11 responded that the purpose of the request for a meeting was that the City was implementing changes

12 the City discussed with the SBCPF prior to rejection of the MOU or that were outlined in the City's

13 proposals to modify the MOU prior to rejection. The City further indicated that the City was

14 entitled to implement the changes without negotiating with or obtaining SBCPF consent;

15 nevertheless, the City wanted to keep the lines of communication open. Finally, the City made it

16 very clear that the City was not proposing to meet and confer for a new MOU, nor was it proposing

17 meet with the SBCPF to discuss chapter 9 plan proposals.

18       30.     The SBCPF agreed to meet, scheduled February 26, 2015 as the meeting date, and

19 addressed the City's contentions. On February 24, 2015,  Defendant Parker cancelled the meeting

20 because the SBCPF "raised several legal issues"; thus, the City's negotiations team was no longer

21 available to meet on February 26, 2015.

22                **FIRST CAUSE OF ACTION**

23                **VIOLATIONS OF CIVIL RIGHTS**

24                **(AGAINST ALL DEFENDANTS)**

25       31.     Plaintiffs, for a First Cause of Action against all Defendants, and Doe Defendants,

26 and each of them, and reallege paragraphs 1 through 30 as herein above set forth and further

27 alleges:

28

**SulmeyerKupetz,** A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

32.    This cause of action is brought pursuant to Article I, Section 10 of the United States Constitution, and the First, Fifth and Fourteenth Amendment Due Process clauses, and other state and federal laws which would entitle Plaintiffs to recover damages for violations of their due process right and pursuant to 42 U.S.C. § 1983.

33.    42 U.S.C. § 1983 provides in pertinent part that every person who, under color of any statute, ordinance, regulation, custom, usage, or any State, subjects, or causes to be subjected, any citizen of the United States or other person with the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action in law, suit in equity or other proper proceeding for redress.

34.    The Fifth Amendment to the United States Constitution provides, in pertinent part: "No person shall... be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation."

35.    The Fifth Amendment to the United States Constitution creates a number of rights relevant to both criminal and civil legal proceedings.  In civil proceedings, it requires that "due process of law" be part of any proceeding that denies a citizen "life, liberty or property" and requires the government to compensate citizens when it takes private property for public use.

36.    The Fourteenth Amendment to the United States Constitution provides, in pertinent part, "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

37.    San Bernardino City Charter provides:

**Section 186. Salaries**. There is hereby established for the City of San Bernardino a basic standard for fixing salaries, classifications, and working conditions of the employees of the Police and Fire Departments of the City of San Bernardino, and the Mayor and the Common Council in

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

exercising the responsibility over these departments vested in them by this

Charter shall hereafter be guided and limited by the following provisions:

FIRST: Classification  The following classes of positions are

hereby created in the Fire Department and Police Department of the City

of San Bernardino, and the code numbers, titles, and salaries as hereinafter

set forth are hereby established and fixed for such classes of positions. The

letter "P" represents "Position" and the five steps in Positions 1, 2 and 3

being represented by the letters "a," "b," "c," "d" and "e" are: "a"

designating the first six months of service in the respective departments,

"b" designating the following eighteen months of service in the respective

departments, "c" designating the third year of service in the respective

departments, "d" designating the fourth year of service in the respective

departments, and "e" designating the fifth and all subsequent years of

service.  Advancements in salary shall be made automatically step by step

after each step of aggregate active service in the department in which the

member is employed.  Each person employed in the Fire Department and

Police Department shall be entitled to receive for his/her services in

his/her position the applicable respective rate or rates of compensation

prescribed for the class in which his/her position is allocated. Additional

titles may be established by the Mayor and Common Council, upon the

recommendation of the City Manager, but only titles for Local Safety

members of the Police and Fire Departments shall be placed in one of the

following classifications having the most nearly equal duties and

responsibilities. Local Safety members of the Police and Fire Departments

shall mean any local police officer or local firefighter as defined under the

provisions of the Public Employees Retirement System Law as specified

in the California Government Code or amendments thereto.

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

SECOND: Basic Salary Schedule (a) The monthly salaries of

Local Safety members of the San Bernardino Police and Fire Departments

included in classifications P1, P2, P3 steps "a" and "e" of P4, P5, P6 and

P7 shall be fixed on August 1, 1976, for the balance of the current fiscal

year and, thereafter, annually on August 1 of each succeeding year at the

amount equal to the arithmetic average of the monthly salaries, paid or

approved for payment to Local Safety members of like or most nearly

comparable positions of the police and fire departments of ten cities of

California with populations of between 100,000 and 250,000 as shown in

the latest Annual Report of Financial Transactions of California Cities

published by the State Controller.

THIRD: Special Salary Provisions

(e) Fire Fighters (1) All employees (below the rank of Battalion

Chief) assigned to an average 56 hours per week assignment shall be

compensated at an hourly rate of time and one-half (12) (sic) their regular

hourly rate of base pay, such compensation to be computed for each one

quarter (3) (sic) hour increment worked in excess of their average 56 hour

weekly assignment.

…

SIXTH: Definitions: The words and terms defined in this

subsection shall have the following meanings in this section: (a) A "Shift"

means a 24-hour duty for the Fire Department, except for the positions of

Chief, Assistant Chief, and local safety members working in the Fire

Prevention Bureau, and such other local safety positions as may hereafter

be granted a forty (40) hour average work week by resolution of the

Common Council upon the recommendation of the City Manager.

38.    Plaintiffs were or currently are members of the San Bernardino City Fire Department

and earned wages that were not fully paid to them.  Each Plaintiff listed herein, as well as similarly

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1  situated employees, has worked assigned and overtime hours for the City and was to be paid the

2  City Charter mandated wages.  Each Plaintiff earned salary for these hours worked, but was not

3  paid the full amount earned.  Plaintiffs did not and do not consent to any withholding of their

4  earned, but unpaid wages, for public use.

5       39.     In California, earned but unpaid salary or wages are the vested property of the

6  employees.  *See Longshore v. County of Ventura*, 25 Cal.3d 14, 22 (Cal. 1979);  *Glendale City*

7  *Employees' Ass'n, Inc. v. City of Glendale*, 15 Cal.3d 328, 343 (1975); *Loehr v. Ventura County*

8  *Community College Dist.*, 147 Cal.App.3d 1071, 1080 (1983) ("Earned but unpaid salary or wages

9  are vested property).

10       40.     Defendants, and each of them, have conspired to take salary or wages earned by but

11  not paid to the Plaintiffs and similarly situated employees.  This taking took and continues to take

12  place without the consent of the employees/Plaintiffs.  The stolen salary/wages are then used for

13  general fund obligations of the City.

14       41.     Furthermore, Defendants, and each of them listed in this Cause of Action retaliated

15  against Plaintiffs based on their assertion of state and federal rights, and for speaking out on matters

16  of public concern; to wit, contesting the City's bankruptcy; opposing the City's political decision to

17  try to remove Charter § 186; and for filing legal and administrative actions against the City.  Based

18  on the above, Plaintiffs spoke out on matters of public concern and/or engaged in protected activity;

19  Defendants implemented adverse actions against Plaintiffs, and the reason for said adverse actions

20  was Plaintiffs' protected activity under the First and/or Fourteenth Amendments to the United

21  States Constitution.  Plaintiffs' protected activity was undertaken as a private citizen and said

22  actions were not part of his official duties with the City and/or the San Bernardino City Fire

23  Department.

24       42.     Each of the acts herein described were taken against Plaintiffs by said Defendants in

25  their individual capacity while purporting to act in the performance of official duties under any

26  state, county, or municipal law, ordinance.

27       43.     The rights listed above are well-established right and have been such for years.  The

28  Defendants, named in this Cause of Action, knew or should have known that Plaintiffs had a vested

1   property right to the wages/salary they legally and properly earned  The Defendants named in this

2   Cause of Action deprived Plaintiffs of each and/or every one of the rights listed above by acting in

3   the manner alleged above.

4           44.     At all times relevant herein defendants, named and unnamed, were agents and

5   employees of the City and in carrying out the acts alleged herein were acting in their individual

6   capacity but under color of their authority as such and under color of the statutes, regulations,

7   customs, and usages of the City and pursuant to a set pattern, practice and official policy of each

8   respective governmental entity.  As a direct and proximate result of the aforementioned policies,

9   procedures, customs, and practices of Defendants, Plaintiffs have suffered injuries and damages in

10  an amount to be proven at the time of trial.

11          45.     Plaintiffs are informed and believe, and thereon allege that Defendants have

12  conspired with one another and with Doe Defendants for the purpose and intent to violate the rights

13  of Plaintiffs, as alleged herein.  Plaintiffs are informed and believe that said Defendants engaged in

14  such conspiracy with the intention to deprive Plaintiffs of their rights.

15          46.     Each of the individual Defendants acted in concert, acted outside the scope of his or

16  her jurisdiction and without authorization of law, and each of the individual Defendants, separately

17  and in concert, acted wilfully, knowingly and with reckless disregard and deliberate indifference to

18  the known consequences of their acts and omissions and purposefully with the intent to deprive

19  Plaintiffs of their federally protected rights and privileges and did, in fact, violate those rights and

20  privileges, entitling Plaintiffs to punitive and exemplary damages in an amount to be proven at the

21  time of trial of this matter.

22          47.     Despite the fact that the Defendants knew or should have known of the facts that

23  these acts, omissions, decisions, practices, customs and policies both formal and informal, were

24  being carried out by its agents and employees, defendants have taken no steps or efforts to order a

25  halt to this course of conduct, nor make redress to Plaintiffs thereby and have failed to take any

26  disciplinary actions whatsoever against its employees or agents.

27          48.     To the extent each Defendant supervised the other named Defendants, said

28  supervising Defendants failed to take action to stop the violation of rights and/or engaged in

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL  213.626.2311 • FAX  213.629.4520

furtherance of the violations of rights. The law is clear that individual and supervisory liability is imposed against a supervisory official in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates, for his acquiescence in the constitutional deprivations of which the complaint is made, or for conduct that showed a reckless or callous indifference to the rights of others. In this case, it is alleged that the supervising Defendants engaged in all of the above conduct.

49.    As a direct result of these acts, Plaintiffs have lost wages, future wages and/or earning capacities resulting from the incident(s) as described herein, in an amount to be determined according to the proof at time of trial.

50.    As a direct and proximate result of the aforesaid acts, omissions, customs, practices, policies and decisions of the Defendants, and each of them, Plaintiffs have suffered general mental pain, suffering, anguish, anxiety, grief, shock, humiliation, indignity, embarrassment and apprehension, all to his/her/their damage in a sum to be determined at trial. Additionally, Plaintiffs have been forced to incur substantial amounts of attorney' fees, investigations, expenses and other cost in the prosecution of the above articulated constitutional violations.

51.    The acts and/or omissions described above also constitute a Conspiracy to Interfere With Civil Rights (*See* 42 U.S.C. § 1985); Conspiracy Against Rights of Citizens (*See* 18 U.S.C. § 241); and Deprivation of Rights Under Color of Law, (*See* 18 U.S.C. § 242).

52.    Plaintiffs have suffered economic and non-economic damages as a direct result of Defendants' actions and, therefore, are entitled to damages.

53.    Plaintiffs are entitled to and hereby demand, costs, attorney fees, and expenses pursuant to 42 U.S.C. § 1988 and other federal statute affording Plaintiffs fees, costs and expenses.

54.    Plaintiffs also seek injunctive relief to prevent future violations of a similar nature in the future.

55.    Plaintiffs hereby demand that a jury be impaneled for the trial of this cause of action.

/ / /

/ / /

/ / /

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

**SECOND CAUSE OF ACTION**

**VIOLATIONS OF FAIR LABOR STANDARDS ACT**

**(COLLECTIVE ACTION BY INDIVIDUAL PLAINTIFFS AGAINST CITY)**

56.     Plaintiffs, for a Second Cause of Action against all Defendants, and Doe Defendants, and each of them, and reallege paragraphs 1 through 55 as herein above set forth and further alleges:

56.     This proceeding is brought pursuant to the provisions of the Fair Labor Standards Act 29 USC §§ 201, et seq., to recover from the City unpaid overtime compensation, liquidated damages and reasonable attorney fees.  Plaintiffs further seek a declaratory judgment, injunctive relief and other relief under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 et. seq. ("FLSA").

57.     Plaintiffs Gregory Parker, Sam Bashaw, Chris Nigg, Thomas Jeff English, Richard Lentine, Steve Tracy and Kenneth Konior at all times hereinafter-mentioned are and/or were employed by the City as firefighters, firefighter/paramedics, fire engineers, and/or fire captains.

58.     The City is a municipal organization controlled by a City Charter, and at all times herein-mentioned, employed Plaintiffs, and other similarly situated employees in their respective capacities in the San Bernardino City Fire Department.

59.     This proceeding is brought by Plaintiffs as a collective action, on their own behalf and on behalf of all others similarly situated under the provisions of 29 U.S.C. § 216, for damages, liquidated damages, three year statute of limitations (dating back to August 2, 2012) and relief incident and subordinate thereto including costs and attorney fees.

60.     Plaintiffs bring this collective proceeding on behalf of themselves and all other persons similarly situated who were members of the San Bernardino City Fire Department, between August 2, 2012 and present and were required or permitted to work additional hours, in excess of 53 hours a workweek without being compensated the requisite compensation.

61.     The exact number of members similarly situated in the collective group, as herein above identified and described, is estimated to consist of not less than fifty (50) plaintiffs nor more than one hundred seventy-five (175).

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

62.     Those individuals similarly situated constituted a well-defined community of interest in questions of law and fact.  The claims of the represented parties are typical of the claims of those similarly situated.  The represented parties will fairly and adequately reflect and represent the interest of those similarly situated.

63.     There are common questions of law and fact in this proceeding relating to and affecting the rights of each member of the collective group and the relief sought is common to the entire class, namely, whether the City owes Plaintiffs overtime compensation for hours of uncompensated work, performed in excess of Plaintiffs' fifty-three (53) hour workweek and whether the overtime compensation paid to Plaintiffs was properly calculated.

64.     The claims of Plaintiffs and those similarly situated, depend on a showing of the acts and omissions of Defendants giving rise to the rights of Plaintiffs to the relief sought herein.  There is no conflict as to any individually named Plaintiff and other members of the collective group seeking to opt-in, with respect to this proceeding, or with respect to the claims for relief herein set forth.

65.     This proceeding is properly maintained as a collective action in that the prosecution of separate actions by individual members of the collective group would create a risk of adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interest of the other members not parties to the adjudication, or would substantially impair or impeded their ability to protect their interests.

66.     The attorneys for Plaintiffs are experienced and capable in litigation in the field of Fair Labor Standards Act and Labor/Employment litigation and have successfully represented claimants in other litigation of this nature.

67.     Plaintiffs were or currently are members of the San Bernardino City Fire Department.  Each of the individual Plaintiffs is or was an employee, within the meaning of the FLSA § 203(e), of the City.  Each Plaintiff has consented to become a member of this proceeding pursuant to 29 U.S.C. § 216(b). *See* Exhibit A.

68.      The SBCPF is the representative of the Plaintiffs under 29 U.S.C. § 207(o) and was the recognized bargain agent for Plaintiffs with the City covering the individual Plaintiffs under Calif. Govt. Code § 3500, et seq.

69.      The City is an employer within the meaning of 29 U.S.C. § 203(d) and is the official governmental authority responsible for the organization, provision, management and operation of fire prevention, fire protection and other related services within its jurisdiction.

70.      The San Bernardino City Fire Department is an official department and agency of the City of San Bernardino government, authorized and established to provide the City's fire protections and prevention services and is an employer within the meaning of 29 U.S.C. § 203(d).

71.      In February 1985, the United States Supreme Court held that the FLSA could constitutionally be applied to state and local employees.  *Garcia v. San Antonio Metropolitan Transit Authority*, 469 U.S. 528 (1985), reversing *National League of Cities v. Usery*, 426 U.S. 833 (1976).  On November 13, 1985, the FLSA Amendments of 1985, (Public Law 99-150) was enacted.  The FLSA Amendments of 1985 adjusted the provisions of the Act specifically to the concerns of public employees.  The effective date for FLSA coverage for Plaintiffs was April 15, 1986.

72.      In 1997, the United States Supreme Court established that local government units and the federal courts are bound to follow the United States Department of Labor's application and interpretation of the FLSA  and its implementing regulations.  *Auer v. Robbins*, 519 U.S. 452 (1997).

73.      Defendants have violated and continue to violate the FLSA by failing and refusing in a willful and intentional manner to pay Plaintiffs, and other employees similarly situated, wages due them under the FLSA 29 U.S.C. § 207 and its implementing regulations, 29 C.F.R. Parts 785 and 778.

74.      San Bernardino City Charter § 186 provides, in pertinent part:

**Section 186. Salaries.** There is hereby established for the City of San Bernardino a basic standard for fixing salaries, classifications, and working conditions of the employees of the Police and Fire Departments

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

of the City of San Bernardino, and the Mayor and the Common Council in exercising the responsibility over these departments vested in them by this Charter shall hereafter be guided and limited by the following provisions:

FIRST: Classification.  The following classes of positions are hereby created in the Fire Department and Police Department of the City of San Bernardino, and the code numbers, titles, and salaries as hereinafter set forth are hereby established and fixed for such classes of positions. The letter "P" represents "Position" and the five steps in Positions 1, 2 and 3 being represented by the letters "a," "b," "c," "d" and "e" are: "a" designating the first six months of service in the respective departments, "b" designating the following eighteen months of service in the respective departments, "c" designating the third year of service in the respective departments, "d" designating the fourth year of service in the respective departments, and "e" designating the fifth and all subsequent years of service.  Advancements in salary shall be made automatically step by step after each step of aggregate active service in the department in which the member is employed.  Each person employed in the Fire Department and Police Department shall be entitled to receive for his/her services in his/her position the applicable respective rate or rates of compensation prescribed for the class in which his/her position is allocated. Additional titles may be established by the Mayor and Common Council, upon the recommendation of the City Manager, but only titles for Local Safety members of the Police and Fire Departments shall be placed in one of the following classifications having the most nearly equal duties and responsibilities. Local Safety members of the Police and Fire Departments shall mean any local police officer or local firefighter as defined under the provisions of the Public Employees Retirement System Law as specified in the California Government Code or amendments thereto.

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

SECOND: Basic Salary Schedule (a) The monthly salaries of

Local Safety members of the San Bernardino Police and Fire Departments

included in classifications P1, P2, P3 steps "a" and "e" of P4, P5, P6 and

P7 shall be fixed on August 1, 1976, for the balance of the current fiscal

year and, thereafter, annually on August 1 of each succeeding year at the

amount equal to the arithmetic average of the monthly salaries, paid or

approved for payment to Local Safety members of like or most nearly

comparable positions of the police and fire departments of ten cities of

California with populations of between 100,000 and 250,000 as shown in

the latest Annual Report of Financial Transactions of California Cities

published by the State Controller.

THIRD: Special Salary Provisions:

(e) Fire Fighters (1) All employees (below the rank of Battalion Chief)

assigned to an average 56 hours per week assignment shall be

compensated at an hourly rate of time and one-half (12) (sic) their regular

hourly rate of base pay, such compensation to be computed for each one

quarter (3) (sic) hour increment worked in excess of their average 56 hour

weekly assignment.

…

SIXTH: Definitions: The words and terms defined in this

subsection shall have the following meanings in this section: (a) A "Shift"

means a 24-hour duty for the Fire Department, except for the positions of

Chief, Assistant Chief, and local safety members working in the Fire

Prevention Bureau, and such other local safety positions as may hereafter

be granted a forty (40) hour average work week by resolution of the

Common Council upon the recommendation of the City Manager.

75.    Plaintiffs are informed and believe, and thereon allege that the City, to the extent it

has established a Section 207(k) overtime period,  has selected the 182 hour, twenty-four (24) day

1    work period established by Section 553.230.  Pursuant to the City's Charter, however, Fire

2    Department employees are assigned to an average 56 hour workweek.  Defendants then calculate

3    the employees' regular rate of pay for overtime purposes on a 192 hours, twenty-four day work

4    period; thus, incorrectly calculating employees' regular rate to the disadvantage of the employees

5    (under pay employees on overtime hours worked).

6        76.    When Plaintiffs and other employees worked between the 182 work-period

7    maximum and the 192 normally scheduled shifts, Defendants paid Plaintiffs and other employees

8    for half (½) time for the hours between 182 and 192, asserting that the employees were already paid

9    straight time for the these ten hours.  This is incorrect as the monthly salary of employees does not

10   cover these ten hours on an annual basis.

11       77.    Plaintiffs are suffered and permitted by their employer to, and have worked,

12   overtime.  Plaintiffs are suffered and permitted by their employer to, and have worked, hours of

13   beyond the scheduled work period trigger for which they have not been fully credited.  For

14   example, Plaintiff Bashaw was "cross-shifted" on at least one occasion.  When employees are

15   "crossed shifted" they work in excess of 182 hours but are not paid for all overtime hours worked.

16       78.    Plaintiffs, and each of them, were deprived of their full statutorily required

17   compensation for overtime hours worked as a result of Defendants' use of illegal computation

18   methods, which undercounts hours and/or underpays Plaintiffs' "regular rate" of pay.  Defendants'

19   method of calculating Plaintiff's "regular rate" of pay resulted in underpayment for overtime

20   worked.

21       79.    At least one named Plaintiff, Greg Parker, worked outside his classification (P-1

22   working as a P-3) without being paid overtime rate at his P-3 rate.

23       80.    The City has and/or continues to fail to calculate the base rate of pay for Plaintiffs

24   and/or consenters in a timely manner after August 1st each year and thereby fail to properly

25   calculate employee's overtime rates during the period of time between the calculations and the

26   payment of the employee's overtime wages.

27       81.    Plaintiffs are informed and believe, and thereon allege, that the City has and/or

28   continues to fail to include in the calculation of the employees regular rate all remuneration owed to

Sulmeyer Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1    the employee including, but not limited to the 9% increase to the base salary for employee to pay

2    their retirement contributions. According to the City, this is not a true retirement benefit, but is

3    simply a salary additive; therefore, must be calculated in the employees' regular rate of pay.  It was

4    not included in the employees regular rate calculation.

5        82.    Unnamed Plaintiffs have worked similar overtime hours without proper

6    compensation and/or when compensated for overtime hours worked have been paid at the wrong

7    rate of pay.

8        83.    Plaintiffs are informed and believe that Defendants are and were aware of the

9    improper payment of overtime, as well as the improper calculation of the overtime rate of pay.  In

10   fact, Plaintiffs have put Defendants on notice of the above violations, but the Defendants failed to

11   take any action to correct the errors or even respond to Plaintiffs' correspondences.

12       84.    Defendants knowingly and intentionally refused to compensate Plaintiffs properly

13   for all overtime hours and at the proper overtime rate.  Plaintiffs are further informed and believe

14   that Defendants knew or should have known of its/their obligations under the Fair Labor Standard

15   Act, but chose not to comply with the Act.

16       85.    Plaintiffs are informed and believe, and therefore allege that Defendants' conduct

17   was willful.  Defendants knew or recklessly disregarded the provisions of the Fair Labor Standard

18   Act by doing the acts described herein above.

19       86.    Defendants have violated and continue to violate the Fair Labor Standard Act by

20   failing and refusing in a willful and intentional manner to pay Plaintiffs and other similarly situated

21   employees all straight time compensation and overtime compensation due them under the Fair

22   Labor Standard Act and its implementing regulations.

23       87.    Defendants' failure to fully compensate Plaintiffs was not in good faith and is also a

24   willful violation of the Fair Labor Standards Act as it applies to employees of local governments.

25       88.    As a result of the foregoing violations of the Fair Labor Standard Act as herein

26   enumerated, Plaintiffs seek damages for overtime compensation as well as liquidated damages.

27   Plaintiffs seek injunctive relief to prevent future violations of a similar nature.

28       89.    Plaintiffs also seek reasonable attorney's fees pursuant to 29 USC § 216(b).

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL  213.626.2311 • FAX  213.629.4520

2446371.1

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

## THIRD CAUSE OF ACTION

### WRIT OF MANDATE - CCP § 1085 AND PERL

### (AGAINST ALL DEFENDANTS)

90.     For a Third Cause of Action, against the City of San Bernardino, Plaintiffs reallege paragraphs 1 through 89, above, as though set forth fully herein.  Plaintiffs further allege:

91.     The Public Employees' Retirement Law ("PERL"), Cal Gov. Code § 20000, et seq., establishes a retirement system for certain State and local government employees.  The PERL is the State law generally governing the administration and operation of CalPERS.  Under the PERL, a municipality may participate in the CalPERS system by entering into a contract with CalPERS. (Cal. Gov. Code § 20460). Once a city makes its statutory election to participate, it is bound by the constitutional and statutory provisions governing the system. (Cal.Gov. Code § 20506). Those provisions include requirement to timely pay mandated employer contributions and compliance with statutorily prescribed member contribution rates and benefits formulas. (Cal.Gov. Code §§ 20831, 20691).

92.     Plaintiffs are informed and believe, and thereon allege that the City, as mandated by City Charter § 234, and with approval of the Mayor and Common Council for the City, elected to participate in the California Retirement System, subject to the provisions of the PERL.

93.     It is believed, and thereupon alleged, that for at least the fourteen (14) years leading up to the City's associated bankruptcy filing, the City had contracted with CalPERS to provide fire safety employees with a vested retirement benefit wherein the City would pay the employer contributions and also fully pay the member's contribution of 9% (also known as an Employer Paid Member Contribution or EPMC).  This means that Plaintiffs had a contribution rate of zero towards their pensions.

94.     In January 2013, the City unilaterally implemented, through a City Resolution, a pension "cost-sharing" provision wherein the individual Plaintiffs were required to pay 13.989% of their salary/wages to the City for the City to use for general fund expenditures.  Defendants did not obtain any consent to take these earned salary/wages, did not obtain consent to take any payroll deduction from the employees, and did not amend its existing contract with CalPERS.

1    95.    As part of the January 2013 Resolution, Defendants terminated the EPMC, whereby

2    unilaterally increasing Plaintiffs' pension contributions from zero (0) to nine percent (9%).

3    96.    In October 2014, the City again unilaterally imposed "cost-sharing" wherein the all

4    "legacy" bargaining unit members represented by the SBCPF were required ("shall") to contribute

5    50% of the normal cost of the CalPERS benefit.  This continued the 2013-2014 contribution of

6    13.989% of base salary and other negotiated special pays.  This provision then increased the cost-

7    sharing to 16.9% for 2014-2015.  The provision further terminated the nine percent (9%)

8    contribution to employees for the CalPERS EPMC.  Defendants did not obtain any consent to take

9    these earned salary/wages, did not obtain consent to take any payroll deduction from the employees,

10    and did not amend its existing contract with CalPERS.

11    97.    The City asserts that it must have City fire safety employees contribute part of their

12    earned salary to cover increasing pension liabilities, but this proceeding caused Plaintiffs to suffer

13    harm to vested retirement benefits.

14    98.    Public employees, including Plaintiffs, upon acceptance of public employment,

15    acquire a vested right to a pension based on the system then in effect and on terms substantially

16    equivalent to those offered by the employer. *United Firefighters v. Los Angeles*, 210 Cal.App.3d

17    1095, 1102 (1989); *Pasadena Police Officer Assn. V. Pasadena*, 147 Cal.App.3d 695, 703 (1983).

18    99.    The modifications of the Plaintiffs' vested pension rights were not made for the

19    purpose of keeping a pension system flexible to permit adjustments in accord with changing

20    conditions nor to the integrity of the pension system.

21    100.    The modifications of Plaintiffs' vested pension rights were not accompanied by any

22    comparable new advantages.

23    101.    Defendants acted, changing Plaintiffs' vested pension benefits, without explicit

24    authority to raise the basis of the employee's contribution rates; therefore, the employees were and

25    are only required to contribute at the rate in place during the time they were originally employed.

26    102.    Defendants lacked any authority to determine or adjust retirement contribution rates

27    for employees.  Pursuant to the state Constitution, "The retirement board of a public pension or

28    retirement system shall have the sole and exclusive fiduciary responsibility over the assets of the

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL  213.626.2311  •  FAX  213.629.4520

1   public pension or retirement system.  The retirement board shall also have sole and exclusive

2   responsibility to administer the system in a manner that will assure prompt delivery of benefits and

3   related services to the participants and their beneficiaries." Cal.Const. Art. XVI, § 17(a).

4       103.    Defendants did not and are not rejecting its contract with CalPERS, and the

5   CalPERS system is not under-funded to the extent that it requires additional contributions from the

6   employees.  The City is simply seeking to escape from its obligation to provide its employees with

7   forms of deferred compensation with which it previously enticed them; furthermore, the City is not

8   offering any comparable advantage.

9       104.    Defendants did not amend the contract with CalPERS at the time of the

10  implementation of the above changes, nor did they hold an election of the SBCPF's members to

11  approve of the increased rates.  Gov. Code 20474.

12      105.    The City's failure to comply with the PERL and/or failure to amend its contract with

13  CalPERS also caused negative implications for the tax exempt status of the withdrawn

14  contributions under federal tax laws.

15      106.    At the time of implementation of the pension changes, the PERL had limited number

16  of ways for an employer and a member (employee) to share cost and Petitioner is informed and

17  believes, and thereupon alleges that Defendants did not comply with or achieve any exemption

18  allowed under the PERL.

19      107.    Government Code § 20516 provided that "This section shall not apply to any

20  contracting agency nor to the employees of a contracting agency until the agency elects to be

21  subject to this section by contract or by amendment to its contract made in a manner prescribed for

22  approval of contracts.  Contributions provided by this section shall be withheld from members

23  compensation or otherwise collected when the contract amendment become effective."

24      108.    Defendants began withholding members earned wages/compensation in or about

25  February 2013, even though no contract amendments had been or has been made; nor has any

26  amendment become effective.

27

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL  213.626.2311  •  FAX  213.629.4520

109.    As of the date of this filing, Plaintiffs are informed and believe, and thereon allege, that while Defendants are withdrawing compensation from Plaintiffs and the membership of the SBCPF, CalPERS has not amended the pertinent contract.

110.    In 2013, certain pension laws were changed.  Pertinent to this matter, beginning on January 1, 2018, a public agency that has collectively bargained in good faith and has completed impasse procedures, including mediation and fact finding, has the ability to unilaterally require classic members to pay up to 50% of the total normal cost of their pension benefit. However, the employees' contribution may only be increased up to a 12% contribution rate for local firefighters. Therefore, even if cost-sharing could be imposed by the City, the maximum rate would be 12% (and this only can be done starting in 2018). *See* California Government Code §§ 20516.5, 7522.30.

111.    Plaintiffs have put the City on notice of its claim and attempted to reach an informal resolution.  The City has steadfastly maintained its position and refused to alter any practice regarding the cost-sharing and changes in the pension system.

112.    Defendants have a ministerial duty to comply with the Government Code and/or the Public Employment Retirement Laws, and Plaintiffs have a right to the benefits of that ministerial duty.

113.    Defendants have failed to comply with their ministerial duty, as set forth above, to the detriment of the SBCPF and its membership.

114.    Plaintiffs seek a writ of mandate commanding Defendants to continue providing, unchanged, the vested retirement benefits identified above and to honor their ministerial duty to comply with the California Government Code.

115.    Plaintiffs seek an injunction barring and/or a writ of mandate commanding Defendants, and each of them and their representatives, employees and/or agents to set aside, in total, the January 2013 Resolution and the October 2014 Resolution and reimburse Plaintiffs, and its membership for all compensation withheld under said Resolution.  In the alternative, Plaintiffs seek a writ of mandate directing Defendants to set aside as void, rescinded and/or revoked the relevant paragraphs of these Resolutions and reimburse Plaintiffs for all compensation withheld

1   under said Paragraphs, with legal interest, from each and every date that Defendants wrongfully

2   withheld earned wages/compensation to the date payment of the owed wages/salary are made.

3       116.    Plaintiffs do not have a plain, speedy or adequate remedy at law and so brings this

4   proceeding.  Plaintiffs do not have an effective administrative remedy and, thus, is not required to

5   exhaust its administrative remedies.  See *Glendale City Employee Assn. v City of Glendale*, 15

6   Cal.3d 328 (1975).

7       117.    In bringing this proceeding, Plaintiffs have sought enforcement of an important right

8   affecting the public interest which will result in the conferring of a significant benefit upon a large

9   class of persons, to wit, public employees, thereby entitling Plaintiffs to an award of attorneys' fees

10  pursuant to Code of Civil Procedure § 1021.5.

11      118.    Plaintiffs requests this Court to award ancillary damages pursuant to C.C.P. § 1090

12  and 1095.

### FOURTH CAUSE OF ACTION

### DECLARATORY RELIEF – PERL

### (AGAINST ALL DEFENDANTS)

16      119.    For a Fourth Cause of Action, Plaintiffs reallege paragraphs 1 through 118 above as

17  though set forth fully herein.  Plaintiffs further allege:

18      120.    An actual controversy has arisen between Plaintiffs and Defendants regarding their

19  respective rights and obligations under the Public Employment Retirement Laws, as reference

20  above. Specifically, the parties disagree on the Defendants' ability to unilaterally impose cost-

21  sharing; the Defendants ability to unilaterally impose pension contribution increases; the

22  Defendants ability to impose changes in the pension benefits without amending its contract with

23  CalPERS; the Defendants' ability to withhold compensation prior to amendments to its contracts

24  with CalPERS; and/or the City's ability to withhold compensation of the employees without their

25  consent.

26      121.    This proceeding is brought pursuant to California Code of Civil Procedure Section

27  1060, for declaratory relief as to the rights and obligations of the parties under the PERL.

28

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL  213.626.2311  •  FAX  213.629.4520

2446371.1

122.    Plaintiffs do not have a plain, speedy or adequate remedy at law and so brings this proceeding.  Plaintiffs do not have an effective administrative remedy and, thus, is not required to exhaust its administrative remedies.  See *Glendale City Employee Assn. v City of Glendale*, 15 Cal.3d 328 (1975).

123.    In bringing this proceeding, Plaintiffs have sought enforcement of an important right affecting the public interest which will result in the conferring of a significant benefit upon a large class of persons, to wit, public employees, thereby entitling Plaintiffs to an award of attorneys' fees pursuant to Code of Civil Procedure § 1021.5.

124.    Plaintiffs requests this Court to award ancillary damages pursuant to C.C.P. § 1090 and 1095.

## FIFTH CAUSE OF ACTION

### WRIT OF MANDATE – CCP § 1085 AND CITY CHARTER

### (ALL DEFENDANTS)

125.    For a Fifth Cause of Action, Plaintiffs reallege paragraphs 1 through 124 above as though set forth fully herein.  Plaintiffs further allege:

126.    The legislature has classified cities into the two general classes: those organized under charters, termed "chartered cities," and those organized under the general law as enacted by the legislature, termed "general law cities." Cal. Gov't Code §§ 34100-34102.  The California Constitution empowers a city, for its own government, to adopt a charter by majority vote of its electors voting on the question. Cal. Const. Art. XI, § 3.

127.    With respect to municipal affairs, city charters supersede all inconsistent laws. Moreover, it is competent in any city charter to provide that the city governed under it may make and enforce all ordinances and regulations in respect to municipal affairs, subject only to restrictions and limitations provided in the charter. Cal. Const. Art. XI, § 5.

128.    The City is a chartered city.  The City Charter was last  ratified by the voters at the election on November 2, 2004 and  filed in the office of the Secretary of State of the State of California on March 16, 2005 and assigned Charter Chapter number 26 for publication in the statutes of 2005, State of California.

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

129.    The Preamble for the City Charter provides:

"We, the citizens of the City of San Bernardino, hereby establish this Charter to promote economic, environmental, and cultural prosperity throughout our community; to enable our City government to meet the needs of the people effectively and efficiently; to provide for accountability and ethics in public service; and to ensure equality of opportunity for every resident.

131.    Article I, Section 1 of the City Charter states

"The City of San Bernardino may make and enforce all laws and regulations in respect to municipal affairs, subject only to the restrictions and limitations provided in this Charter, and in respect to other matters it shall be subject to general laws."

132.    The Charter of the City of San Bernardino provides that the Mayor and Council shall have power to establish and maintain a Fire Department. (Charter, Article III, § 40(f)).  A true and correct copy of the San Bernardino City Charter is attached hereto as Exhibit B, and incorporated by reference.

132.    Article X, Section 186, of the City Charter, entitled "Salaries," states

"There is hereby established for the City of San Bernardino a basic standard of fixing salaries, classifications, and working conditions of the employees of the Police and Fire Departments of the City of San Bernardino, and the Mayor and the Common Council in exercising the responsibility over these departments vested in them by this Charter shall hereafter be guided and limited by the following provisions:

**FIRST: Classification.**

The following classes of positions are hereby created in the Fire Department and Police Department of the City of San Bernardino, and the code numbers, titles, and salaries as hereinafter set forth are hereby established and fixed for such classes of positions. The letter "P"

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1   represents "Position" and the five steps in Positions 1, 2 and 3 being

2   represented by the letters "a," "b," "c," "d" and "e" are: "a" designating the

3   first six months of service in the respective departments, "b" designating

4   the following eighteen months of service in the respective departments,

5   "c" designating the third year of service in the respective departments, "d"

6   designating the fourth year of service in the respective departments, and

7   "e" designating the fifth and all subsequent years of service.

8   Advancements in salary shall be made automatically step by step after

9   each step of aggregate active service in the department in which the

10  member is employed. Each person employed in the Fire Department and

11  Police Department shall be entitled to receive for his/her services in

12  his/her position the applicable respective rate or rates of compensation

13  prescribed for the class in which his/her position is allocated. Additional

14  titles may be established by the Mayor and Common Council, upon the

15  recommendation of the City Manager, but only titles for Local Safety

16  members of the Police and Fire Departments shall be placed in one of the

17  following classifications having the most nearly equal duties and

18  responsibilities. Local Safety members of the Police and Fire Departments

19  shall mean any local police officer or local firefighter as defined under the

20  provisions of the Public Employees Retirement System Law as specified

21  in the California Government Code or amendments thereto.

22                              **Class of Position**

| Classification Number | Title Fire Department | Title Police Department |
|---|---|---|
| P1(Steps a,b,c,d,e) | Firefighters, Battalion Chief Aide | Police Officer |
| P2(Steps a.b.c.d.e) | Fire Prevention Inspector | Juvenile Officer, Detective, Senior Identification Inspector |

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

| | | |
|---|---|---|
| P3(Steps a,b,c,d,e) | Engineer | Sergeant |
| P4 | Captain, Assistant Fire Prevention Engineer | Lieutenant |
| P5 | Battalion, Chief Drill Master, Fire Prevention Engineer | Captain, Superintendent of Records and Identification |
| P6 | Assistant Chief | Assistant Chief |
| P7 | Chief | Chief |

**SECOND: Basic Salary Schedule**

(a)     The monthly salaries of Local Safety members of the San
Bernardino Police and Fire Departments included in classifications
P1, P2, P3 steps "a" and "e" of P4, P5, P6 and P7 shall be fixed on
August 1, 1976, for the balance of the current fiscal year and,
thereafter, annually on August 1 of each succeeding year at the
amount equal to the arithmetic average of the monthly salaries,
paid or approved for payment to Local Safety members of like or
most nearly comparable positions of the police and fire
departments of ten cities of California with populations of between
100,000 and 250,000 as shown in the latest Annual Report of
Financial Transactions of California Cities published by the State
Controller.

(b)     The ten cities used for fixing the monthly salaries shall be those ten cities
remaining from an original and complete list of all California Cities in the
100,000 to 250,000 population range based on the latest Annual Report of
Financial Transactions of California Cities and the appropriate recognized
employee organization have alternatively struck the names of cities from the

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1    list one at a time until the names of ten cities remain. The representatives to

2    strike the first name from the list shall be determined by lot.

3    (c)    In the event one or more of the ten cities does not have one or more of the

4    comparable position classifications, the monthly salary for the particular

5    classification, shall be computed as the arithmetic average of the next

6    highest and next lowest comparable position classification of that City.

7    (d)    The salaries pain in step "a" shall be the same as the arithmetic average of

8    the starting salaries of the comparable positions in the ten cities and the

9    salaries paid in step "e" shall be the same as the average of the top salaries

10    pain in the comparable positions in the ten cities. The salaries paid in steps

11    "b", "c" and "d" shall be fixed at amounts which will; cause the Local

12    Safety members of the San Bernardino Police and Fire Departments to

13    advance from the starting steps to the maximum pay steps in approximately

14    equal salary advances.

15    **THIRD: Special Salary Provisions:**

16 The following special provisions shall apply in addition to the

17 compensation received in accordance with the above salary positions:

18    (a)    Police Department: Each police officers assigned to traffic

19    enforcement duties on a motorcycle shall be paid when

20    performing such duties during the period of assignment at the rate

21    of not less than fifty dollars per month in addition to the pay step

22    to which he/she is entitles as extra-hazard pay for motorcycle

23    duty. The Police Chief shall certify monthly as to the assignment

24    and the period of time worked to validate entitlement to the extra-

25    hazard pay.

26    (b)    Police and Fire Departments: Any Local Safety member of the

27    Fire and Police Departments temporarily acting in a position in a

28    higher rank during periods of absence of the incumbent or during

2446371.1

1    a vacancy in the position for more than ten (10) consecutive

2    working days or five consecutive shifts , shall receive the same

3    salary for the higher rank to which he/she is entitled, were he/she

4    promoted to that rank during the period in which the employee is

5    acting in the higher rank. The Chief of the department in which

6    the assigned to the higher rank occurs shall certify as to the

7    assignment and the period of time worked in the higher rank to

8    validate entitlement to the salary if the higher rank.

9    (c)    Fire Department- Paramedics. The Mayor and Common Council,

10    upon the recommendation of the City Manager, may authorize

11    additional salary to be paid to local safety members of the Fire

12    Department, assigned to duty as paramedics, during the period of

13    such assignment.

14    (d)    Fire and Police Departments-Education/Longevity Incentive Pay.

15    The Mayor and Common Council, upon the recommendation of

16    the City Manager, may authorize additional salary to be paid to

17    local safety members of the Police Department and the Fire

18    Department who have completed education or longevity

19    requirements specified by the Mayor and Common Council.

20    (e)    Fire Fighters

21    (1)    All employees (below the rank of Battalion Chief)

22    assigned to an average 56 hours per week assignment shall be

23    compensated at an hourly rate of time and one-half (1 2) their

24    regular rate base pay, such compensation to be computed for

25    each one quarter (3) hour increment worked in excess of their

26    average 56 hour weekly assignment.

27    (2)    All employees (below the rank of the Battalion

28    Chief) working a 40 hours per week assignment shall be

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

compensated at an hourly rate of time and one-half (1 2) their

regular hourly rate of base pay, such compensation to be

computed for each 30-minute increment worked in excess of

their regular eight (8) hour per day assignment of their 80 hours

assignment during each pay period.

…

**SIXTH: Definitions:**

The words and terms defined in this subsection shall have the following

meanings in this section:

(a)     A "Shift" means a 24-hour duty for the Fire Department, except

for the positions of Chief, Assistant Chief, and local safety

members working in the Fire Prevention Bureau, and such other

local safety positions as may hereafter be granted a forty (40)

hour average work week by resolution of the Common Council

upon the recommendation of the City Manager.

133.    A city charter is "the supreme law of the City, subject only to conflicting provisions in the federal and state Constitutions and to preemptive state law." *Domar Electric, Inc. v. City of Los Angeles*, 9 Cal.4th 161, 170 (1994).

134.    A charter city may not act in conflict with its charter. Id. at p. 171. "Any act that is violative of or not in compliance with the charter is void." Id.  Any provision in an existing ordinance that is in conflict with a self-executing provision of the charter is, upon adoption of the charter provision, deemed to be repealed. *King v. Leavy*, 124 Cal.App. 422, 429, 12 P.2d 661 (1932).

135.    A city charter may be amended, revised or repealed only by majority vote of the electorate. Cal. Const., Art. XI, § 3, subd. (a); Cal. Gov't Code Section § 34450 et seq.; *Howard Jarvis Taxpayers Assn. v. City of Roseville*, 106 Cal.App.4th 1178 (2003).

136.    Defendants have not, as of this filing, approved the establishment of salaries for Fire Department Ranges P-1, P-2, P-3, and P-4, as were required to be done by August 1, 2014.

1    Plaintiffs have requested that the City take said action, but Defendants have not responded to this

2    request.

3         137.    Defendants, since approximately August 2, 2012, have not paid fire personnel, in the

4    classifications of P-1, P-2, P-3, P-4, or Firefighters/Paramedics (P-1, and paramedic pay) with

5    Charter required overtime; to wit, hourly rate of time and one-half their regular rate of pay for each

6    one quarter hour increment worked in excess of their average 56 hour weekly assignment.

7         138.    On February 7, 2011, the City, by and through its City Council, voted to implement

8    a "salary concession" wherein earned wages/salary would be withheld from each employee's pay

9    check and used for general fund obligations of the City.

10        139.    Plaintiffs filed a legal action to overturn the February 7, 2011, Resolution and

11   obtained a Statement of Decision and Judgment against Defendants' unlawful 2011 actions.  The

12   reductions in compensation, described above, were found to be unlawful modifications to the salary

13   structure included in Charter Section 186.

14        140.    The Mayor and Common Council, on January 30, 2013, passed a Resolution again

15   imposing salary and/or compensation reductions to employees of the City's Fire Department that are

16   represented by the SBCPF.  Once again, the members of the SBCPF were forced to suffer salary

17   reductions, via payroll deductions, with the money being taken from employees being placed in the

18   City's general funds.

19        141.    While Defendants' 2013 Resolution renamed the salary/compensation reductions as

20   "retirement contributions" this labeling is a false statement as Respondents have been put on notice

21   from the California Public Employees Retirement System (CalPERS) that the manner in which

22   Respondents imposed the reductions does not comply with the Public Employment Retirement

23   Laws (PERL) and are not valid retirement contributions.

24        142.    In October 2014, the City again unilaterally imposed "cost-sharing" wherein all

25   "legacy" bargaining unit members represented by the SBCPF were required ("shall") to contribute

26   50% of the normal cost of the CalPERS benefit.  This continued the 2013-2014 contribution of

27   13.989% of base salary and other negotiated special pays.  This provision then increased the cost-

28

Sulmeyer Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1    sharing to 16.9% for 2014-2015.  The provision further terminated the 9% contribution to

2    employees for the CalPERS EPMC.

3    143.    It is believed and thereupon alleged that the manner in which the 2011 "concessions"

4    and the 2013 and 2014 "contributions" have been implemented in exactly the same manner as the

5    2011 concessions and similarly violate the City Charter.

6    144.    By imposing the 2013 and 2014 salary concessions, Defendants, and each of them,

7    again unlawfully circumvented the will of the people of the City by acting in direct contravention of

8    the City Charter and State law.

9    145.    Plaintiffs seek to have this Court compel the City, the City Council and its officials

10    to comply with the law, including its own Charter, by establishing salaries retroactively to August

11    1, 2014; paying overtime owed under the Charter, and setting aside its actions to implement said

12    concessions/contributions and fully reimburse Plaintiffs and its membership for all earned

13    wages/salary wrongfully withheld (plus all applicable legal rates of interest).

14    146.    In doing that which is alleged to have been done, the Defendants have altered the

15    "basic standard for fixing salaries, classifications, and working conditions of the employees of the

16    Fire Department of the City of San Bernardino" as set forth in Section 186 of the City Charter.  By

17    subjecting each and every member of the SBCPF, including the individual Plaintiffs, the imposed

18    changes in their wages, Defendants have acted in violation of the City Charter.

19    147.    Mandamus is a proper remedy to compel a mayor and city council to perform their

20    charter-prescribed duties. *Walker v. County of Los Angeles*, 55 Cal.2d 626, 639 (1961); *Leftridge v.*

21    *City of Sacramento*, 59 Cal.App.2d 516, 525 (1943).  Where these duties are continuing ones, the

22    writ may be directed to future action in the premises. *McAlpine v. Baumgartner*, 10 Cal.2d 409,

23    413-414 (1937).

24    148.    Immediate and preliminary mandamus relief may be necessary pending the outcome

25    of this proceeding in that should the Defendants proceed with their actions, all Plaintiffs will be

26    subjected to substantial pay reductions which will negatively impact their ability to sustain

27    themselves and their families.  Such has been held to constitute irreparable harm.

28

Sulmeyer Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

149.    Plaintiffs do not have a plain, speedy or adequate remedy at law and so brings this proceeding.  Plaintiffs do not have an effective administrative remedy and, thus, is not required to exhaust its administrative remedies.  *See Glendale City Employee Assn. v City of Glendale*, 15 Cal.3d 328 (1975).

150.    In bringing this proceeding, Plaintiffs have sought enforcement of an important right affecting the public interest which will result in the conferring of a significant benefit upon a large class of persons, to wit, public employees, thereby entitling Plaintiffs to an award of attorneys' fees pursuant to Code of Civil Procedure § 1021.5.

151.    Plaintiffs requests this Court issue a make whole remedy pursuant to C.C.P. § 1085, § 1090 and/or 1095 for each and every member of the SBCPF affected by the Defendants' unlawful actions.

## SIXTH CAUSE OF ACTION

## DECLARATORY RELIEF – CITY CHARTER

## (AGAINST ALL DEFENDANTS)

152.    For a Sixth Cause of Action, Plaintiffs realleges paragraphs 1 through 151 above as though set forth fully herein.  Plaintiffs further allege:

153.    As referenced above, an actual controversy has arisen between Plaintiffs and Defendants regarding their respective rights and obligations under the current City Charter. Specifically, the parties disagree on the impact of the language of the City Charter has as it relates to 1) the time for fixing/establishing employees rates of pay; 2) payment of overtime under the Charter; and 3) the City and City Council's ability to reduce/force cost-sharing as part of employees' salary.

154.    Furthermore, the City Charter provides that the Mayor and Council shall have power to establish and maintain a Fire Department. (Charter, Article III, § 40(f)).  A true and correct copy of the San Bernardino City Charter is attached hereto as Exhibit A, and incorporated by reference..  There will continue to be a dispute and controversy between the parties regarding these matters absent the court's intervention.

155.    San Bernardino City Charter, Article X, § 180, provides that "The police and fire departments shall be under the general supervision of the Mayor. The City Manager shall be the immediate supervisor of the Chief of Police and the Chief of the Fire Department. Neither the Mayor nor the City Manager shall interfere or attempt to interfere with the discharge of those duties of the Police or Fire Chief(s) the performance of which are required by law." This section of the City Charter make specific reference to City Attorney Opinion No. 91-2.

156.    San Bernardino City Charter, Article X, § 183, provides, "The Fire Department shall consist of a Chief of the Fire Department and as many ranking officers, firefighters and other employees as the Mayor and Council may determine." This section specifically references City Attorney Opinion No. 91-21.

157.    San Bernardino City Charter, Article X, § 183, subsection A, provides that "The Mayor shall appoint a Chief of the Fire Department, subject to the approval of the Common Council. The Chief of the Fire Department shall have the powers and duties that are now or that may hereafter be conferred upon chiefs of fire departments by the laws of the State, and such powers and duties shall in all respects be promptly executed by the Fire Chief and by authorized personnel in the Fire Department; and he/she shall perform such other duties as may be prescribed by the Mayor and Common Council or by the City Manager."

158.    San Bernardino City Charter, Article X, § 184, provides "The City Manager shall supervise and possess power and authority over all the funds, moneys and appropriations for the use of the Police and Fire Department, also the organization, government and discipline, subject to the restrictions in Section 180 of this Charter, of said Departments, and shall have control of all the property and equipment belonging to the same." This section specifically reference City Attorney Opinion No. 91-2.

159.    San Bernardino City Charter, Article X, § 185 provides "Said Mayor and Common Council shall have power to make all necessary rules and regulations, upon the recommendation of the City Manager, to carry into execution and effect the foregoing powers contained in this Article, and in general to enable the appropriate city officers to manage and control said departments.

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

160.    City of San Bernardino City Attorney Opinion No. 91-2, dealt with the question of whether one of the public safety department of the City of San Bernardino could be abolished and the City could contract out with another public entity to provide the public safety services within the City limits.  The Opinion concludes that before the City may contract out public safety services, a Charter amendment must be presented and approved by the voters.  Said Opinion is attached hereto as Exhibit C, and incorporated by reference.

161.    Defendant Parker has also indicated in written communications with others that it is his desire, as City Manager, to contract out emergency medical services, normally and regularly performed by members of the San Bernardino City Fire Department employees, to private vendors/providers.

162.    To the extent the City intends to follow through on the City Manager's plan to contract out certain Fire Department services to private providers, Plaintiffs contend that under California Government Code § 37103 and/or § 53060 the City may not contract with private entities for municipal services which could not be considered "special services" within the meaning of those statutes, where such services were being satisfactorily performed by City of San Bernardino employees.

163.    Pursuant to law, such "special services" are strictly restricted to specified public services involving financial, economic, accounting, engineering, legal or administrative matters. Moreover, it must be established by the agency that the contemplated outsourcing involves specialized skills, expertise, or training not otherwise possessed by the public employees sought to be displaced.

164.    Moreover, only a public "local agency" within the meaning of California Government Code § 54980, as opposed to a private entity, may be contracted by a legislative body for the performance of municipal services.

165.    Any contract entered into by the City without legal authority is wholly void, ultra vires, and unenforceable. *See Midway Orchards v. County of Butte*, 220 Cal.App.3d 765, 783 (1990).

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

166.    Plaintiffs contend that the City Charter prohibits the City from contracting out of fire services.  Consequently, without a vote by the electorate modifying the City's Charter, City may not contract out the services performed by the San Bernardino City Fire Department.

167.    An actual controversy exists between Plaintiffs and the City regarding the City's ability to contract out services provided by the San Bernardino City Fire Department and the membership of the SBCPF.

168.    Under the City Charter and California state law, the services currently provided by the San Bernardino City Fire Department cannot be contracted out.

169.    Based on the foregoing, Plaintiffs further request that this Court declare and adjudge:

(a)    that fire suppression, fire prevention and emergency medical services currently performed by the San Bernardino City Fire Department, and employees represented by the SBCPF, cannot be contracted out; and

(b)    in order for the City to contract out fire suppression, fire prevent and/or emergency medical services, to another public entity, City must obtain modifications to the City's Charter via a vote of the City's electorate.

170.    In bringing this proceeding, Plaintiffs have sought enforcement of an important right affecting the public interest which will result in the conferring of a significant benefit upon a large class of persons, to wit, public employees, thereby entitling Plaintiffs to an award of attorneys' fees pursuant to Code of Civil Procedure § 1021.5.

171.    Plaintiffs requests this court to award ancillary relief pursuant to C.C.P. § 1090 and 1095.

## SEVENTH CAUSE OF ACTION

## VIOLATIONS OF LABOR CODE

## (AGAINST CITY)

172.    For a Seventh Cause of Action, Plaintiffs reallege paragraphs 1 through 171  above as though set forth fully herein.  Plaintiffs further allege:

Sulmeyer Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

173.   California Labor Code § 221 provides, in part as follows: "It shall be unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by said employer to said employee."

174.   California Labor Code § 222 provides in part as follows: "It shall be unlawful, in case of any wage agreement arrived at through collective bargaining, either wilfully or unlawfully or with intent to defraud an employee, a competitor, or any other person, to withhold from said employee any part of the wage agreed upon."

175.   California Labor Code § 223 provides in part as follows: "Where any statute or contract requires an employer to maintain the designated wage scale, it shall be unlawful to secretly pay a lower wage while purporting to pay the wage designated by statute or by contract."

176.   California Labor Code § 224 provides language mandating prompt payment of wages and prohibiting deductions from pay without consent, unless deductions are required by state or federal law.

177.   California Labor Code § 225 provides in part as follows: "The violation of any provision of Sections 221, 222, 222.5, or 223 is a misdemeanor."

178.   California Labor Code § 225.5 provides in part as follows: "In addition to, and entirely independent and apart from, any other penalty provided in this article, every person who unlawfully withholds wages due any employee in violation of Section 212, 216, 221, 222, or 223 shall be subject to a civil penalty as follows: (a) For any initial violation, one hundred dollars ($100) for each failure to pay each employee; (b) For each subsequent violation, or any willful or intentional violation, two hundred dollars ($200) for each failure to pay each employee, plus 25 percent of the amount unlawfully withheld."

179.   The Code of Civil Procedure, Section 487.020 , and cases construing that statute, hold the importance to an employee, to his or her family, and to society at large, of the employee's prompt receipt of wages. That section prohibits the attachment of an employee's earnings except in certain limited circumstances which are not present in the instant case.  Moreover, it has been held that an employer may not utilize its equitable right of setoff to circumvent this prohibition.

Sulmeyer Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

180.    The January 2013 and October 2014 "concessions" have been deducted from members of the SBCPF without consent or permission.  Additionally, said concessions are deducted from employees that are currently on injury leave pursuant to Labor Code § 4850.  Labor Code § 4850 is applicable to the Defendants as the code covers City firefighters. Labor Code § 4850(b)(2).

181.    Payments made under this Labor Code section are considered workers' compensation benefits, not salary and cannot be reduced. *Los Angeles County Professional Peace Officers' Ass'n v. County of Los Angeles*, 115 Cal.App.4th 866 (2004).

182.    The compensation received by a fireman under provision of this section are mandated to be paid to the employee without loss of salary for period of one year. *Hawthorn v. City of Beverly Hills*, 111 Cal.App.2d 723 (1952), also in accord are *Hostetter v. City of Los Angeles*, 241 Cal.App.2d 397 (1966).

183.    Similar to the provisions of the City Charter, the act of Defendants' complying with section 4850 is purely ministerial.  Where there is no room for discretion in the performance of an act which the law specially enjoins as a duty resulting from an office, mandamus is proper. *Johnson v. Contra Costa County Fire Protection Dist.*, 23 Cal.App.3d 868 (1972).

184.    Plaintiffs, based on the facts alleged herein, asserts that Defendants, and each of them, have violated and/or are implementing a system to violate California Labor laws, including those cited above; thereby entitling Plaintiffs and its membership, of mandamus relief, a make whole remedy, statutory penalties and attorney fees, all in an amount proven at the time of trial.

185.    The duty to obey the labor laws of this state is a ministerial duty and is not discretionary.  By acting, and failing to act, as set forth above, Defendants have violated a ministerial duty.  The Court can issue an order directing the employer to act.

186.    Plaintiffs requests this Court to issue mandamus relief pursuant to C.C.P. § 1085, § 1090 and 1095.

187.    The success of Plaintiffs in this proceeding will result in the enforcement of an important right affecting the public interest in that a significant benefit will be conferred on a large class of persons, that is, public employees, and the necessity and financial burden of private

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1    enforcement of said benefit are such as to make appropriate the award of attorney fees pursuant to

2    California Code of Civil Procedure § 1021.5.

### EIGHTH CAUSE OF ACTION

### DECLARATORY RELIEF – VIOLATIONS OF STATE LAW

### (AGAINST ALL DEFENDANTS)

6    188.    For an Eighth Cause of Action, Plaintiffs reallege paragraphs 1 through 187 above

7    as though set forth fully herein.  Plaintiffs further allege:

8    189.    Plaintiffs contend that portions of the October 6, 2014, Council Action/Resolution,

9    referenced above, are contrary to state law and/or the City Charter and are, thereby void.

10    Defendants believe that all of the provision of the Resolution are legal and binding.

11    190.    An actual controversy has arisen between Plaintiffs and Defendants regarding their

12    respective rights and obligations under the current City Charter  Specifically, Plaintiffs contend,

13    and Defendants disagree regarding the following:

14    A.    Resolution Item No. 13: Overtime, in Section B, defines overtime for fire

15    safety suppression as all time worked in excess of 182 hours in a 24-day

16    work period.  This violates City Charter Section 186, "Third", subsection

17    (e) which provides Fire Fighters (1) All employees (below the rank of

18    Battalion Chief) assigned to an average 56 hours per week assignment shall

19    be compensated at an hourly rate of time and one-half (½) their regular

20    hourly rate of base pay, such compensation to be computed for each one

21    quarter (¼) hour increment worked in excess of their average 56 hour

22    weekly assignment;

23    B.    Resolution Item No. 13, Section B defines time worked as excluding paid

24    leave time.  There is no such definition in Charter Section 186; and, as

25    stated above, the Charter provides a definition of Overtime;

26    C.    Resolution Item No. 13, Section D indicates that the employee will only be

27    paid ½ time for hours between 182 and 192 (10 hours per work period) as

28    the monthly salary includes the first 10 hours.  This is not true.  There are

Sulmeyer Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL  213.626.2311  •  FAX  213.629.4520

15.208 24-day work periods in a year. This equates to 2919 hours per year. Under the 56 hour work week, there is 2912 hours (56 x 52). So 7 hours are not included in the monthly salary;

D.   Item No. 2, Staffing Policy: Defendant asserts that it has the management right to determine staffing levels and assign staff accordingly. Government Code § 3504 provides "The scope of representation shall include all matters relating to employment conditions and employer-employee relations, including, but not limited to, wages, hours, and other terms and conditions of employment, except, however, that the scope of representation shall not include consideration of the merits, necessity, or organization of any service or activity provided by law or executive order. The right to determine staffing levels and assign staff accordingly is subject to the meet and confer provisions of the Meyers-Milias-Brown Act;

E.   Item No. 3, Management Rights: Defendant City asserts that it has the enumerated management rights. This is contrary to the law. An employer's fundamental management decision may have a significant and adverse effect on the bargaining unit's wages, hours, or working conditions (*Building Material and Construction Teamsters' Union, Local 216 v. Farrell* (1986) 41 Cal.3d 651, 660). The City is required to meet and confer (§ 3505) with the Union over any items that affect the wages, hours and terms and conditions of employment;

F.   Item No. 7, Modified Work Duty (Light Duty Policy): This policy requires "City-approved treating physician" to release information about employee's medical condition to City; specifically, the employee is required to forward such information to the "Fire Administration" through the on-duty battalion chief." This constitutes an unlawful policy because of a clear Invasion of right to privacy and/or violates California Civil Code § 56, et seq.;

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

G.    Item No. 17, Drug Policy: Both California and Federal cases have found

that the drug-testing program was "outside the scope of managerial

decisions. *Holliday v. City of Modesto*, (1991) 229 Cal.App.3d 528, 537.

Many serious and legitimate questions arise whenever a drug-testing

program is considered, including: under what conditions is testing

appropriate;  what type of testing is appropriate;  who conducts the tests;

what safeguards are utilized for laboratory integrity and chain of custody of

test samples;  what re-testing procedures are available?  This new policy

takes out all procedures, criteria and testing limits contained in the City's

prior policy. Furthermore, the policy, on its face, constitutes unreasonable

searches under the 4th Amendment, violates a person's right to privacy, 5th

Amendment protections, California's Confidentiality of Medical

Information Act.  (Civ.Code, § 56 et seq.).  Finally, the policy requires the

employee to "consent" to the search, but by ordering consent, said consent

would not be voluntary; and

H.    Item No. 19, Uniform Allowance: This policy provides that employee be

provided a $600 uniform allowance, but employees will be responsible for

purchasing and maintaining health/fitness clothes.  If an employer requires

that an employee wear a uniform, the employer must pay the cost of the

uniform. Labor Code Section 2802, Industrial Welfare Commission Orders,

Section 9.  The term "uniform" includes wearing apparel and accessories of

distinctive design and color.  Business Expenses.  An employee is entitled

to be reimbursed by his or her employer for all expenses or losses incurred

in the direct consequence of the discharge of the employee's work duties.

Labor Code Section 2802**.**

191.    This proceeding is brought pursuant to California Code of Civil Procedure Section

1060, for declaratory relief as to the rights and obligations of the parties under the unilaterally

imposed Resolution, as compared with the City Charter and state and federal law.

1      192.    Plaintiffs desire a declaration of rights that the above provisions of the Resolution,

2 individually or together, violate the City Charter, state and/or federal law and; therefore, are void

3 as a matter of law.

4      193.    There will continue to be a dispute and controversy between the parties regarding

5 these matters absent the Court's intervention.

6      194.    In bringing this proceeding, Plaintiffs have sought enforcement of an important

7 right affecting the public interest which will result in the conferring of a significant benefit upon a

8 large class of persons, to wit, public employees, thereby entitling Plaintiffs to an award of

9 attorneys' fees pursuant to Code of Civil Procedure § 1021.5.

10      195.    Plaintiffs requests this court to award ancillary relief pursuant to C.C.P. § 1090 and

11 1095.

12      WHEREFORE, Plaintiffs respectfully request that this Court:

13      A.    Enter judgment in favor of Plaintiffs and against all Defendants for violations of

14 their civil rights, grant damages, punitive damages and/or injunctive relief to cure the violations

15 and prevent future violations of a similar nature;

16      B.    Enter judgment in favor of Plaintiffs and against Defendants for violation of the

17 Fair Labor Standards Act, grant damages (as requested), punitive damages and/or injunctive relief

18 to cure the violation and prevent future violations of a similar nature;

19      C.    Enter a declaratory judgment that Defendants' violations of the FLSA were not in

20 good faith and an intentional, knowing and willful violation of the FLSA, thus entitling Plaintiffs

21 to liquidated damages and a three (3) year limitation period for recovery of unpaid/under paid

22 overtime compensation;

23      D.    Order Defendants, under the supervision of Plaintiffs' counsel or their designated

24 agents or representatives, to make a complete and accurate accounting of all FLSA time due to

25 each Plaintiff for hours worked since August 2, 2012;

26      E.    Enter a judgment under FLSA Section 216 against Defendants for all sums found

27 due to each Plaintiff, plus interest from the date of accrual;

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

2446371.1

1    F.    Award each Plaintiff monetary liquidated damages equal to their unpaid/underpaid

2 FLSA compensation, plus interest from the date of accrual;

3    G.    Award Plaintiffs their reasonable attorneys' fees and costs of this proceeding to be

4 paid by the Defendants;

5    H.    Under the state law claims, grant the relief, damages and/or declaratory relief

6 requested, together with injunctive, mandamus and/or declaratory relief to cure the violations and

7 prevent future violations of a similar nature;

8    I.    Grant such other relief as may be just and proper.

9    J.    For all causes of action, award Plaintiffs costs and reasonable attorney fees incurred

10 in bringing this proceeding.

11

12 DATED:  April 10, 2015                    **Sulmeyer**Kupetz
                                            A Professional Corporation

13

14

15                                  By:    */s/ David M. Goodrich*
                                           David M. Goodrich
16                                         Attorneys for Plaintiffs

17

18

19

20

21

22

23

24

25

26

27

28

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

# EXHIBIT "A"   (Consents)

## VERIFICATION

1
2
3          The undersigned declares as follows:
4
5          I am a member of the Board of Directors for the San Bernardino City
6  Professional Firefighters Union, Local 891, a Plaintiff in this action, and am duly
7  authorized to make this verification on behalf thereof.
8          I have read the foregoing COMPLAINT, and know the contents thereof.
9  Said document was prepared with the assistance and advice of counsel,
10 and/or other agents and employees of the Union, upon which the Union has
11 relied. The matters stated in the foregoing document, as they related to the
12 Union are true except as to those matters which are stated on information and
13 belief, and as to those matters the Union believes them to be true.

14
15         I declare under penalty of perjury under the laws of the State of
16 California that the foregoing is true and correct.

17
18
19                           _____
                             Thomas "Jeff" English,
20                           President, SBCPF, Local 891
21
22
23
24
25
26
27
28

1  David M. Goodrich (CA Bar No. 208675)
   dgoodrich@sulmeyerlaw.com
2  SulmeyerKupetz
   A Professional Corporation
3  333 South Hope Street, Thirty-Fifth Floor
   Los Angeles, California  90071-1406
4  Telephone: 213.626.2311
   Facsimile: 213.629.4520
5
6  Corey W. Glave (CA Bar No. 164746)
   SBCPFattorney@gmail.com
7  Attorney at Law
   1042 2nd Street
8  Hermosa Beach, CA 90254
   Telephone:  323. 547.0472
9
10 Attorneys for Plaintiffs
   San Bernardino City Professional
11 Firefighters, Local 891, et al.
12
13                  UNITED STATES BANKRUPTCY COURT
14                  CENTRAL DISTRICT OF CALIFORNIA
15                          RIVERSIDE DIVISION
16
   In re                              )    Case No. 6:12-BK-28006 MJ
17                                     )
   City of San Bernardino, CA,        )    Chapter 9
18                                     )
          Debtor                      )
19  _____       )
   SAN BERNARDINO CITY                )    CONSENT TO BE INCLUDED AS AN
20 PROFESSIONAL FIREFIGHTERS,         )    INDIVIDUAL PLAINTIFF
   LOCAL 891; Gregory Parker; Sam     )
21 Bashaw; Chris Nigg; Thomas Jeff    )
   English; Richard Lentine; Steve Tracy; )
22 and Kenneth Konior                 )
                                      )
23        Plaintiffs,                 )
                                      )
24 vs.                                )
                                      )
25 CITY OF SAN BERNARDINO; Alan       )
   Parker, in his official, and in his )
26 individual capacity; and Does 1-10, )
   inclusive,                         )
27                                     )
          Defendants.                 )
28                                     )

                                      1
                          Consent to be a Plaintiff

1    TO THE COURT AND TO EACH PARTY AND COUNSEL OF RECORD:

2        By my signature below, I hereby give my consent to be a plaintiff in the above

3 caption action. I, therefore, authorize the filing and prosecution of the action in my

4 name. By consenting to this action, I agree to be bound by all decisions which the

5 Court shall make in connection with this matter. I understand that the Counsel for the

6 Collective Action/Class, Corey W. Glave and David M. Goodrich, will be representing

7 me in this action and I authorize such counsel to make all decisions with respect to the

8 conduct and handling of this case, including settlement thereof as they deem

9 appropriate and/or necessary. If I should choose to change counsel at some point after

10 executing this consent, I acknowledged that Mr. Glave and Mr. Goodrich will remain the

11 designated Counsel for the Collective Action/Class.

12        At the time of signing of this document, I was over eighteen (18) years of age,

13 executed within the State of California, United States of America on this _____ day of

14 _____, 2015.

15

16        SIGNATURE:         _Gregy Parker_

17        NAME:             GREGORY PARKER

18                          Please Print name

19

20

21

22

23

24

25

26

27

28

2

Consent to be a Plaintiff

EXHIBIT A - 49



1  David M. Goodrich (CA Bar No. 208675)
   dgoodrich@sulmeyerlaw.com
2  **Sulmeyer**Kupetz
   A Professional Corporation
3  333 South Hope Street, Thirty-Fifth Floor
   Los Angeles, California  90071-1406
4  Telephone: 213.626.2311
   Facsimile: 213.629.4520
5

6  Corey W. Glave (CA Bar No. 164746)
   SBCPFattorney@gmail.com
7  Attorney at Law
   1042 2nd Street
8  Hermosa Beach, CA 90254
   Telephone:  323. 547.0472
9

10 Attorneys for Plaintiffs
   San Bernardino City Professional
11 Firefighters, Local 891, et al.

12

13              UNITED STATES BANKRUPTCY COURT

14              CENTRAL DISTRICT OF CALIFORNIA

15                  RIVERSIDE DIVISION

16
   In re                          )   Case No. 6:12-BK-28006 MJ
17                                 )
   City of San Bernardino, CA,     )   Chapter 9
18                                 )
        Debtor                     )
19  _____ )
   SAN BERNARDINO CITY             )   CONSENT TO BE INCLUDED AS AN
20 PROFESSIONAL FIREFIGHTERS,      )   INDIVIDUAL PLAINTIFF
   LOCAL 891; Gregory Parker; Sam  )
21 Bashaw; Chris Nigg; Thomas Jeff )
   English; Richard Lentine; Steve Tracy; )
22 and Kenneth Konior              )
                                   )
23      Plaintiffs,                )
                                   )
24 vs.                             )
                                   )
25 CITY OF SAN BERNARDINO; Alan    )
   Parker, in his official, and in his )
26 individual capacity; and Does 1-10, )
   inclusive,                      )
27                                 )
        Defendants.                )
28 _____ )

                            1

1   TO THE COURT AND TO EACH PARTY AND COUNSEL OF RECORD:

2       By my signature below, I hereby give my consent to be a plaintiff in the above

3   caption action. I, therefore, authorize the filing and prosecution of the action in my

4   name. By consenting to this action, I agree to be bound by all decisions which the

5   Court shall make in connection with this matter. I understand that the Counsel for the

6   Collective Action/Class, Corey W. Glave and David M. Goodrich, will be representing

7   me in this action and I authorize such counsel to make all decisions with respect to the

8   conduct and handling of this case, including settlement thereof as they deem

9   appropriate and/or necessary. If I should choose to change counsel at some point after

10  executing this consent, I acknowledged that Mr. Glave and Mr. Goodrich will remain the

11  designated Counsel for the Collective Action/Class.

12      At the time of signing of this document, I was over eighteen (18) years of age,

13  executed within the State of California, United States of America on this _8_ day of

14  _APRIL_ , 2015.

15

16      SIGNATURE:

17      NAME:          _Sam Bashaw_

18                     Please Print name

19

20

21

22

23

24

25

26

27

28

2

Consent to be a Plaintiff

EXHIBIT A - 51

David M. Goodrich (CA Bar No. 208675)
dgoodrich@sulmeyerlaw.com
**Sulmeyer**Kupetz
A Professional Corporation
333 South Hope Street, Thirty-Fifth Floor
Los Angeles, California 90071-1406
Telephone: 213.626.2311
Facsimile: 213.629.4520

Corey W. Glave (CA Bar No. 164746)
SBCPFattorney@gmail.com
Attorney at Law
1042 2nd Street
Hermosa Beach, CA 90254
Telephone: 323. 547.0472

Attorneys for Plaintiffs
San Bernardino City Professional
Firefighters, Local 891, et al.

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

RIVERSIDE DIVISION

| | |
|---|---|
| In re | Case No. 6:12-BK-28006 MJ |
| City of San Bernardino, CA, | Chapter 9 |
| Debtor | |
| SAN BERNARDINO CITY PROFESSIONAL FIREFIGHTERS, LOCAL 891; Gregory Parker; Sam Bashaw; Chris Nigg; Thomas Jeff English; Richard Lentine; Steve Tracy; and Kenneth Konior | CONSENT TO BE INCLUDED AS AN INDIVIDUAL PLAINTIFF |
| Plaintiffs, | |
| vs. | |
| CITY OF SAN BERNARDINO; Alan Parker, in his official, and in his individual capacity; and Does 1-10, inclusive, | |
| Defendants. | |

1

Consent to be a Plaintiff

EXHIBIT A - 52

1   TO THE COURT AND TO EACH PARTY AND COUNSEL OF RECORD:

2       By my signature below, I hereby give my consent to be a plaintiff in the above

3   caption action. I, therefore, authorize the filing and prosecution of the action in my

4   name. By consenting to this action, I agree to be bound by all decisions which the

5   Court shall make in connection with this matter. I understand that the Counsel for the

6   Collective Action/Class, Corey W. Glave and David M. Goodrich, will be representing

7   me in this action and I authorize such counsel to make all decisions with respect to the

8   conduct and handling of this case, including settlement thereof as they deem

9   appropriate and/or necessary. If I should choose to change counsel at some point after

10  executing this consent, I acknowledged that Mr. Glave and Mr. Goodrich will remain the

11  designated Counsel for the Collective Action/Class.

12      At the time of signing of this document, I was over eighteen (18) years of age,

13  executed within the State of California, United States of America on this _9_ day of

14  _APRIL_, 2015.

15

16      SIGNATURE:

17      NAME:     _CHRIS NIGG_

18                Please Print name

2

Consent to be a Plaintiff

EXHIBIT A - 53

1 │ David M. Goodrich (CA Bar No. 208675)
    │ dgoodrich@sulmeyerlaw.com
2 │ **SulmeyerKupetz**
    │ A Professional Corporation
3 │ 333 South Hope Street, Thirty-Fifth Floor
    │ Los Angeles, California  90071-1406
4 │ Telephone: 213.626.2311
    │ Facsimile: 213.629.4520
5 │
6 │ Corey W. Glave (CA Bar No. 164746)
    │ SBCPFattorney@gmail.com
7 │ Attorney at Law
    │ 1042 2nd Street
8 │ Hermosa Beach, CA 90254
    │ Telephone: 323. 547.0472
9 │
10 │ Attorneys for Plaintiffs
    │ San Bernardino City Professional
11 │ Firefighters, Local 891, et al.

12 │

13 │                 UNITED STATES BANKRUPTCY COURT

14 │                 CENTRAL DISTRICT OF CALIFORNIA

                     RIVERSIDE DIVISION
15 │

16 │                                          Case No. 6:12-BK-28006 MJ

17 │ In re                                    Chapter 9

18 │ City of San Bernardino, CA,

    │        Debtor
19 │ ─────────────────────────────           CONSENT TO BE INCLUDED AS AN
    │ SAN BERNARDINO CITY                     INDIVIDUAL PLAINTIFF
20 │ PROFESSIONAL FIREFIGHTERS,
    │ LOCAL 891; Gregory Parker; Sam
21 │ Bashaw; Chris Nigg; Thomas Jeff
    │ English; Richard Lentine; Steve Tracy;
22 │ and Kenneth Konior

23 │        Plaintiffs,

24 │ vs.

25 │ CITY OF SAN BERNARDINO; Alan
    │ Parker, in his official, and in his
26 │ individual capacity; and Does 1-10,
    │ inclusive,
27 │
    │        Defendants.
28 │

                                1

1    TO THE COURT AND TO EACH PARTY AND COUNSEL OF RECORD:

2        By my signature below, I hereby give my consent to be a plaintiff in the above

3    caption action. I, therefore, authorize the filing and prosecution of the action in my

4    name. By consenting to this action, I agree to be bound by all decisions which the

5    Court shall make in connection with this matter. I understand that the Counsel for the

6    Collective Action/Class, Corey W. Glave and David M. Goodrich, will be representing

7    me in this action and I authorize such counsel to make all decisions with respect to the

8    conduct and handling of this case, including settlement thereof as they deem

9    appropriate and/or necessary. If I should choose to change counsel at some point after

10    executing this consent, I acknowledged that Mr. Glave and Mr. Goodrich will remain the

11    designated Counsel for the Collective Action/Class.

12        At the time of signing of this document, I was over eighteen (18) years of age,

13    executed within the State of California, United States of America on this $8^{7h}$ day of

14    April , 2015.

15

16    SIGNATURE:

17    NAME:            Thomas J. English

18                     Please Print name

19

20

21

22

23

24

25

26

27

28

2

Consent to be a Plaintiff

EXHIBIT A - 55

1 | David M. Goodrich (CA Bar No. 208675)
dgoodrich@sulmeyerlaw.com
2 | **Sulmeyer**Kupetz
A Professional Corporation
3 | 333 South Hope Street, Thirty-Fifth Floor
Los Angeles, California 90071-1406
4 | Telephone: 213.626.2311
Facsimile: 213.629.4520
5

6 | Corey W. Glave (CA Bar No. 164746)
SBCPFattorney@gmail.com
7 | Attorney at Law
1042 2nd Street
8 | Hermosa Beach, CA 90254
Telephone: 323. 547.0472
9

10 | Attorneys for Plaintiffs
San Bernardino City Professional
11 | Firefighters, Local 891, et al.

12

13 |                    UNITED STATES BANKRUPTCY COURT

14 |                    CENTRAL DISTRICT OF CALIFORNIA

15 |                         RIVERSIDE DIVISION

16

17 | In re                                     ) Case No. 6:12-BK-28006 MJ
                                              )
18 | City of San Bernardino, CA,               ) Chapter 9
                                              )
19 |      Debtor                               )
    |_____   )
20 | SAN BERNARDINO CITY                       ) CONSENT TO BE INCLUDED AS AN
    | PROFESSIONAL FIREFIGHTERS,               ) INDIVIDUAL PLAINTIFF
21 | LOCAL 891; Gregory Parker; Sam            )
    | Bashaw; Chris Nigg; Thomas Jeff          )
22 | English; Richard Lentine; Steve Tracy;    )
    | and Kenneth Konior                       )
23 |                                           )
    |      Plaintiffs,                         )
24 |                                           )
    | vs.                                      )
25 |                                           )
    | CITY OF SAN BERNARDINO; Alan             )
26 | Parker, in his official, and in his       )
    | individual capacity; and Does 1-10,      )
27 | inclusive,                                )
    |                                          )
28 |      Defendants.                          )
    |_____   )

                              1

_____
                  Consent to be a Plaintiff

EXHIBIT A - 56

1   TO THE COURT AND TO EACH PARTY AND COUNSEL OF RECORD:

2      By my signature below, I hereby give my consent to be a plaintiff in the above

3   caption action. I, therefore, authorize the filing and prosecution of the action in my

4   name. By consenting to this action, I agree to be bound by all decisions which the

5   Court shall make in connection with this matter. I understand that the Counsel for the

6   Collective Action/Class, Corey W. Glave and David M. Goodrich, will be representing

7   me in this action and I authorize such counsel to make all decisions with respect to the

8   conduct and handling of this case, including settlement thereof as they deem

9   appropriate and/or necessary. If I should choose to change counsel at some point after

10  executing this consent, I acknowledged that Mr. Glave and Mr. Goodrich will remain the

11  designated Counsel for the Collective Action/Class.

12      At the time of signing of this document, I was over eighteen (18) years of age,

13  executed within the State of California, United States of America on this _7_ day of

14  _APRIL_, 2015.

15

16        SIGNATURE:

17        NAME:                    RICHARD LENTINE

18                                 Please Print name

19

20

21

22

23

24

25

26

27

28

                              2

                    Consent to be a Plaintiff

                                              EXHIBIT A - 57

1  David M. Goodrich (CA Bar No. 208675)
   dgoodrich@sulmeyerlaw.com
2  **Sulmeyer**Kupetz
   A Professional Corporation
3  333 South Hope Street, Thirty-Fifth Floor
   Los Angeles, California 90071-1406
4  Telephone: 213.626.2311
   Facsimile: 213.629.4520
5

6  Corey W. Glave (CA Bar No. 164746)
   SBCPFattorney@gmail.com
7  Attorney at Law
   1042 2nd Street
8  Hermosa Beach, CA 90254
   Telephone: 323. 547.0472
9

10 Attorneys for Plaintiffs
   San Bernardino City Professional
11 Firefighters, Local 891, et al.

12

13               UNITED STATES BANKRUPTCY COURT

14               CENTRAL DISTRICT OF CALIFORNIA

15                    RIVERSIDE DIVISION

16
   In re                              )  Case No. 6:12-BK-28006 MJ
17                                     )
   City of San Bernardino, CA,        )  Chapter 9
18                                     )
        Debtor                         )
19  _____       )
   SAN BERNARDINO CITY                )  CONSENT TO BE INCLUDED AS AN
20 PROFESSIONAL FIREFIGHTERS,         )  INDIVIDUAL PLAINTIFF
   LOCAL 891; Gregory Parker; Sam     )
21 Bashaw; Chris Nigg; Thomas Jeff    )
   English; Richard Lentine; Steve Tracy; )
22 and Kenneth Konior                 )
                                       )
23      Plaintiffs,                    )
                                       )
24 vs.                                 )
                                       )
25 CITY OF SAN BERNARDINO; Alan       )
   Parker, in his official, and in his )
26 individual capacity; and Does 1-10, )
   inclusive,                          )
27                                     )
        Defendants.                    )
28  _____       )

1

1    TO THE COURT AND TO EACH PARTY AND COUNSEL OF RECORD:

2        By my signature below, I hereby give my consent to be a plaintiff in the above

3   caption action. I, therefore, authorize the filing and prosecution of the action in my

4   name. By consenting to this action, I agree to be bound by all decisions which the

5   Court shall make in connection with this matter. I understand that the Counsel for the

6   Collective Action/Class, Corey W. Glave and David M. Goodrich, will be representing

7   me in this action and I authorize such counsel to make all decisions with respect to the

8   conduct and handling of this case, including settlement thereof as they deem

9   appropriate and/or necessary. If I should choose to change counsel at some point after

10  executing this consent, I acknowledged that Mr. Glave and Mr. Goodrich will remain the

11  designated Counsel for the Collective Action/Class.

12        At the time of signing of this document, I was over eighteen (18) years of age,

13  executed within the State of California, United States of America on this 7th day of

14  April , 2015.

15

16        SIGNATURE:

17        NAME:        Steve    S.    Tracy

18                     Please Print name

19

20

21

22

23

24

25

26

27

28

2

David M. Goodrich (CA Bar No. 208675)
dgoodrich@sulmeyerlaw.com
**Sulmeyer**Kupetz
A Professional Corporation
333 South Hope Street, Thirty-Fifth Floor
Los Angeles, California  90071-1406
Telephone: 213.626.2311
Facsimile: 213.629.4520

Corey W. Glave (CA Bar No. 164746)
SBCPFattorney@gmail.com
Attorney at Law
1042 2nd Street
Hermosa Beach, CA 90254
Telephone: 323. 547.0472

Attorneys for Plaintiffs
San Bernardino City Professional
Firefighters, Local 891, et al.

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

RIVERSIDE DIVISION

| | |
|---|---|
| In re | Case No. 6:12-BK-28006 MJ |
| City of San Bernardino, CA, | Chapter 9 |
| Debtor | |
| SAN BERNARDINO CITY PROFESSIONAL FIREFIGHTERS, LOCAL 891; Gregory Parker; Sam Bashaw; Chris Nigg; Thomas Jeff English; Richard Lentine; Steve Tracy; and Kenneth Konior | CONSENT TO BE INCLUDED AS AN INDIVIDUAL PLAINTIFF |
| Plaintiffs, | |
| vs. | |
| CITY OF SAN BERNARDINO; Alan Parker, in his official, and in his individual capacity; and Does 1-10, inclusive, | |
| Defendants. | |

1

1    TO THE COURT AND TO EACH PARTY AND COUNSEL OF RECORD:

2        By my signature below, I hereby give my consent to be a plaintiff in the above

3    caption action. I, therefore, authorize the filing and prosecution of the action in my

4    name. By consenting to this action, I agree to be bound by all decisions which the

5    Court shall make in connection with this matter. I understand that the Counsel for the

6    Collective Action/Class, Corey W. Glave and David M. Goodrich, will be representing

7    me in this action and I authorize such counsel to make all decisions with respect to the

8    conduct and handling of this case, including settlement thereof as they deem

9    appropriate and/or necessary. If I should choose to change counsel at some point after

10   executing this consent, I acknowledged that Mr. Glave and Mr. Goodrich will remain the

11   designated Counsel for the Collective Action/Class.

12       At the time of signing of this document, I was over eighteen (18) years of age,

13   executed within the State of California, United States of America on this _7th_ day of

14   __April__, 2015.

15

16       SIGNATURE:        _Kenneth Konior_

17       NAME:             __Kenneth Konior__

18                         Please Print name

19

20

21

22

23

24

25

26

27

28

2

EXHIBIT Ó

**ANNOTATED
CHARTER
of the
CITY OF SAN BERNARDINO
STATE OF CALIFORNIA**

**(THIS CHARTER EFFECTIVE MARCH 6, 2006 EXCEPT
THOSE SECTIONS OTHERWISE NOTED)**

---

**RATIFIED BY THE VOTERS AT THE ELECTION ON NOVEMBER 2, 2004, FILED IN THE OFFICE OF THE SECRETARY OF STATE OF THE STATE OF CALIFORNIA ON MARCH 16, 2005 AND ASSIGNED CHARTER CHAPTER NUMBER 26 FOR PUBLICATION IN THE STATUTES OF 2005, STATE OF CALIFORNIA.**

---

## PREAMBLE

We, the citizens of the City of San Bernardino, hereby establish this Charter to promote economic, environmental, and cultural prosperity throughout our community; to enable our City government to meet the needs of the people effectively and efficiently; to provide for accountability and ethics in public service; and to ensure equality of opportunity for every resident.

## Article I
### Boundaries, Rights and Liabilities

**Section 1. Powers of City.**  The municipal corporation now existing known as the City of San Bernardino shall remain and continue a body politic and corporate in name and in fact, by the name of the City of San Bernardino, and by that name shall have perpetual succession and may sue and defend in all courts and places and in all matters and proceedings, whatever, and all property, rights and interests of the said City shall continue and vest in and belong to said City under this Charter. It may have and use a common seal and alter it at pleasure; may purchase, receive and hold real and personal property within and without the City limits; may sell and dispose of the same for the common benefit; receive bequests and donations of all kinds of property in trust for charitable or other purposes and do all acts necessary to carry out the purposes of such bequests and donations, with power to manage, sell or otherwise dispose of the same in accordance with the terms of the bequest or donation.

The City of San Bernardino may make and enforce all laws and regulations in respect to municipal affairs, subject only to the restrictions and limitations provided in this Charter, and in respect to other matters it shall be subject to general laws.  *(As amended by special election held on April 11, 1921.)  (Wilson v. City (1960) 186 Cal.App.2d 603, 605; Scott v. Common Council (1996) 44 Cal.App.4th 684, 695; City Attorney Opinion No. 90-18)*

C - 1

**Section 2.  Boundaries - Jurisdiction.** The boundaries of the City of San Bernardino shall be as follows: Commencing at the southeast corner of block seven of the Rancho San Bernardino, at the intersection of the center lines of Mill Street and Waterman Avenue, and running thence north along said center line of Waterman Avenue, and along the east boundary of said block seven, and of blocks six, five, four, three, two, one and thirty-two of said Rancho, to the northeast corner of lot one of said block thirty-two; thence west along the north boundary of said lot one and of lot fourteen of said block thirty-two, and the north line of lots one and fourteen of block thirty-three, lots one and fourteen of block thirty-four, lots one and fourteen of block thirty-five, lots one and fourteen of block thirty-six, lots three and six of block fifty-three, and lots three and six of block fifty-nine, to the northwest corner of said lot six of block fifty-nine; thence south along west line of lots six and five of said block fifty-nine, to the southwest corner of said lot five of block fifty-nine; thence east along the south line of said lot five to the intersection of the west line of lot twenty-four of block twenty-one with the north line of Base Line Street; thence south along the west line of lots twenty-four and seven in said block twenty-one, lots twenty-four and seven of block twenty-two, lots twenty-four and seven of block twenty-three, lots twenty-four and seven of block twenty-four, and lots twenty-four and seven in block twenty-five, to the southwest corner of said lot seven of block twenty-five, at the intersection of said west line with the north line of First Street; thence east along the south line of said block twenty-five and along said north line of First Street to the northwest corner of lot eight in block sixty-six, at the intersection of the west line of said lot eight with the said north line of First Street; thence south along the west line of lots eight and one of block sixty-six, to the southwest corner of said lot one of block sixty-six, at the intersection of said west line with the center line of Mill Street; thence east along the center line of said Mill Street and along the southline of blocks sixty-six, fourteen, thirteen, twelve, eleven, ten, nine, eight and seven, to the southeast corner of said block seven at the place of beginning; all being in and of the Rancho San Bernardino, according to the plan of survey of said Rancho, of record in the office of the County Recorder of said San Bernardino County.

The jurisdiction of said city, for all purposes of ownership, control, protection, management and maintenance, shall extend to and embrace all that parcel of land about two and one-half miles northwest of the courthouse in the City of San Bernardino, consisting of ten acres, more or less, and known as the "City Reservoir Tract," and that other parcel of land of about twenty-two acres about one-half mile east of the city limits known as the "Job Antil Tract," and such jurisdiction shall also extend to any other real property that may hereafter be acquired by said City of San Bernardino.

**Section 3.  Time and Change of Boundaries.** The Mayor and Common Council by ordinance shall divide the area of the City into seven (7) wards of approximately equal population and thereafter shall periodically change the boundaries of the wards to maintain them in compact form and as nearly equal in population as possible, provided that such changes shall not be made more than once in any two (2) year period nor within ninety (90) days of any general municipal election.  *(As amended by election held June 7, 1966)*

## Article II
### Elective Officers and Elections

**Section 10.  Primary and General Election**. A primary election shall be held in said City on the first Tuesday after the first Monday in March of each odd numbered year, for the nomination of candidates to be elected at the ensuing general election, and a general election shall be held in said City on the first Tuesday in May of each odd numbered year, for the election of City officers. Beginning with the primary election in 1995, and thereafter a primary election shall be held in said City on the first Tuesday after the first Monday in November in each odd numbered year for the nomination of candidates to be elected at the ensuing general election, and a general election shall be held in said City on the first Tuesday in February of the following even numbered year for the election of City Officers.  Said election shall be conducted in the manner provided for by general law; provided, however, that the Mayor and Common Council shall have power, by ordinance, to provide for the manner of holding such election.   *(As amended by elections held June 4, 1974 and June 2, 1992) (City Attorney Opinion No. 96-3; City Attorney Opinion No. 91-7; City Attorney Opinion No. 91-5)*

**Section 10-A.  Election to Office**.  Any candidate for any City office who at a primary election shall receive votes on a majority of all the ballots cast for candidates for the office for which such candidates seek nomination, shall be elected to such office.  Where two or more candidates are to be elected to a  given office and a greater number of candidates receive a majority than the number to be elected, those candidates shall be elected who secure the highest votes of those receiving such majority, and equal in number to the number to be elected.  Any officer elected shall hold office until his or her successor is elected and qualifies. *(City Attorney Opinion No. 91-5)*

**Section 11. Provision for Elections - Returns - Certificate**. The Mayor and Common Council shall provide for the holding of all City elections.

On the second day after a City election, exclusive of holidays, at 1:30 p.m. the Mayor and Common Council, or the City Clerk, or a canvassing board appointed by the City Clerk by order of the Mayor and Common Council shall meet at the City Hall, San Bernardino, California and proceed to canvass the election returns.

The previous paragraph notwithstanding, all City elections consolidated with elections conducted by the County of San Bernardino, and all City elections that are conducted pursuant to agreement with the County of San Bernardino shall follow the County's process for the conduct of such elections and the canvass of such returns.

At the next regular or adjourned regular council meeting following the completion of the canvass, the Mayor and Common Council shall declare the results of said election as certified by the City Clerk or the Registrar of Voters of the County of San Bernardino as being official. *(City Attorney Opinion No. 96-3)*

**Section 11-A.  Compensation For Officers**. That the Mayor and Common Council shall, regardless of the provisions of the foregoing section, fix the compensation for each inspector, judge, clerk, and other election officers.

**Section 12. Approval and Filing of Bond**.  After the result of an election is declared, or an appointment made, the City Clerk under his/her hand and official seal shall issue a certificate thereof to the person elected or appointed by delivering it to him/her personally, or by depositing it with postage pre-paid in the post office, addressed to him/her at the City of San Bernardino; and within ten days thereafter such person so elected or appointed, shall file the certificate with his/her oath of office attached, in the office of the City Clerk. When an Official Bond is required of an officer it shall be approved and filed before entering upon the duties of his/her office, within twenty (20) days after the certificate of election is issued to him/her.

**Section 13.  Officers Elected**.  There shall be elected at the general election in 1998, and every fourth year thereafter three members of the Common Council,  one each from the First, Second and Fourth Wards, who shall have been qualified electors and residents of their respective wards for a period of at least thirty (30) consecutive days next preceding the date of filing of their nomination papers for the office and who shall be elected by the qualified electors of their respective wards for terms of four years commencing on the first Monday in March next succeeding their elections.  *(As amended by elections held June 4, 1974, November 2, 1976, and June 2, 1992) (City Attorney Opinion No. 97-2)*

**Section 14.  Officers and Terms**.  There shall be elected at its general election in 1996 and every fourth year thereafter, four members of the Common Council, one each from the Third, Fifth, Sixth and Seventh Wards, who shall have been qualified electors and residents of their respective wards for at least thirty (30) consecutive days next preceding the date of filing of their nomination papers for the office and who shall be elected by the qualified electors of their respective wards, a City Attorney, City Clerk and City Treasurer elected at large who shall hold office for terms of four years from and after the first Monday in March and next succeeding their elections.

There shall be elected at the general election in 1998 and every fourth year thereafter, a Mayor who shall be elected at large for a term of four years commencing on the first Monday in March next succeeding such election.  *(As amended by election held June 4, 1974, November 2, 1976, and June 2, 1992) (City Attorney Opinion No. 97-2; City Attorney Opinion No. 96-3; City Attorney Opinion No. 90-31; City Attorney Opinion No. 88-10)*

**Section 14-A**. **Vacancy on Council**. A vacancy on the Common Council, from whatever cause arising, shall be filled for the unexpired term thereof through the election of a successor Council Member by the qualified electors of the ward in which the vacancy has occurred. Such Council Member shall have been a qualified elector and resident of the ward for at least thirty (30) consecutive days next preceding the date of filing of nomination papers for the office.

C - 4

Said election shall be held at the time established by the Mayor and Common Council and shall be conducted in the manner provided for by general law; provided that the Mayor and Common Council shall have power by ordinance to provide for the manner of holding such election and such ordinance shall prevail over the general law.  *(City Attorney Opinion No. 96-3)*

**Section 14-B.  Consolidated General Election**.  Notwithstanding any other section of this Charter, whenever a County-wide election is scheduled to be held within sixty (60) days after the date which a City general election would otherwise be held pursuant to this Charter, the City shall consolidate the City general election with the County-wide election.  In the event said consolidated general election causes the successful candidate to be qualified to take office after the expiration of the term of the incumbent, the term of said incumbent shall be extended until said successor qualifies and takes office, or until the incumbent qualifies and takes office in the event of re-election.  Any such successful candidate elected in said consolidated general election shall take office at the first Council meeting of the month following the month in which the consolidated general election is held. (*As added by election held on November 2, 1999.*)

**Section 15. Vacancies.**  An office becomes vacant when the incumbent thereof dies, resigns, is adjudged insane, convicted of a felony or of any major offense involving a violation of his/her official duties, or is removed from office, or ceases, in the case of a Council Member to be a resident of his/her ward, or, in the case of any other elected official to be a resident of the City, or refuses after notice from the Mayor and Common Council to qualify by taking the oath of office and filing his/her official bond.  *(City Attorney Opinion No. 96-3)*

**Section 16. Military Leave of Absence.**  Anything in this Charter to the contrary notwithstanding, all employees or officers, excepting elective officers, who have heretofore or shall hereafter enter the armed forces of the United States during war or national emergency as declared by the President or the Congress of the United States shall be entitled to a leave of absence during such service in accordance with applicable State and Federal laws**,** and for a period of ninety (90) days thereafter. Every such employee or officer returning to the City within the time herein specified, and who has been honorably discharged from such services, shall be reinstated without loss of status or seniority, provided he/she is still qualified for such office or position.  If the office or position no longer exists, or the employee or officer is no longer qualified for his/her former position, he/she has the right to return to a position to which he/she meets the qualifications at the same compensation, status and seniority.

All persons appointed to fill such positions during war or national emergency shall be temporary appointees only.

**Bonds and Salaries**

C - 5

**Section 20. Approval of Bonds.** Officers of the City, before entering upon the discharge of their official duties, shall execute to said City such Official Bond as may be required by law, ordinance or this Charter. When the amount of any bond is not fixed by law, ordinance or this Charter, and power to fix same is not herein conferred upon any board or officer, it may be fixed by ordinance. All bonds shall be approved by the authorized designee of the Mayor and Common Council and filed with the City Clerk, and shall be recorded by the City Clerk in a book entitled "Official Bonds" and kept for that purpose, except the Bond of the City Clerk, which shall be filed with the Mayor, after being so recorded. The approval of every Official Bond must be endorsed thereon and signed by the officers approving the same after the examination of the surety.

**Section 21.  City Officials as Surety - Form - Liability - Bond of Surety Company.**  City Officers shall not be accepted as surety for each other on Official Bonds. Every Bond shall be in form joint and several and made payable to the City of San Bernardino, and contain a condition that the principal will faithfully perform all official duties that may be imposed upon or required of him/her by law or ordinance, and that at the expiration of his/her term of office he/she will surrender to his/her successor all property, books, papers and documents that may come into his/her possession as such officer. Said Bond must be executed by two or more sureties, but when the amount of the bond is more than five thousand dollars ($5,000.00), the sureties may become severally liable for a portion of not less than twenty-five hundred ($2,500.00), when there are more than two sureties, said sureties may justify in an amount which in the aggregate shall equal double the amount of said bond. But the Mayor and Common Council may require the Treasurer to give a Surety Company Bond in which case the expense of such bond shall be borne by the City, and may accept and approve of a Surety Company Bond for any officer without other surety.

**Section 23.    Additional bond - Vacancy.** When an Official Bond is required of an officer, the Mayor and Common Council may require an additional bond if, in their opinion, the original bond or any surety becomes insufficient. If such additional bond be not given in thirty (30) days, the Mayor and Common Council must declare the office vacant and thereupon it shall become vacant.

**Section 24.  Salary of Mayor.** The Office of Mayor shall be a full time position and the incumbent shall not engage in any business, professional or occupational activities which interfere with the discharge of the duties of such office.  Effective January 1, 2003, the annual salary of the Mayor shall be set at fifty percent (50%) of the salary for a Superior Court Judge, County of San Bernardino, State of California, as of July 1, 2002, and shall thereafter be adjusted and implemented January 1 of each subsequent year at the same fifty percent (50%) figure of the salary for said Superior Court Judge then in effect on said January 1 date.  *(As amended by elections held November 5, 2002, June 4, 1974, and March 6, 1979) (City Attorney Opinion No. 96-3; City Attorney Opinion No. 92-10; City Attorney Opinion No. 88-30; City Attorney Opinion No. 88-13; City Attorney Opinion No. 88-10)*

**Section 24-A. Salary of Council.** The Council Members shall each receive an annual salary of six hundred dollars ($600.00), payable monthly. *(City Attorney Opinion No. 96-3)*

**Section 24-B.  Salary of City Clerk.** That the salary to be received by the City Clerk shall be fixed by the Mayor and the Common Council. *(As amended by special election held on March 15, 1937.)*

## Article III
## Legislative Department - The Common Council

**Section 30. Legislative Power.** The legislative power of the City is hereby vested in the Common Council consisting of seven members, four of whom shall constitute a quorum, but a less number may adjourn from time to time, or compel the attendance of other members. No order, except to adjourn for lack of quorum, or to compel the attendance of a quorum, and no ordinance or resolution shall be valid unless it receives the affirmative vote of four Council Members, or, in the event of a tie vote by the Council Members present, if it receives the affirmative vote of three Council Members and the Mayor. *(Scott v. Common Council (1996) 44 Cal.App.4th 684, 696, ftnt. 8; City Attorney Opinion No. 92-10; City Attorney Opinion No. 91-33)*

**Section 31.  Ordinances - Adoption - Emergency and Urgency.** Except for emergency or urgency ordinances, no ordinance may be adopted by the Common Council on the day of its introduction, nor within five (5) days thereafter, nor except at a regular or adjourned regular meeting. At the time of adoption of an ordinance or resolution it shall be read in full unless, except for its title, the reading thereof is waived by unanimous consent of all Council Members present. If an ordinance is altered after its introduction (except for correction of typographical or clerical errors), it shall not be adopted except at a regular or adjourned regular meeting held not less than five (5) days after the date of such alteration. Ordinances and codes may be adopted by reference in accordance with general law.

Emergency or urgency ordinances and each resolution may be adopted on the day of introduction and may take effect upon adoption; provided, however, that this section is not intended, nor shall it be deemed to affect the method of adopting special ordinances and resolutions as required by municipal improvement act, laws relating to elections, taxation, and annexations, or other provisions of law prescribing the time, form and manner for the adoption of ordinances and resolutions of special cases.

No order, resolution or ordinance shall have effect without approval of the Mayor, except when five (5) members of the Common Council concur in its adoption. In case of orders, the approval of the Mayor shall be presumed unless at the same meeting at which the order is passed, the Mayor causes his/her disapproval, with his/her reasons therefore, to be spread upon the minutes. All resolutions and ordinances after passage must be submitted to the Mayor who shall, within five (5) days after he/she has received the same, endorse his/her

EXHIBIT B - 69

approval or disapproval thereon, giving the reasons for his/her disapproval. Each ordinance or resolution to be valid must be passed by a vote of not less than four (4) Council Members and approval by the Mayor, provided that if the Mayor fails to approve the same it may be passed by a vote of not less than five (5) Council Members, and shall take effect as if approved by the Mayor. *(Castaneda v. Holcomb (1981) 114 Cal.App.3d 939, 941-946; City Attorney Opinion No. 96-10; City Attorney Opinion No. 96-7; City Attorney Opinion No. 88-13; City Attorney Opinion No. 88-7)*

**Section 32.  Ordinances - Enacting Clause.** The enacting clause of all ordinances shall be: "The Mayor and Common Council of the City of San Bernardino do ordain as follows."

**Section 33. Ordinances - Publication.**   After the passage of each ordinance, and at all times thereafter, the City Clerk shall maintain on file and open to public inspection a certified copy of the full text of the ordinance. Within fifteen (15) days after the passage of each ordinance, it shall be published by the City Clerk once in a newspaper of general circulation published and circulated in the City with the names of the members of the Common Council voting for and against the ordinance and the name of the Mayor approving or disapproving the ordinance. The publication of the ordinance may be satisfied by the publication of the entire ordinance or by the publication of a summary of the ordinance, the number and title of the ordinance, and the names of the members of the Common Council voting for and against the ordinance and the name of the Mayor approving or disapproving the ordinance. Such summary shall be prepared by the City Clerk, or other official designated by the Mayor and Common Council, and approved by the City Attorney. The publication shall include a statement that the full text of the ordinance is available for inspection in the office of the City Clerk. The Mayor and Common Council may direct the publication of the entire ordinance in special cases. Ordinances shall not be published in a newspaper if the charge exceeds the customary rate charged by the newspaper for publication of private legal notices, but such ordinances shall be posted by the City Clerk in at least three public places in the City within fifteen (15) days after passage of the ordinances. Except as otherwise provided in this Charter, an ordinance shall not take effect or be valid unless it is published in substantially the manner and at the time required herein. *(As amended by elections held February 4, 1969; and November 6, 1979) (City Attorney Opinion No. 88-18)*

**Section 34. Powers of Common Council - Written Charges.** The Common Council shall have power to adopt rules for its own proceedings; to compel the attendance of witnesses and absent members; the production of papers in any matters under investigation; to judge of the qualification and election of its own members; to punish any member by a fine not exceeding two hundred fifty dollars ($250.00) for disorderly or contemptuous behavior in its presence; and may expel a member or any city officer appointed by the Mayor and Common Council for continued neglect of his/her duty, or the willful violation of any penal law, or any provision of this Charter; but in every case the member or officer accused, if holding office for a definite term shall be entitled to have written charges presented and be heard on his/her own behalf.

The Ayes and Noes shall be taken and entered in the Journal of its proceedings at the request of any member and must be so taken and entered upon the passage of all Ordinances and Resolutions, and in matters concerning the granting of franchises, making of contracts, allowing bills, ordering work to be done, or supplies to be furnished, disposing of City property, or any act that may involve the payment of money or the incurring of a debt against the City.

**Section 35.   Meetings - Time of - Adjournments.** All meetings of the Common Council shall be public, and the regular meetings shall be held on the first and third Mondays in each month, unless such days be a legal holiday, when the meeting shall be held on the following day. Adjournments may be taken from a meeting to a day certain, and in such case the adjourned meeting shall be deemed an adjourned regular meeting.

**Section 36. Mayor to Preside - Temporary Absence of Mayor***; **Mayor Temporarily Unable to Perform Duties**. The Mayor shall preside at all meetings of the Common Council, but shall not be entitled to vote except in the event of a tie. In the absence of the Mayor from any Council meeting, the Common Council may choose one of their own number to preside over that meeting who shall retain the right to vote upon all questions under consideration, and shall have the same power to disapprove any order made by the Common Council, and with like effect as the Mayor would have had if present at this meeting**,** however, that member shall not have the ability to cast an additional vote in the event of a tie.

In case of temporary absence from the City, or sickness, or due to any other cause, the Mayor is temporarily unable to perform the duties of his/her office, the Common Council shall appoint one of their own number Mayor Pro-Tempore who shall have all powers and authority which the Mayor would have possessed if personally present and attending to such duties, and such Mayor Pro-Tempore shall not lose his/her vote as Council Member, but shall not have the ability to cast an additional vote in the event of a tie.  *(City Attorney Opinion No. 96-10; City Attorney Opinion No. 92-25; City Attorney Opinion No. 92-10; City Attorney Opinion No. 88-13; City Attorney Opinion No. 88-10)*

**Section 37.   Council Committees.**  Notwithstanding any other provision(s) of this Charter, the Common Council may create such standing and ad hoc committees as it deems appropriate, to be composed entirely of Council Members and said committee members shall be appointed by the Common Council.

**Section 39.   Power to Override Mayor.**   Any order, directive and/or decision of the Mayor made either formally or informally may be overridden, amended, revised or withdrawn by two-thirds (2/3) vote of the Common Council. *(City Attorney Opinion No. 96-10)*

## Subjects of Legislation

**Section 40. Powers of Mayor and Common Council.** The Mayor and Common Council of the City of San Bernardino, hereafter referred to as Council, shall have the following enumerated powers.

(a) Purchase and Sale of Property.  Council shall have power to purchase, lease, receive and hold real and personal property within or without the city limits, and to control, sell and dispose of the same for the common benefit, provided that the procedure for the sale of real property shall be established by the Council by ordinance but such sale shall not be for less than the fair market value of the property as determined by the Council, based on good and sufficient evidence in the record. *(As amended by election held on March 7, 1995)*

(b) Police and Sanitary Regulations. Council shall have power, subject to any pre-emptive law(s) of the State of California, to make and enforce all such local, police, sanitary and other regulations, as pertain to municipal affairs, and for this purpose may define misdemeanors committed within the city limits or on lands under the jurisdiction of the City, and provide penalties and punishment therefor.

(c) Nuisances. Council shall have power to define nuisances and provide for their removal.

(d) License Fee. Council shall have power to license for purposes of revenue all and every kind of business, occupations, shows, exhibitions, and lawful games carried on in the City and to fix the rate of license fee thereon.

(e) Taxes. Council shall have power to levy and collect taxes subject to State law.

(f) Fire Department. Council shall have power to establish and maintain a fire department, prescribe fire limits and adopt regulations for the protection of the City against fires.

(g) Police. Council shall have power to establish and maintain a police force.

(h) Overflow. Council shall have power to protect the City against overflow.

(i) Houses of Ill Fame. Council shall have power to prohibit and suppress lewdness and houses of ill fame and buildings or places used for lewdness, assignation or prostitution.

(j) Storage. Council shall have power to prohibit the storage of gunpowder, oils or other combustible substances in quantity.

(k) Parks. Council shall have power to lay out and maintain parks.

(l) Hospitals, etc. Council shall have power to regulate hospitals, pesthouses and slaughter houses, and to provide for their removal or discontinuance.

(m) Cemeteries. Council shall have power to provide cemeteries and regulate their management.

(n) Animal Shelter. Council shall have power to establish and regulate a public animal shelter.

(o) City Jail/Holding Area; Use of Inmates. Council shall have power to provide a City jail/holding area and to provide for the utilization of the services of any person(s) sentenced by the court to perform such community service as may be prescribed.

(p) Sewers. Council shall have power to acquire, establish, construct, reconstruct, maintain, operate, manage, repair, improve or finance any building, system, plant, works, facilities or undertaking used for or useful in the collection, treatment or disposal of sewage and the reclamation of effluent therefrom, or storm water, including drainage.

(q) Bridges, Streets, etc. Council shall have power to establish, build and repair bridges; to establish, lay out, alter, keep open, open, close, improve and repair streets, sidewalks, alleys, squares, and other public highways, and places within the City, and to drain, sprinkle, oil and light the same; to remove all obstructions therein; to establish the grades thereof; to grade, pave, macadamize, gravel and curb the same in whole or part, and to construct gutters, culverts, sidewalks and crosswalks thereon, or upon any part thereof; to cause to be planted, set out and cultivated shade trees therein, and generally to manage and control all such highways and places.

(r) Fines and Penalties. Council shall have power to impose fines, penalties and forfeitures for any and all violations or ordinances; and for any breach or violation of ordinances; to fix the penalty by fine or imprisonment, or both.  The violation of any lawful ordinance made by the Mayor and Common Council shall constitute either a misdemeanor or an infraction, as determined by the Council by ordinance, and shall be prosecuted in the name of the people of the State of California.

(s) Compensation and Removal of Officer. Council shall have power to appoint, confirm and remove such appointed officers and appointed full-time permanent employees, and to fix the qualifications, duties and compensations of City employees subject to the civil service provisions and other provisions of this Charter upon the recommendation of the City Manager except that the appointment and removal of the City Manager, Acting City Manager, Chief of Police and Chief of the Fire Department shall only be acted upon in response to the Mayor's nomination in instances of appointments and the Mayor's recommendation in instances of removal(s).  The Council may not, however, remove officers appointed for a definite term, nor deputies, assistants, clerks, and attachés holding office at the pleasure of an elective officer, nor may the Council remove employees of a City Manager-directed department except the Council may give consent to such removal as provided in Section 102(b) herein. Other provisions of this Charter notwithstanding, a Mayor Pro Tempore, acting as the Mayor shall not remove, discharge or recommend the removal or discharge of the City Manager, Acting City Manager, Chief of Police or Chief of the Fire Department

C - 11

unless, and until, said Mayor Pro Tempore, acting as the Mayor shall have been acting as Mayor for a period of not less than sixty (60) consecutive days prior to said removal or discharge, or prior to making a recommendation to remove or discharge. The authority of a Mayor Pro Tempore, while acting as Mayor, to suspend for cause is not limited by the preceding sentence.

(t) Public Utilities. Council shall have power to contract for supplying the City water for municipal purposes, or to acquire, construct, repair and manage pumps, aqueducts, reservoirs or other works necessary or proper for supplying water for the use of such City or its inhabitants, or for irrigating purposes therein, subject to the powers and supervision of the Board of Water Commissioners as in this Charter provided.

(u) Public Works. Council shall have power to acquire, own, construct, maintain and operate street railways, telephone and telegraph lines, gas, electrical and other works for light, power and heat, and to supply such light, power and heat to the municipality and the inhabitants thereof; and to acquire, own and maintain public libraries, museums, gymnasiums, parks and baths.

(v) Permit for Construction in Proximity to City Streets. Council shall have power to permit, under such restrictions, as they may deem proper, the laying of railroad tracks and the construction and operation of street railways and the running of cars drawn by steam, electricity or other power thereon; and the laying of gas and water pipes in the public streets; and the construction and maintenance of telephone and telegraph lines therein.

(w) Schools. Council shall have power to maintain public schools.

(x) Duties Not Defined. Council shall have power to prescribe by ordinance the duties of all officers whose duties are not defined by this Charter, and to prescribe for any officer, duties other than herein prescribed.

(y) Animal Licensing Fee. Council shall have power to impose and collect an annual license fee on any canine owned or harbored within the limits of the City.

(z) Make and Enforce Laws and Regulations. Council shall have power to make and enforce all laws and regulations in respect to municipal affairs, subject only to the restriction and limitations provided in this Charter or by State law.

(aa) Other Powers. Council shall have power to pass all orders, resolutions and ordinances and to do and perform any and all other acts and things necessary or proper to complete execution of the powers vested by law or this Charter, or inherent in the municipality, or that may be necessary or proper for the general welfare of the City or its inhabitants.
*(In Re Pedrosian (1932) 124 Cal.App. 692, 695 regarding (c) and (z) above; City Attorney Opinion No. 93-19; City Attorney Opinion No. 92-26; City Attorney Opinion No. 92-10; City Attorney Opinion No. 91-33; City Attorney Opinion No. 91-21; City Attorney Opinion No. 91-2; City Attorney Opinion No. 90-21; City Attorney Opinion No. 89-18; City Attorney Opinion No. 89-15; City Attorney Opinion No. 89-11; City Attorney Opinion No. 88-30; City Attorney Opinion No. 88-10)*

**Section 41.   System for Assessment, Levy, and Collection of Taxes.**
The Mayor and Common Council shall have power, and it shall be their duty, to provide by ordinance a system for the assessment, levy and collection of all City taxes, which system shall conform as nearly as the circumstances of the case may permit, to the provisions of the laws of this State in reference to assessment, levy and collection of State and County taxes, except as to the time for such assessment, levy and collection, and except as to the officers by whom such duties are to be performed. All taxes assessed together with any percentage imposed for delinquency, and the cost of collection, shall constitute liens on the property assessed, from and after the first Monday in March in each year, which liens may be enforced by a summary sale of such property and the execution and delivery of all necessary certificates and deeds therefor, and such regulations as may be prescribed by ordinance, or by action in any court of competent jurisdiction to foreclose such lien; provided that any property sold for such taxes shall be subject to redemption within the time and in the manner provided, or that may thereafter be provided by law for the redemption of property sold for State or County taxes. All deeds made upon any sale of property for taxes, or special assessment under the provisions of this Charter shall have the same force and effect in evidence as is, or may hereafter be provided by law for deeds for property sold for nonpayment of State or County taxes. The maximum rate of taxation shall not exceed in any one (1) year one dollar and thirty-five cents ($1.35) upon each hundred dollars ($100.00) of valuation or property assessed exclusive of the amount necessary to pay the principal of and interest on the bonded indebtedness of the City.   *(As amended by special election held June 5, 1956)*

**Article IV
Elected Municipal Officers**

**Mayor**

**Section 50. Chief Executive Officer.** The Mayor shall be the Chief Executive Officer, and chief spokesperson, of the City of San Bernardino and a citizen of the State of California who shall be at least thirty years of age and a resident and qualified elector of the City for a period of at least thirty (30) consecutive days next preceding the date of filing nomination papers for the office. The Mayor shall vigilantly observe the official conduct of all public officers, and take notice of the fidelity and exactitude, or the want thereof, with which they execute their duties and obligations, especially in the collection, administration and disbursement of public funds and property. The books, records and official papers of all departments, boards, officers and persons in the employ or service of the City shall, at all times be open to all persons for inspection and examination. Any defamation or willful neglect of duty or official misconduct which may be reported or discovered by the Mayor shall be laid before the Common Council in order that public interests may be protected and the person in default proceeded against according to law. The Mayor shall, from time to time, give the Common Council information in writing relative to the state of the City's municipal affairs and business, and shall recommend such measures as may be deemed beneficial.

C - 13

The Mayor shall have the books and records of all public departments, pertaining to the finances of the City, experted by a competent person at least once in every year. Any person refusing to submit to, or permit such examination, or purposely delaying, or impeding the same, may be suspended from office by the Mayor and removed for malfeasance by the Mayor and Common Council. The Mayor shall have general supervision over all the departments and public institutions of the City. The Mayor shall take all proper measures for the preservation of public order and suppression of all riots and tumults. *(City Attorney Opinion No. 97-2; City Attorney Opinion No. 96-1; City Attorney Opinion No. 95-2; City Attorney Opinion No. 92-10; City Attorney Opinion No. 91-33; City Attorney Opinion No. 88-13; City Attorney Opinion No. 12; City Attorney Opinion No. 88-10)*

**Section 51. Appointments and Vacancies.** The Mayor, with the consent and approval of the Common Council, shall appoint all officers, and all members of joint powers authorities, committees, and commissions, regardless of whether they are local, county, regional, state or otherwise, except those appointments made by the City Manager or by elected officials pursuant to this Charter, and except any other appointments for which this Charter expressly provides otherwise, and shall fill all vacancies in an elective office not otherwise provided for in this Charter; provided that in no case where a vacancy has occurred and an appointment been made to an elective office, shall the officer hold beyond the next general municipal election at which time an election shall be held for that office so vacated to fill the unexpired term. In case of a vacancy in the office of Mayor, the vacancy shall be filled by the Common Council by a majority vote, and the appointee shall be a person meeting all of the requirements for the office of Mayor found in Section 50, and said person shall hold office for the unexpired term. In filling a vacancy in the office of Mayor, and in the process of filling such vacancy, the Mayor Pro Tempore shall not have the authority to exercise any veto or vetoes. *(City Attorney Opinion No. 96-10; City Attorney Opinion 93-19; City Attorney Opinion No. 92-18; City Attorney Opinion No. 91-33; City Attorney Opinion No. 88-30; City Attorney Opinion No. 88-13; City Attorney Opinion No. 88-12; City Attorney Opinion No. 88-10)*

**Section 52. Supervision by Mayor**. The Mayor shall have the general supervision of the City Manager, Acting City Manager, Chief of Police, Chief of the Fire Department, and of all elected officers, except Council Members. The Mayor shall have the authority to suspend and discharge, for cause, the City Manager and/or the Acting City Manager subject to the laws of the State of California. *(City Attorney Opinion No. 96-1; City Attorney Opinion No. 95-2; City Attorney Opinion No. 93-19; City Attorney Opinion No. 92-18; City Attorney Opinion No. 92-10; City Attorney Opinion No. 92-8; City Attorney Opinion No. 91-33; City Attorney Opinion No. 91-4; City Attorney Opinion No. 88-20; City Attorney Opinion No. 88-19; City Attorney Opinion No. 88-13; City Attorney Opinion No. 12; City Attorney Opinion No. 88-10)*

# City Attorney

**Section 55. Position - Duties - Salary**. (a) The office of City Attorney shall be a full-time position, and the incumbent shall not engage in private practice.

C - 14

(b) To be eligible to hold the office of City Attorney, the person elected or appointed shall be an attorney at law, duly licensed as such under the laws of the State of California, and shall have been engaged in the practice of law for at least five (5) years prior to his/her election or appointment, and shall have been a resident and elector of the City for a period of at least thirty (30) consecutive days next preceding the appointment or the filing of nomination papers for election to the office.

(c) In the event a vacancy shall occur in the office of City Attorney during his/her term, such vacancy shall be filled by appointment by the Mayor and Common Council, which appointment shall be valid until the next general municipal election, at which time a City Attorney shall be elected for the remainder of any unexpired term, or for a full term in accordance with Article II of this Charter.

(d) The City Attorney shall be the chief legal officer of the City; he or she shall represent and advise the Mayor and Common Council and all City officers in all matters of law pertaining to their offices; he or she shall represent and appear for the City in all legal actions brought by or against the City, and prosecute violations of City ordinances, and may prosecute violations of State law which are misdemeanors or infractions and for which the City Attorney is specifically granted the power of enforcement by State law without approval of the District Attorney, or those violations which are drug or vice related; he or she shall also act and appear as attorney for any City officer or employee who is a party to any legal action in his or her official capacity; he or she shall attend meetings of the City Council, draft proposed ordinances and resolutions, give his or her advice or opinion in writing when requested to do so in writing by the Mayor or Common Council or other City official upon any matter pertaining to Municipal affairs; and otherwise to do and perform all services incident to his or her position and required by statute, this Charter or general law.

(e) The salary of the City Attorney shall be fixed by the Mayor and Common Council, but shall not be less than seventy-five hundred dollars ($7,500.00) per annum.  He/She shall be provided with office space and equipment, and clerical help by the City.

*(Scott v. Common Council (1996) 44 Cal.App.4th 684, 686, 696, regarding Section 55 (d).) (City Attorney Opinion No. 96-3; City Attorney Opinion No.89-11; City Attorney Opinion No. 87-59; City Attorney Opinion No. 87-36)*

## City Clerk

**Section 60. Duties.** The duties of the City Clerk shall be to keep the corporate seal and all books, papers, records and other documents belonging to his/her office, attend all meetings of the Mayor and Common Council and keep a journal of the proceedings. He/She shall have full power and authority to take all affidavits and administer all oaths necessary in the transaction of city business, but shall make no charge therefor. His/Her official books and records shall be kept properly indexed and be open to public inspection during office hours. He/She shall

C - 15

number and keep a record of all demands allowed and certified to him/her, showing the date of approval, to whom the same is allowed, the nature of the claim, and the fund out of which the same is payable. He/She shall issue all licenses and countersign all warrants on the City Treasury, except warrants of the boards, and shall do and perform all other acts required of him/her by this Charter, or by ordinance, or which may be required of him/her by the Mayor and Common Council.  *(City Attorney Opinion No. 90-31)*

## Treasurer

**Section 70.  Duties.** The Treasurer shall receive and pay out all moneys belonging to the City, and shall keep an account of all receipts and expenditures, under such rules and regulations as may be prescribed. He/She shall make a monthly statement to the Mayor and Common Council of the receipts and expenditures of the preceding month, and shall perform all duties required of him/her by law and the Mayor and the Common Council. He/She shall not pay out any monies belonging to the City except on claims presented, allowed and submitted in the manner provided by this Charter.  *(Scott v. Common Council (1996) 44 Cal.App.4th 684, 696)*

**Section 90.    Veto Power of Mayor in Community Development Commission.**  When pursuant to state law the Mayor and Common Council have designated themselves as the Community Development Commission of the City, the Mayor shall have the power of veto of all orders and resolutions of the Commission, in the same manner as he or she has as Mayor of the City, subject to the power of the Commission to override the veto, in the same manner as the Council has in the City.  *(As added by election held November 5, 1996)*

## Article V
## City Manager

**Section 100.  Selection and Qualifications**.  The Mayor shall appoint, subject to confirmation by the Common Council, a City Manager who shall be the chief administrative officer of the City.  The City Manager shall be responsible for the administration of all City departments except the Offices of the Mayor, City Attorney, City Clerk, City Treasurer, the Water Department, the Free Public Library and the Civil Service System. Said City Manager shall be at least 30 years of age and shall be a resident of the City or shall become a resident of the City within 180 days of assuming office. Said City Manager shall have received, from an accredited college or university, a masters degree in public administration, business administration, or an equivalent degree in a related field, or a higher degree, and said City Manager shall have served as a City Manager, or as a City Administrator, or Chief Executive Officer of a county, or as an Assistant City Manager, City Administrator, or Chief Executive Officer of a county for a minimum of three years.  The Mayor shall appoint the person deemed best qualified on the basis of executive and administrative capabilities, giving preference to candidates with management experience, and knowledge of accepted practices with respect to the duties of the office as set forth in this Charter.

C - 16

**Section 101.  Assistant City Manager.**  The City Manager shall have the power to appoint, with the confirmation of the Mayor and Common Council, an Assistant City Manager, who shall be empowered to perform all duties of the City Manager in the event of the absence or disability of the City Manager and such other duties as the City Manager shall direct.  The Assistant Manager shall serve at the pleasure of the City Manager.

**Section 102.  Authority and Duties of the City Manager.**  The City Manager shall have the following authority and duties:

(a)    To direct and exercise immediate supervision over the administration of all Manager-directed departments of the City;

(b)    To appoint, subject to section 40(s) of this charter; exercise immediate supervision over, suspend, and remove, all City employees of all Manager-directed departments of the City in both the classified and unclassified service; except that for the classified service, such powers shall be pursuant to the Civil Service provisions of this Charter, Civil Service rules, regulations and ordinances, and except that the removal of such employees in the unclassified service is subject to the consent of the Mayor and Common Council; and to appoint any temporary, part-time employees of all Manager-directed departments of the City;

(c)    To ensure, in cooperation with the Attorney General, District Attorney, City Attorney, Police Chief and Fire Chief, that all laws, ordinances, orders, resolutions, contracts and franchises are enforced and executed;

(d)    To attend all meetings of the Mayor and Common Council or council committee meetings, and to have the right to participate in the discussion without vote;

(e)    To prepare and submit the annual budget and to keep the Mayor and/or the Mayor and Common Council fully advised as to the financial condition and needs of the City, including the filing of  annual and interim financial reports;

(f)    To submit such reports as the Mayor and/or the Mayor and Common Council may require concerning the operations of Manager-directed departments, and to recommend to the Mayor and Common Council the adoption of measures deemed advisable;

(g)    To perform such other duties as are specified in the Charter, by law or required by the Mayor and/or the Mayor and Common Council;

(h)    To confer regularly with the Mayor, to implement the policies of the Mayor and Common Council as directed by the Mayor and to keep the Mayor informed of any issues, events and controversies that may arise; to be responsible for the implementation of the Mayor's policy directives and to insure that those

directives are acted upon by all supervisors and employees in the Manager-directed departments of the City;

(i)     To confer regularly with the City Attorney on legal issues; to immediately notify the City Attorney of any important legal issues or difficulties that arise; to obtain the legal advice of the City Attorney, and to carefully consider such advice, understanding that recommendations of the City Attorney are advisory only.  Neither the City Attorney, nor employees of the Office of the City Attorney, has authority to issue orders to the City Manager or any of his/her subordinates; it is the responsibility of the City Manager to insure that all Manager-directed departments and the employees of those departments perform all of their duties legally and that those departments and their employees are faithful in the observance, adherence, and enforcement of all pertinent laws, ordinances, and legal requirements in the performance of their duties and in their official conduct;

(j)     To confer regularly with the City Treasurer on financial issues, to obtain the financial advice of the City Treasurer and to carefully consider that advice, and to keep the Treasurer informed of all financial matters and to immediately notify the City Treasurer of any important financial issues or difficulties that arise.

**Section 103.  Vacancy**.  Whenever a vacancy occurs in the office of the City Manager, the Mayor shall proceed immediately to appoint a City Manager, subject to confirmation by the Common Council.  Until a City Manager is appointed and has assumed the duties of the office, the Assistant City Manager shall be designated as Acting City Manager.  He/She shall perform all of the duties of City Manager and be vested with all the powers of City Manager as set forth in this Charter.  The Assistant City Manager shall continue in the position of Acting City Manager, subject to the Mayor's authority to remove the Acting City Manager, until a new City Manager has been appointed and has assumed the duties of that office.

**Section 104.  Mayor and Common Council's Authority Over the City Manager and Other City Employees**.  Neither the Mayor nor any member of the Common Council, nor any other elected City official, nor the Common Council, nor any of its committees or members shall dictate or attempt to dictate, either directly or indirectly, the appointment of any person to office or employment by the City Manager, or in any manner interfere with or prevent the City Manager, from exercising judgment in the appointment of officers and employees in the administrative service.  Neither the Mayor, Common Council Members, employees of the Common Council, nor employees of the Office of the Mayor, shall give orders to any of the subordinates of the City Manager, either publicly or privately.

**Section 105.  Non-Eligibility of Elected Officials**.  No person who held any elected office in the City, between June 1, 1987, and the effective date of this Charter, regardless of how long any such person held any such elected office, may be employed as City Manager until eight years passes from the effective date of this Charter, and no person who holds any elected office on or after the effective

date of this Charter may be employed as City Manager until eight years passes after such person leaves said elected office.

**Article VI**
**Reserved**

**Article VII**
**Initiative, Referendum and Recall**

**Section 120. The Initiative**. Any proposed ordinance may be submitted to the Common Council by a petition signed by qualified and registered electors of the City equal in number to the percentage hereinafter required. The signatures to the petition need not all be appended to one paper, but each signer shall add to his/her signature his/her place of residence, giving the street and such other identification as may be required by the registration law.  One of the signers of each such paper shall make oath before an officer qualified to administer oaths, that the statements therein made are true, and that each signature to the paper appended is the genuine signature of the person whose name purports to be thereunto subscribed. Within ten days from the date of filing such petition, the City Clerk shall examine and from the great register ascertain whether, or not, said petition is signed by the requisite number of qualified electors and if necessary, the Council shall allow him/her extra help for that purpose, and he/she shall attach to said petition his/her certificate showing the results of said examination. If, by the Clerk's certificate, the number of signatures on the petition is shown to be insufficient, it shall be returned forthwith by the Clerk to the filer(s) thereof who shall have an additional ten (10) days from the date the petition is returned to them by the Clerk, to obtain the required number of signatures. The Clerk shall, within ten (10) days after such additional ten (10) day period to obtain additional signatures, make like examination of said petition, and if his/her certificate shall show the same to be insufficient, it shall be returned to the person filing same, without prejudice, however, to the filing of a new petition to the same effect. If the petition shall be found to be sufficient the Clerk shall submit the same to the Council without delay.

If the petition accompanying the proposed ordinance be signed by electors equal in number to thirty percent (30%) of the entire vote cast for all candidates for Mayor at the last preceding City election at which a Mayor was elected, and contains a request that said ordinance be submitted forthwith to a vote of the people at a special, or general municipal election, then the Council shall either:

(a) Pass such ordinance without alteration within twenty (20) days after the attachment of the Clerk's certificate of sufficiency to the accompanying petition (subject to referendary vote), and if the ordinance shall be passed by the Council, but shall be vetoed by the Mayor, and on reconsideration shall fail of passage by the Council, then, within five (5) days after determination that said ordinance shall have so failed of final adoption, the Council shall proceed to call a special election at which said ordinance without alteration, shall be submitted to a vote of the people; or,

(b) Forthwith after the Clerk shall attach to the petition accompanying such Ordinance his/her certificate of sufficiency, the Council shall proceed to call a special election at which said ordinance, without alteration, shall be submitted to a vote of the people.

The ballots used when voting upon said proposed ordinance shall contain the words, "For the Ordinance," (stating the general nature of the proposed ordinance) and "Against the Ordinance," (stating the general nature of the proposed ordinance). If a majority of the qualified electors voting on said proposed ordinance shall vote in favor thereof, such ordinance shall thereupon become a valid and binding ordinance of the City; and any ordinance proposed by petition, or which shall be adopted by a vote of the people, cannot be repealed or amended except by a vote of the people obtained in like manner.

Any number of proposed ordinances may be voted upon at the same election. In accordance with the provisions of this section; provided that there shall not be held under this section of the Charter more than one special election in any period of twelve months. **(Effective March 16, 2005)**

**Section 121.  The Referendum.** No ordinance passed by the Common Council (except when otherwise required by the general laws of the State, or by the provisions of this Charter, respecting street improvements and except an ordinance for the immediate preservation of the public peace, health, or safety, which contains a statement of its urgency, and is passed by a two-thirds (2/3) vote of the Council, but no grant of any franchise shall be construed to be an urgency matter, but all franchises shall be subject to the referendary vote herein provided) shall go into effect before thirty (30) days from the time of its final passage and its approval by the Mayor; and if during said thirty days a petition signed by electors of the City equal in number to at least thirty percent (30%) of the entire vote cast for all candidates for Mayor at the last preceding City election at which time a Mayor was elected, protesting against the passage of such ordinance, be presented to the Council, the same shall thereupon be suspended from going into operation, and it shall be the duty of the Council to reconsider such ordinance, and if the same is not entirely repealed, the Council shall submit the ordinance proposed to the vote of the electors of the City either at the next general municipal election or at a special municipal election to be called for that purpose, and such ordinance shall not go into effect or become operative unless a majority of the qualified electors voting on the same, shall vote in favor thereof. Said petition shall be in all respects in accordance with the provisions of the first section of this article (The Initiative) and shall be examined and certified by the Clerk in all respects as therein provided. *(City Attorney Opinion No. 96-7; City Attorney Opinion No. 96-4)*

**Section 122. The Recall**. Proceedings may be commenced for recall of the holder of any elective office of this City and the election of a successor of the holder sought to be removed by the service, filing and publication of a notice of intention to circulate a recall petition. Such proceedings may not be commenced against the holder of an office unless, at the time of commencement, the holder has held office for at least ninety days and no recall petition has been filed against

such holder within the preceding six months. A petition demanding the recall of the officer sought to be recalled shall be submitted to the City Clerk. The petition shall be signed by not less than fifteen percent (15%) of the voters of the City, or in the case of a City Council Member elected by ward twenty-five percent (25%) of the voters of that ward, according to the County Clerk's last official report of registration to the Secretary of State. No signature may be affixed to the petition until the proponents have served, filed and published a notice of intention to circulate a recall petition, containing the name of the officer sought to be recalled and the title of his/her office, a statement in not more than 500 words of the grounds on which the recall is sought, and the name and address of at least one, but no more than five proponents. The notice of intention shall be served, personally or by certified mail, on the officer sought to be recalled, and a copy thereof with a certificate of the time and manner of service shall be filed with the clerk of the legislative body. Within seven (7) days after the filing of the notice of intention, the officer sought to be recalled may file with the City Clerk an answer in not more than 500 words to the statement of the proponents and if an answer is filed, shall serve a copy thereof, personally or by certified mail, on one of the proponents named in the notice of intention.  At the time the proponents publish the notice and statement referred to above, the officer sought to be recalled may have the answer published at his/her expense. If the answer is to be published the officer shall file with the City Clerk at the time the answer is filed a statement declaring his/her intent that the answer be published. The statement and answer are intended solely for the information of the voters and no insufficiency in the form or substance thereof shall affect the validity of the election or proceedings. The notice and statement as referred to above, and the answer, if it is to be published shall be published at least once in a newspaper of general circulation, as described in Sections 6000 to 6066 of the Government Code, adjudicated as such.

　　　　Seven (7) days after the publication of the notice, statement and answer, if it is to be published, the recall petition may be circulated and signed. The petition shall bear a copy of the notice of intention, statement and answer, if any. If the officer has not answered, the petition shall so state. Signatures shall be secured and the petition filed within ninety (90) days from the filing of the notice of intention. If such petition is not filed within the time permitted by this section, the same shall be void for all purposes. The signatures to the petition need not all be appended to one paper; but each signer shall add to his/her signature his/her place of residence, giving the street and such other identification as may be required by the registration law. One of the signers of each such paper shall make oath before an officer qualified to administer oaths, that the statements therein made are true, and that each signature to the paper appended, is the genuine signature of the person whose name purports to be thereunto subscribed. Within thirty (30) days after the date of filing such petition the City Clerk shall examine and ascertain whether or not said petition is signed by the requisite number of qualified electors and, if necessary, the Council shall allow extra help for that purpose, and the City Clerk shall attach to said petition a certificate showing the result of said examination. If, by the City Clerk's certificate, the number of signatures on the petition is shown to be insufficient, it shall be returned forthwith by the Clerk to the filer(s) thereof who shall have an additional thirty (30) days from the date the petition is returned to

them by the Clerk to obtain the required number of signatures. The City Clerk shall, within thirty (30) days after such additional thirty (30) day period to obtain additional signatures, make like examination of said petition, and, if his/her certificate shall show the same to be insufficient it shall be void for all purposes. If the petition shall be found to be sufficient, the City Clerk shall submit the same to the Council without delay and the Council shall thereupon order and fix a date for holding said election, not less than fifty (50) days, nor more than seventy (70) days from the date of the City Clerk's certificate to the Council that a sufficient petition is filed.

The ballots used when voting upon said proposed recall shall contain the words "shall (title of office and the name of the person against whom the recall is filed) be recalled?" and the words "yes" and "no."

The Council and the City Clerk shall make, or cause to be made, publication of notice and all arrangements for conducting, returning and declaring the results of such election in the same manner as other City elections.

Qualified candidates to succeed the person against whom the recall is filed, shall be listed on the ballot, except that the incumbent shall not be eligible to succeed himself/herself in any such recall election.

In any such removal election, if a majority of the votes cast is for "yes" on the question of whether or not the incumbent should be recalled, the candidate receiving the highest number of votes shall be declared elected. The incumbent shall thereupon be deemed removed from the office upon qualification of his/her successor. In case the party who received the highest number of votes should fail to qualify within ten (10) days after receiving notification of election, the office shall be deemed vacant.  The successor of any officer so removed shall hold office during the unexpired term of his/her predecessor.  **(Effective March 16, 2005)**

## Article VIII
## Revenue and Finance

**Section 130. Reports and Estimates.** On or before the first Monday in June in each year the City Manager shall transmit to the Mayor and Common Council, accompanied with the estimates and reports of each department an estimate of the probable financial necessities of the City Government for the fiscal year, stating the amount required to meet the interest and principal on all bonded or funded indebtedness of the City, together with the amount needed for the salaries and probable wants of all the departments of the Municipal Government in detail, showing specifically the necessities of each fund in the treasury. Such estimate shall also show what amount of income and revenue will probably be collected from fines, licenses and other sources of revenue, exclusive of taxes upon property, and what amount will probably be required to be levied and raised by taxation in order to meet the necessities of each specific fund for such fiscal year. *(Scott v. Common Council (1996) 44 Cal.App.4th 684, 696; City Attorney Opinion No. 92-10)*

**Section 131.  Ordinance To Be Passed.** The Mayor and Common Council on or before the first Monday of January, 1907, and annually thereafter while any valid law exists for the assessment and collection of City taxes by officers of the County of San Bernardino, shall pass an ordinance electing to avail the City of San Bernardino of the provisions of an act entitled: "An Act to provide for the levy and Collection of taxes by and for the use of municipal corporations and cities incorporated under the laws of the State of California, except municipal corporations of the first class, and to provide for the consolidation and abolition of certain municipal offices, and to provide that their duties may be performed by certain officers of the County, and fixing the compensation to be allowed for such County officers for the services so rendered to such municipal corporation," approved March 27, 1895, and shall cause a certified copy of such ordinance to be filed with the Auditor of said County of San Bernardino. If said act shall be amended, or some other law be substituted in its stead providing for the assessment and collection of City taxes by County officers, the Mayor and Common Council shall conform to the provisions of such amended act or such law in order to avail the City of the privilege of having its taxes assessed and collected by such County officers. Such ordinances shall take effect immediately after their passage and shall not be subject to "The Referendum" as hereinbefore provided.

**Section 132. Ex-officio Assessor and Tax Collector**. After the time of noon on the first Monday of March, 1907, if for any cause there shall not be in force any ordinance availing the City of the privilege of having its taxes assessed and collected by the officers of the County, and during the time that there shall be no such ordinance or provision in force, the City Clerk shall be ex-officio Assessor, and the Chief of Police shall be ex-officio Tax Collector; they shall perform respectively the duties and have all the powers prescribed by law or ordinance for Assessors and Tax Collectors. While the City avails itself of the privilege of having its taxes assessed and collected by the County officers, the offices of City Assessor and City Tax Collector shall not exist. The Mayor and the Common Council shall have power, by ordinance, to provide for the compensation of the City Clerk, while acting as ex-officio Assessor and of the Chief of Police while acting as ex-officio Tax Collector for such extra services. The taxes so levied and collected shall be apportioned by the Treasurer to the several specific funds.

**Section 133. Indebtedness for Municipal Improvement**. General obligation bonded indebtedness of the City for any purpose for which the City is authorized to provide or for carrying out any of the powers possessed by the City may be incurred in the manner provided by the general laws of the State of California at the time such proceedings are taken. The City shall not incur any indebtedness evidenced by general obligation bonds which shall in the aggregate exceed fifteen percent (15%) of the total assessed value for purposes of City taxation of all the taxable real and personal property in the City. The City shall not incur any bonded indebtedness constituting a general obligation of the City unless such indebtedness is authorized by the affirmative votes of not less than two-thirds (2/3) of those electors voting on the question of incurring such indebtedness at any election at which such question is submitted to the electors of the City. Notwithstanding any other provision or limit in this Charter, bonds of the City

C - 23

payable solely from the revenues of any revenue-producing improvement, building, system, plant works, facilities or undertaking used for or useful in (a) the producing, obtaining, conserving, treating, storing, transmitting, distributing and supplying of water for domestic use, irrigation, sanitation, industrial use, fire protection, recreation or any other public or private use, and (b) the collection, treatment or disposal of sewage, garbage, refuse waste or storm water, including drainage, may be authorized and issued in the manner provided by the general laws of the State of California at the time such proceedings are taken. The issuance of such revenue bonds must be authorized by the affirmative votes of a majority of the electors voting upon the proposition of their issuance at any election at which such question is submitted to the electors of the City.

When two or more questions or propositions for the incurring of general obligation bonded debt or for the issuance of revenue bonds are submitted at the same election to the votes cast for and against each question or proposition shall be counted separately. *(As amended by special election held June 5, 1956)*

**Section 134. Sewer Service Charges**. The Mayor and Common Council shall levy charges for sewer service which, if so ordered by the Mayor and Common Council, may be collected together with or separately from charges for water service and all charges received for sewer service and all other income and receipts derived from the operations of the sewer system, including any sewage treatment and effluent reclamation works, or arising from the sewer system or said works shall be paid into the Sewer Fund. Said charges shall be at least sufficient to pay the following amounts in the order set forth:

(a) The necessary and reasonable maintenance and operation costs of the sewer system, including any sewage treatment and effluent reclamation works (which include the reasonable expenses of billing and collection of service charges, management, repair and other expenses necessary to maintain and preserve the sewer system and said works in good repair and working order);

(b) The principal and interest on bonds issued for sewer purposes;

(c) Any payment specifically authorized or required by the Mayor and Common Council in any ordinance or resolution providing for the issuance of said bonds. *(As amended by election held March 19, 1957)*

**Section 135. Demands Against City.** The provisions of the laws of the State of California relating to the processing of demands and claims against the municipality, the establishment and operation of funds and the transfer of revenue between funds which apply to general law cities shall be applicable to and given full force and effect in the City, provided that the Mayor and Common Council are empowered to and may, by ordinance, prescribe and provide for such matters and other matters directly related thereto and such ordinance after its adoption shall prevail over said provisions of the general law. *(As amended by election held February 6, 1973)*

**Section 139. Valid Claims.** No claim for commodities furnished, or service

C - 24

performed, shall be valid unless prior to furnishing such commodities, or the rendition of the service, authority for the same had been given by the Common Council, the City Manager or some department of City government, having the authority so to do. No member of the Common Council, the City Manager or member of any department, and no City officer, shall have power to create an indebtedness against the City, or to furnish the basis of a claim without said authority. *(More v. City (1931) 118 Cal.App. 732, 735-737; Good v. City (1920) 49 Cal.App. 559, 560)*

**Section 140.  Advertisement For Supplies, Etc.**  The purchase of any goods, equipment, materials, supplies, or other personal property, except purchases from other  governments or governmental agencies or as otherwise excepted by law, shall be made in the manner prescribed by ordinance which shall provide that such purchases or contracts for purchases where the amount therefor equals or exceeds an amount fixed by such ordinance, shall be open to competitive bidding and that the procedures for such bidding shall include public advertisement therefor, and consideration of factors in the award including low bid, expertise, and such other relevant factors as may be determined by the Mayor and Common Council from time to time.  The Mayor and Common Council or any board or officer advertising for sealed proposals hereunder shall have the power to reject any and all bids and readvertise at their discretion.  *(As amended by elections held June 4, 1974, November 6, 1979 and June 2, 1992) (Cody v. City (1908) 153 Cal. 24, 26; City Attorney Opinion No. 92-19)*

**Section 143.  Special Funds.** There is hereby created the following specific funds, to wit: Library Fund, Sewer Fund, Water Fund, and such other funds as may be designated by ordinance or resolution duly passed by the Mayor and Common Council.  *(As amended by election held February 6, 1973)*

**Section 146.  Water Fund.**  Out of the Water Fund shall be paid all warrants drawn thereon duly authorized by the Board of Water Commissioners.

**Section 148.  Library Fund.**  Out of the Library Fund shall be paid all warrants drawn thereon duly authorized by the Board of Library Trustees.

**Section 149.  Sewer Fund.**  Out of the Sewer Fund shall be paid:

(a) The necessary and reasonable maintenance and operation costs of the sewer system, including any sewage treatment and effluent reclamation works which include the reasonable expenses of billing and collection of sewer charges, management, repair and other expenses necessary to maintain and preserve the sewer system and said works in good repair and working order;

(b) The principal and interest of bonds issued for sewer purposes;

(c) Any payments specifically authorized or required by the Mayor and Common Council in any ordinance or resolution providing for the issuance of said bonds;

(d) Amounts, as the Mayor and Common Council may direct, for the payment of the costs of extensions and improvements of or additions to the sewer system and said works or for any other sewer purposes. *(As amended by election held March 19, 1957)*

## Article IX
## Water Department

**Section 160. Water Commissioners - Term of Office - Qualifications - Duties.** There is hereby created a board consisting of five members which shall be known as the Board of Water Commissioners. Members of such board shall be appointed by the Mayor, subject to the confirmation of the Common Council. The term of office of each commissioner shall be six years; provided, however, that on or after twelve o'clock noon on the second Monday in May 1935, one member of the Board shall then be appointed for a term of six years; that on or after twelve o'clock noon on the second Monday of May, 1937, one member of such board shall be appointed for a term of two years, and one member shall be appointed for a term of six years; and thereafter, on or after twelve o'clock noon on the second Monday of May of each odd numbered year, one member of the Board shall be appointed for a term of six years; provided further that on or after twelve o'clock noon on the second Monday of May, 1971, two members of the Board shall be appointed, one for a one year term and one for a three year term, commencing on the second Monday of May, 1971; and thereafter such members shall be appointed for six year terms commencing on the second Monday of May, 1972, and of May, 1974, and for every six years thereafter. Any member of the Board may be removed at any time by the affirmative vote of five Council Members, and upon any such removal, the vacancy shall be filled by the Mayor, with the consent of the Common Council, for the unexpired term. No person shall be eligible to appointment as a member of said Board unless he/she shall have been a qualified elector of said City for the period of five (5) years next preceding the date of his/her appointment.

The Board of Water Commissioners shall perform the duties and responsibilities prescribed in this Charter and shall perform such other duties and responsibilities as are or may be prescribed or delegated by the Mayor and Common Council with the concurrence of the Board. *(As amended by election held April 13, 1971) (City Attorney Opinion No. 94-3; City Attorney Opinion No. 93-8; City Attorney Opinion No. 92-20; City Attorney Opinion No. 91-33)*

**Section 161. Oath of Office**. Before entering upon the duties of his/her office, each member of the Board of Water Commissioners shall make and subscribe before some officer authorized by law to certify oaths, the same oath of office required of other City officers. *(City Attorney Opinion No. 94-3)*

**Section 162. President - Inventory of Property.** The first Board of Water Commissioners appointed hereunder shall, within one week after their confirmation by the Common Council, and thereafter their successors shall biennially, meet and organize by the election of one of their number as president. And said Board shall within a reasonable time thereafter, not to exceed thirty (30) days, make an

inventory of all the property of the City pertaining to the Water Department that is on hand and in use, consisting of lands, reservoirs, conduits, rights of way, pipes, pipe lines, hydrants, gates, engines, pumps, tools, wells and private water service connection, and shall estimate the value of all such property to determine the whole amount the City has invested in its water system; and shall enter said inventory, together with such estimates, in a record book to be kept by said Commission and shall therein keep a record of all property belonging to the water service of the City, afterwards acquired, together with a record and account of the disposition of any property of said department which has been, or may be sold, lost, destroyed or worn out.  *(City Attorney Opinion No. 94-3)*

**Section 163. Powers.** The Board of Water Commissioners is hereby authorized and empowered:

1. To establish and collect all water rates, collect all rentals from water bearing lands and generally regulate, control, manage, renew, repair and extend the entire water system of the City;

2. To employ such persons as the necessities of the water service may require, to fix and pay out of the Water Fund the compensation of any and all employees in said water service and to require of any employee in the Water Department an adequate bond for the faithful performance of his/her duties;

3. Upon the order of and in the manner directed by the Mayor and Common Council, to generally regulate, control, manage, renew, repair and extend the City waste water treatment (sewage disposal) plants and that portion of the outfall sewer lines extending from Mill and "E" Streets to said plants, and if so ordered by the Mayor and Common Council to pay all costs and expenses in connection therewith from the Water Fund;

4. To incur any indebtedness or liability not exceeding in any year the income and revenue provided for such year, subject to the debt limitation provisions of the Constitution of the State of California;

5. To make rules and regulations governing the conduct of said Board and the members thereof.  *(Livingstone v. MacGillivray (1934) 1 Cal.2d 546, 552; Good v. City (1920) 49 Cal.App. 559, 562; City Attorney Opinion No. 94-3; City Attorney Opinion No. 93-8)*

**Section 164.  Sale And Use Of Water**. The Board shall have power to control and order the expenditure of all money received from sale or use of water, for the defraying of expenses or maintenance and repairs and operation of the water system, and for any expenses for additions to the same; and for supplying the City with water for any and all purposes; provided that all such money shall be deposited in the treasury of the City to the credit of a fund to be known as the Water Fund, and shall be kept separate and apart from other moneys of the City, and shall only be drawn from said fund upon demands authenticated by the signature of the President and Secretary of the Board, or in the absence of the President, by the signatures of two members and the Secretary of the Board,

except that the Common Council may, in its discretion, monthly transfer from the Water Fund to the General Fund not more than ten percent (10%) of the revenues of the Water Department during the preceding month, and except that the Mayor and Common Council may, in its discretion, monthly transfer from the Water Fund to the proper Bond Fund an amount of money equal to one-twelfth (1/12) of the amount which will become due and payable during the current year for interest or principal, or for interest and principal, upon any or all outstanding Water Works Bonds. *(As amended by special election held April 8, 1935) (City Attorney Opinion No. 94-3)*

**Section 165. Receipts and Disbursements of Water Funds.** Said Board shall cause to be kept in proper books provided therefor, a complete and accurate account of all the receipts and disbursements on account of said water system, and the same shall be kept open to the inspection of the public at any and all reasonable hours. *(City Attorney Opinion No. 94-3)*

**Section 166. Map Of Water System And Service.** Said Board appointed hereunder shall within a reasonable time after their appointment, cause to be made and drafted by a competent engineer a suitable map showing the entire water system of the City; its source of supply, reservoirs, mains, gates, stop-off cocks, size of pipe, hydrants and all individual water service connections; said map to be the official map of the water system of the City.  And from time to time, as the water service of the City increases, said Board shall cause to be made additional maps showing in detail the increased water service of the City. *(City Attorney Opinion No. 94-3)*

**Section 167. Financial Condition Of Water Department, Etc.** Not less than thirty (30) days, nor more than forty (40) days, prior to the fixing of the general tax levy by the Common Council, and at any other time when required by the Common Council, said Board shall make and file with the Clerk of said Common Council a report, showing a full detailed statement of the financial condition of the Water Department; together with an estimate of the needs and requirements of said department for the ensuing year and the costs thereof.  And whenever required by the Common Council said Board shall make and file with the Clerk of said Common Council, a full and detailed statement of all property of whatsoever nature or kind belonging to said Water Department. *(City Attorney Opinion No. 94-3)*

**Section 168. City Clerk Ex-Officio Secretary.** The City Clerk shall be ex-officio Secretary of said Board, and shall keep a record of the proceedings thereof; and shall, whenever required so to do, certify such proceedings under his/her hand, the same to be authenticated by seal, if a seal is adopted and provided by said Board for that purpose. *(City Attorney Opinion No. 94-3)*

**Section 169.  Meetings.** The Board shall hold regular stated meetings at the City Hall at least twice in each month, and as often as the necessities of the Water Department require. *(City Attorney Opinion No. 94-3)*

**Section 170. Compensation of Members.** The members of said Board shall each receive a salary as compensation for his/her services, payable out of

the Water Fund of the City, as follows: The President, three hundred dollars ($300.00) a year, and each of the other members, one hundred fifty dollars ($150.00) a year. *(City Attorney Opinion No. 94-3)*

**Section 171.  Ordinance to Enforce Rules.** It shall be the duty of the Mayor and Common Council to pass such ordinances as may be necessary to enforce the rules and regulations of said Board of Water Commissioners. *(City Attorney Opinion No. 94-3)*

## Article X

## Police and Fire Departments

**Section 180. Powers of Mayor and Common Council.** The police and fire departments shall be under the general supervision of the Mayor.  The City Manager shall be the immediate supervisor of the Chief of Police and the Chief of the Fire Department.  Neither the Mayor nor the City Manager shall interfere or attempt to interfere with the discharge of those duties of the Police or Fire Chief(s) the performance of which are required by law.

The Mayor and Common Council shall have power upon the recommendation of the City Manager to fix and prescribe the salaries, qualifications, duties, rank, badges of office and uniforms of the officers, members and employees of said departments; to prescribe rules and regulations for the organization, government and discipline of the same, and to prescribe penalties for violations thereof; subject to the civil service provisions of this Charter.

The Mayor shall determine any and all complaints of misconduct, inefficiency or violation of rules or other charges against the chiefs of said departments, and shall take such action thereon as shall be most conducive to the maintenance and discipline and efficiency of such departments, including suspending and or dismissing, for cause, the Chief of Police and/or the Chief of the Fire Department subject to the laws of the State of California. *(City Attorney Opinion No. 91-2; City Attorney Opinion No. 90-25)*

**Section 181. Police Department - Membership.** The Police Department shall consist of a Chief of Police, and as many ranking officers, police officers and other employees as the Mayor and Common Council may from time to time determine. *(City Attorney Opinion No. 95-2; City Attorney Opinion No. 91-2; City Attorney Opinion No. 89-11)*

**Section 182. Chief of Police - Duties.** The Mayor shall appoint a Chief of Police, subject to the approval of the Common Council.  The Chief of Police shall have the powers and duties that are now or that may hereafter be conferred upon chiefs of police by the laws of the State, and such powers and duties shall in all respects be promptly executed by the Chief of Police, police officers, and by authorized personnel in the Police Department. The Chief of Police shall enforce the laws of the State and the ordinances of said City, and shall arrest or cause to be arrested all persons for whom probable cause exists to believe said person(s)

C - 29

may be guilty of violations of the same.  He/she shall also have charge of the City jail, if one is in existence, of all prisoners and of all those who are sentenced to labor upon the public streets, public works or other places of said City and shall execute and enforce all orders and sentences in reference thereto; and he/she shall perform such other duties as may be prescribed by the Mayor and Common Council or by the City Manager.  *(City Attorney Opinion No. 91-2; City Attorney Opinion No. 90-25)*

**Section 183. Fire Department - Membership.**  The Fire Department shall consist of a Chief of the Fire Department and as many ranking officers, firefighters and other employees as the Mayor and Council may determine.  *(City Attorney Opinion No. 91-21)*

**A. Chief of the Fire Department - Duties**.  The Mayor shall appoint a Chief of the Fire Department, subject to the approval of the Common Council.  The Chief of the Fire Department shall have the powers and duties that are now or that may hereafter be conferred upon chiefs of fire departments by the laws of the State, and such powers and duties shall in all respects be promptly executed by the Fire Chief and by authorized personnel in the Fire Department; and he/she shall perform such other duties as may be prescribed by the Mayor and Common Council or by the City Manager.

**Section 184. Supervision of City Manager Over Funds, Moneys, Etc.**  The City Manager shall supervise and possess power and authority over all the funds, moneys and appropriations for the use of the Police and Fire Department, also the organization, government and discipline, subject to the restrictions in Section 180 of this Charter, of said Departments, and shall have control of all the property and equipments belonging to the same.  *(City Attorney Opinion No. 91-2)*

**Section 185. Power to Make Rules and Regulations**.  Said Mayor and Common Council shall have power to make all necessary rules and regulations**,** upon the recommendation of the City Manager, to carry into execution and effect the foregoing powers contained in this Article, and in general to enable the appropriate city officers to manage and control said departments.  *(City Attorney Opinion No. 90-25)*

**Section 186.  Salaries.**  There is hereby established for the City of San Bernardino a basic standard for fixing salaries, classifications, and working conditions of the employees of the Police and Fire Departments of the City of San Bernardino, and the Mayor and the Common Council in exercising the responsibility over these departments vested in them by this Charter shall hereafter be guided and limited by the following provisions:

FIRST: Classification

The following classes of positions are hereby created in the Fire Department and Police Department of the City of San Bernardino, and the code numbers, titles, and salaries as hereinafter set forth are hereby established and fixed for such classes of positions. The letter "P" represents "Position" and the five steps in

C - 30

Positions 1, 2 and 3 being represented by the letters "a," "b," "c," "d" and "e" are: "a" designating the first six months of service in the respective departments, "b" designating the following eighteen months of service in the respective departments, "c" designating the third year of service in the respective departments, "d" designating the fourth year of service in the respective departments, and "e" designating the fifth and all subsequent years of service. Advancements in salary shall be made automatically step by step after each step of aggregate active service in the department in which the member is employed. Each person employed in the Fire Department and Police Department shall be entitled to receive for his/her services in his/her position the applicable respective rate or rates of compensation prescribed for the class in which his/her position is allocated. Additional titles may be established by the Mayor and Common Council, upon the recommendation of the City Manager, but only titles for Local Safety members of the Police and Fire Departments shall be placed in one of the following classifications having the most nearly equal duties and responsibilities. Local Safety members of the Police and Fire Departments shall mean any local police officer or local firefighter as defined under the provisions of the Public Employees Retirement System Law as specified in the California Government Code or amendments thereto.

## Class of Position

| Classification Number | Title Fire Department | Title Police Department |
|---|---|---|
| P1 (Steps a,b,c,d,e) | Firefighter, Battalion Chief Aide | Police Officer |
| P2 (Steps a,b,c,d,e) | Fire Prevention Inspector | Juvenile Officer, Detective, Senior Identification Inspector |
| P3 (Steps a,b,c,d,e) | Engineer | Sergeant |
| P4 | Captain, Assistant Fire Prevention Engineer | Lieutenant |
| P5 | Battalion Chief, Drill Master, Fire Prevention Engineer | Captain, Superintendent of Records and Identification |
| P6 | Assistant Chief | Assistant Chief |
| P7 | Chief | Chief |

SECOND: Basic Salary Schedule

(a) The monthly salaries of Local Safety members of the San Bernardino Police and Fire Departments included in classifications P1, P2, P3 steps "a" and "e" of P4, P5, P6 and P7 shall be fixed on August 1, 1976, for the balance of the current fiscal year and, thereafter, annually on August 1 of each succeeding year at the amount equal to the arithmetic average of the monthly salaries, paid or approved for payment to Local Safety members of like or most nearly comparable positions of the police and fire departments of ten cities of California with

C - 31

populations of between 100,000 and 250,000 as shown in the latest Annual Report of Financial Transactions of California Cities published by the State Controller.

(b) The ten cities used for fixing the monthly salaries shall be those ten cities remaining from an original and complete list of all California Cities in the 100,000 to 250,000 population range based on the latest Annual Report of Financial Transactions of California Cities, published by the State Controller after representatives of the City and the appropriate recognized employee organization have alternately struck the names of cities from the list one at a time until the names of ten cities remain. The representatives to strike the first name from the list shall be determined by lot.

(c)  In the event one or more of the ten cities does not have one or more of the comparable position classifications, the monthly salary for the particular classification, shall be computed as the arithmetic average of the next highest and next lowest comparable position classification of that City.

(d) The salaries paid in step "a" shall be the same as the arithmetic average of the starting salaries of the comparable positions in the ten cities and the salaries paid in step "e" shall be the same as the average of the top salaries paid in the comparable positions in the ten cities.  The salaries paid in steps "b," "c" and "d" shall be fixed at amounts which will cause the Local Safety members of the San Bernardino Police and Fire Departments to advance from the starting steps to the maximum pay steps in approximately equal salary advances.

THIRD: Special Salary Provisions

The following special provisions shall apply in addition to the compensation received in accordance with the above salary positions:

(a) Police Department: Each police officer assigned to traffic enforcement duties on a motorcycle shall be paid when performing such duties during the period of assignment at the rate of not less than fifty dollars per month in addition to the pay step to which he/she is entitled as extra-hazard pay for motorcycle duty. The Police Chief shall certify monthly as to the assignment and the period of time worked to validate entitlement to the extra-hazard pay.

(b) Police and Fire Departments: Any Local Safety member of the Fire and Police Departments temporarily acting in a position in a higher rank during periods of absence of the incumbent or during a vacancy in the position for more than ten (10) consecutive working days or five consecutive shifts, shall receive the same salary for the higher rank to which he/she would be entitled, were he/she promoted to that rank during the period in which the employee is acting in the higher rank. The Chief of the department in which the assignment to the higher rank occurs shall certify as to the assignment and the period of time worked in the higher rank to validate entitlement to the salary of the higher rank.

(c) Fire Department - Paramedics.  The Mayor and Common Council, upon

C - 32

the recommendation of the City Manager, may authorize additional salary to be paid to local safety members of the Fire Department, assigned to duty as paramedics, during the period of such assignment.

(d) Fire and Police Departments-Education/Longevity Incentive Pay.  The Mayor and Common Council, upon the recommendation of the City Manager, may authorize additional salary to be paid to local safety members of the Police Department and the Fire Department who have completed educational or longevity requirements specified by the Mayor and Common Council.

(e)  Fire Fighters

(1)  All employees (below the rank of Battalion Chief) assigned to an average 56 hours  per week  assignment  shall  be compensated at an hourly rate of time and one-half (12) their regular hourly rate of base pay, such compensation to be computed for each one quarter (3) hour increment worked in excess of their average 56 hour weekly assignment.

(2) All employees (below the rank of Battalion Chief) working a 40 hour per week assignment shall be compensated at an hourly rate of time and one-half (12) their regular hourly rate of base pay, such compensation to be computed for each 30 minute increment worked in excess of their regular eight (8) hour per day assignment of their 80 hours assignment during each pay period.

SIXTH: Definitions

The words and terms defined in this subsection shall have the following meanings in this section:

(a) ʌShift" means a 24-hour duty for the Fire Department, except for the positions of Chief, Assistant Chief, and local safety members working in the Fire Prevention Bureau, and such other local safety positions as may hereafter be granted a forty (40) hour average work week by resolution of the Common Council upon the recommendation of the City Manager.
*(San Bernardino Fire & Protective League v. City (1962) 199 Cal.App.2d 401, 404-419; City Attorney Opinion No. 97-1; City Attorney Opinion No. 95-2; City Attorney Opinion No. 93-16; City Attorney Opinion No. 93-13; City Attorney Opinion No. 93-4; City Attorney Opinion No. 92-16; City Attorney Opinion No. 92-2; City Attorney Opinion No. 91-32; City Attorney Opinion No. 91-23; City Attorney Opinion No. 91-3; City Attorney Opinion No. 91-2; City Attorney Opinion No. 90-17; City Attorney Opinion No. 90-11; City Attorney Opinion No. 89-21; City Attorney Opinion No. 88-11)*

## Article XI
## School Districts

**Section 190.  Definition.** The San Bernardino City Unified School District, as such term is used by this Charter, shall mean and include all of the public schools of said District.  *(As amended by elections held March 21, 1961 and February 6, 1973.)*
**Board of Education**

**Section 191. Members.** The Board of Education of the San Bernardino City Unified School District shall consist of seven members who shall be residents of the Unified School District or, in the event trustee areas are established in said District, of such trustee areas. The Board of Education shall have all the powers and duties now or hereafter prescribed by the Education Code of the State of California for such board.  *(As amended by elections held March 21, 1961 and February 6,1973.)*

## Board of Education: Term,  Election

**Section 192**. **Terms of Office - Election.** The terms of office and the election of the members of the Board of Education shall be in accordance with and pursuant to the provisions of the Education Code of the State of California relating to governing boards of such school districts.  *(As amended by elections held March 21, 1961 and February 6, 1973)*

## Vacancies

**Section 193.  How Filled**. Vacancies in the office of members of the Board of Education shall be filled by the remaining members of the Board at the next regular meeting after such vacancy occurs. The member so appointed shall hold such office for the unexpired term of his predecessor.  (*As amended by election held on March 21, 1961*)

**Section 194. Meetings**. The Board of Education shall enter upon the discharge of their duties on the second Monday in May after their election, and the Board shall meet upon said date and organize by electing one of their number president and biennially thereafter. They shall hold regular meetings at least once each month at such place and time as may be designated by its rules. Special meetings may be called by the President, or by any three members. No business shall be transacted at such special meetings that has not been distinctly stated in the call. A majority of the members shall constitute a quorum, but an affirmative vote of three members shall be necessary to pass an order. The sessions of the Board shall be public and its minutes open to public inspection. The Board may determine the rules of its proceedings and the ayes and noes shall be taken and recorded when demanded, and they shall be taken and recorded on all questions involving elections, or appointments, or the expenditure of money.

**Section 200. Filing of Claims.**  All claims payable out of the School Fund shall be filed with the Secretary of the Board and, before payment, shall be approved by said Board upon a call of ayes and noes which shall be recorded.  *(As amended by election held February 6, 1973)*

## Article XII
## Free Public Library

**Section 205.  Trustees - Terms.** The Free Public Library shall be under the management of a Board of five Trustees who shall be appointed by the Mayor subject to the approval of the Common Council; provided, that the first Board of

Trustees under this Charter shall take office on the second Monday of May, 1905, and shall at their first meeting so classify themselves by lot that three of their number shall go out of office at the expiration of two years, and two at the expiration of four years; otherwise their term of office shall be four years. On the second Monday in May succeeding every General Municipal Election, the Board shall organize by choosing one of their number President. They shall also elect some suitable person as Secretary who shall act and hold office at the pleasure of the Board.

**Section 206. Trustees** - **No compensation**. The position of Trustees shall be one of honorary trust without salary, or compensation, and all appointments made by them shall be made without regard to politics, and irrespective of sex. Said Library Trustees shall not be less than twenty-five (25) years of age, and must have been residents of said City at least five years prior to their appointment. *(City Attorney Opinion No. 92-20)*

**Section 207. Library Tax.** The Mayor and Common Council shall at the request of the Board of Trustees in making the annual tax levy, and as part thereof, levy a rate which shall produce a minimum amount of at least two thousand dollars ($2,000.00) for the purpose of maintaining said Library and for purchasing books, journals and periodicals.

**Section 208. Donations - Bequests**. If payment into the treasury of any money or property derived by donations or bequest would be inconsistent with the conditions, or terms of any such donations, or bequest, said Board shall provide for the safety and preservation of the same, and the application thereof to the use of said Library in accordance with the terms and conditions of such donation or bequest.

**Section 209. Title To Real And Personal Property.** The title to all property, real and personal, now owned or hereafter acquired by purchase, donation or bequest, or otherwise, for the purpose, or use of said Library, when not inconsistent with the terms of its acquisition, shall vest and be and remain in said City, and in the name of said City may be sued for and defended by action at law, or otherwise.

**Section 210. Meetings**. The Board shall meet at least once each month and a majority shall constitute a quorum for the transaction of business, but a less number may adjourn from time to time. It shall elect a Librarian and such assistants as may be necessary. The Secretary shall keep a full account of all property, money, receipts and expenditures and a record of all its proceedings. The Secretary must serve without compensation.

**Section 211.  Powers of Board.** The Board shall have power:

FIRST: To make and enforce all rules, regulations and by-laws necessary for the administration, government, and protection of said Library and all property belonging thereto, or that may be loaned thereto;

SECOND: To administer any trust declared, or created for such Library and reading rooms;

THIRD: To define the powers and prescribe the duties of all officers, to determine the number of, and elect all necessary subordinate officers and assistants, and at their pleasure to remove any such officer or assistant, subject to the civil service provisions of this Charter;

FOURTH: To purchase necessary books, journals, publications and other personal property;

FIFTH: To fix salaries of the Librarian and assistants, and other employees; to rent and equip such building or buildings, room or rooms as may be necessary for such Library or reading rooms;

SIXTH: To allow non-residents to borrow books upon such conditions as the Board may prescribe;

SEVENTH: To provide memorial tablets and niches or other means to perpetuate the memory of any person who makes donations or bequests to the Public Library;

EIGHTH: To do all that may be necessary to carry into effect the provisions of this Charter with reference to said Library and reading rooms.  (*As amended by special election held November 4, 1924, with reference to THIRD.*)

**Section 212. Reports.** Said Board on or before the third Monday in July of each year, shall make a report to the Mayor and Common Council giving the condition of its trust, with full statement of all property and money received, whence derived, how used and expended, the number of books, journals and other publications on hand, the number added by purchase, gift or otherwise, during the next preceding fiscal year, the number lost or missing, the number and character of those loaned, and such other statistics, information and suggestions as may be of general interest; and also a financial report showing all receipts and disbursements, with particulars thereof, and the names of all employees and the salaries paid to each.

## Article XII-A
## Park and Recreation Commission

**Section 213**.  **Members - Term of Office.** There is hereby created a Park and Recreation Commission consisting of nine (9) members, whose terms of office shall be four years.  (*As amended by election held February 4, 1969*)

**Section 214. Appointment.** Each Council Member shall appoint one commissioner whose term shall coincide with that of the appointing Council

Member and the Mayor shall appoint two (2) commissioners, one of whom shall initially have a two (2) year term coinciding with the term of the Mayor and the other shall have a four (4) year term commencing on the second Monday of May, 1969. Thereafter, each Mayor and each Council Member, upon assuming office, shall appoint one member to the Commission for a four (4) year term. Any vacancy occurring for any reason shall be filled in the same manner as the original appointment. *(City Attorney Opinion No. 93-19; City Attorney Opinion No. 92-18)*

**Section 215. Removal From Office.** Commissioners shall hold office for a term of four (4) years and until their successors have been appointed and qualified. Commissioners shall serve at the pleasure of the appointing officer and any member of said Park and Recreation Commission may be removed at any time by the affirmative vote of five (5) Council Members, and upon any such removal the vacancy shall be filled as aforesaid for the unexpired term. *(City Attorney Opinion No. 91-33)*

**Section 216.  No Compensation - Meetings.** The members of the Park and Recreation Commission shall serve without compensation. Immediately after appointment and qualification, said Commission shall organize by electing from among its membership a Chairman and a Secretary. Regular meetings shall be held at least once a month. *(As amended by election held February 4, 1969)*

**Section 217. Duties.** The Park and Recreation Commission shall:

(a) Act in an advisory capacity to the Mayor and Common Council and to the City Manager in all matters pertaining to parks, recreation and parkways.

(b) Consider the annual budget of the Park and Recreation Department during the process of its preparation and make recommendations with respect thereto to the Mayor and Common Council and to the City Manager.

(c) Perform such other duties as may be prescribed by ordinance not inconsistent with the provisions of this Charter. *(As amended by election held February 4, 1969) (City Attorney Opinion No. 93-8)*

**Section 219.  Appeal to Council.** Any person dissatisfied with a decision of ruling of the Park Commission may appeal to the Common Council, and said Council by an affirmative vote of five (5) members may reverse or modify said decision or ruling. *(As amended by election held June 7, 1966) (City Attorney Opinion No. 93-8)*

**Article XIII**
**Miscellaneous**

**Section 220.  Fiscal year.** The fiscal year of the City of San Bernardino shall begin on the first day of July and end on the last day of June of each year.

**Section 221. Definitions**. <u>City:</u>  The word "City" wherever it occurs in this Charter, unless it expressly appears otherwise, means the City of San Bernardino.

General Supervision: The supervision by the Chief Executive Officer which is supervision that includes giving general policy directions, but does not include the authority to issue specific, day to day directives; requires the person exercising the general supervision to vigilantly observe the official conduct of the person/department/public institution being supervised, and take notice of the fidelity and exactitude or want thereof, with which the person/department/public institution being supervised executes his/her/its duties and obligations, especially in the collection, administration and disbursement of public funds and property. Any defamation or willful neglect of duty or official misconduct shall be laid before the Common Council in order that public interests may be protected and the person/department/public institution in default proceeded against according to law.

Immediate Supervisor: The person with authority to observe, evaluate, issue specific, day to day directives to, approve/disapprove requests of, promote, demote, recommend or not recommend salary increases for, suspend, and recommend for termination, the person being supervised,  except in cases of recommendations for termination of persons who occupy positions for which this Charter specifically provides otherwise.

Manager-Directed Departments of the City: All City departments except the Offices of the Mayor, City Attorney, City Clerk and City Treasurer and except for the Water Department, the Free Public Library and the Civil Service Administration.

Component Board: Board of Water Commissioners, Civil Service Board, Free Public Library Board of Trustees, and/or any other board established under the authority of the Mayor and Common Council which has the formal authority to hire, terminate, promote, or demote, any person applying for or occupying a salaried position under the City government.

Civil Service Administration: The Civil Service Chief Examiner and those employees who work under his/her supervision.

Civil Service System: The Civil Service Board, the Chief Examiner, the employees supervised by the Chief Examiner, the functions and work products of the Civil Service Board, the Chief Examiner and the employees he/she supervises.

Current Charter: The Charter adopted by the voters on January 6, 1905, and all amendments thereto, beginning with those approved on December 28, 1908, through November 5, 2002, and any other amendments that may be adopted prior to the effective date of this Charter as provided in Section 244, herein.

This Charter: This document and its full text.

Full-time Permanent Employee: Any person hired to work for the City who works a minimum of thirty-two (32) hours per week, and who is hired as a retirement benefits-eligible employee pursuant to the Public Employees Retirement System (PERS) guidelines, and for whom there is no date of termination stated

when said person is hired.

**Section 222.  Oath of office.** Whenever oath of office is mentioned in this Charter, it means the oath of office or affirmation in form as prescribed by the Constitution of this State.

**Section 223.  Ordinances in Force.** All laws, ordinances and resolutions relating to the City of San Bernardino, now in force and not inconsistent with this Charter, shall be and remain in force after this Charter takes effect until repealed or changed by the proper authority; and all actions and proceedings in any court wherein said City is a party, when this Charter takes effect, shall continue thereafter with said City as a party until regularly disposed of. *(As amended by special election held April 11, 1921) (In re Baxter (1906) 3 Cal.App. 716, 719)*

**Section 225. Restrictions on Officers.** No person holding a salaried office of this City, whether by election or appointment, shall hold any other office of honor, trust or emolument under the government of the United States, or of this State, except the office of Notary Public, Court Commissioner, or an office in the National Guard, and any person holding any salaried office of this City, who, during his/her term of such office, shall accept or hold any other office as aforesaid, except that of Notary Public, Court Commissioner, or in the National Guard, shall be deemed thereby to have vacated the office held by him/her under this City Government, and the same shall immediately become vacant.  Nothing herein shall be deemed to prohibit any person holding any salaried office of this City from accepting an appointment to and serving on any Federal or State Commission or Committee providing such appointment and service is not full-time.

**Section 226.    Delivery of Property.** All Officers, Board, and Commissioners shall each, on going out of office, turn over and deliver to their respective successors in office, all books, papers, documents, records, archives and all other property or things pertaining to their respective offices, boards or departments, in their possession or under their charge or control.

**Section 227. Office Hours.** The Common Council shall provide by ordinance the hours that the several offices of the City shall be kept open for the transaction of business.

**Section 229. Deposit of Money.** It shall be the duty of every City officer, upon receiving into his/her hands money belonging to the Municipality, to forthwith deposit the same with the City Treasurer, except where otherwise provided by this Charter.

**Section 230. Term of Office.** Every elective or appointive officer of the City shall hold office during the term prescribed by this Charter, and until his/her successor is elected or appointed and qualified, and every appointive officer or employee, except employees in the classified service, whose term is not fixed, shall hold office during the pleasure of the officer or board appointing him/her, and

when an appointment is made to fill a vacancy in an unexpired term, the person appointed shall, if it be an appointive office, hold for the unexpired term and if for an elective office until the next succeeding general municipal election, at which time the office shall be filled for the balance of the term by an election. *(As amended by special election held November 4, 1924.)*

**Section 234.  Reimbursement For Expenses.** That elective officers shall be entitled to receive reimbursement for their necessary expenses while engaged on Municipal business, including mileage in the City of San Bernardino, such expenses not to exceed the expenses authorized for other City employees or officers.

(a) The Mayor and Common Council shall, with all due diligence, contract with the Board of Administration of the State Employees Retirement System, and do all things necessary to provide for the participation by the City of San Bernardino and the employees thereof, in the State Employees Retirement System, with full credit being given to the employees of said City for prior service rendered.

(b) That any contract so entered into by said Mayor and Common Council with the Board of Administration of the State Employees Retirement System shall only be terminated by an ordinance adopted by a majority vote of the electorate of the City of San Bernardino. *(As amended by elections held May 16, 1944, March 19, 1945 and March 7, 1989)*

**Section 235. Qualification of officers**. The City Clerk and City Treasurer shall have been qualified electors and residents of the City for a period of at least thirty (30) consecutive days prior to their appointment or filing of their nomination papers for election to office. *(As amended by elections held February 6, 1973, and November 2, 1976)*

**Section 238.  Power to Reject Bids and Readvertise.** In all cases where advertising is required for sealed proposals under Section 140 of this Charter, the Mayor and Common Council, or any board or officer making such advertisement, shall have power to reject any or all bids and readvertise in their discretion. *(Section 238, Subsection (a) repealed by election held February 6, 1973)*

**Section 240. Taking or Damaging Private Property.** Whenever it becomes necessary for the City to take or damage private property for public use, the Mayor and Common Council may direct proceedings to be taken therefor under the provisions of the Code of Civil Procedure of this State to procure the same. *(City Attorney Opinion No. 91-16)*

**Section 241. Employment of Legal Counsel.** Upon the recommendation, and with the written consent, of the City Attorney, the Mayor and Common Council shall have power and authority to employ and engage such legal counsel and services and other assistants, as may be necessary and proper for the interest and benefit of the City and the inhabitants thereof. *(As amended by election held November 6, 2001.) (City Attorney Opinion No. 89-11; City Attorney Opinion No. 87-59; City Attorney Opinion No. 87-36)*

C - 40

**Section 242. Qualifications of City Employees and Appointment.** The Mayor and Common Council may prescribe the number, qualification and compensation of the deputies, clerks, assistants, employees and attaches of the City Attorney, City Treasurer and City Clerk. All deputies, clerks, assistants, attaches and employees of the City Attorney, City Clerk and City Treasurer shall be appointed by the respective officers with the consent and approval of the Mayor and Common Council, and shall hold office at the pleasure of the officers appointing them. *(As amended by special election held November 4, 1924.) (Scott v. Common Council (1996) 44 Cal.App.4th 684, 687-688, 696; City Attorney Opinion No. 93-19)*

**Section 243. Nepotism.** Neither the Common Council, the Board of Water Commissioners, the Free Public Library Board of Trustees, the Civil Service Board, nor any elective officer, nor the City Manager, nor the Civil Service Chief Examiner, shall recommend for hire, appoint, hire or confirm the hiring or appointment to a salaried position under the City government or any of its components any person who is a relative by blood or marriage within the third degree of any one or more of the members of such Common Council, member of a component board, any elected official of the City, the City Manager or the Civil Service Chief Examiner, nor shall any department head or other officer recommend for appointment or appoint any relative of such department head or other officer within such degree to any such position.

This provision shall not affect the employment or promotional status of a person who has attained a salaried position with the City prior to the existence of a situation contemplated by this provision; however, those persons with appointive powers and/or supervisorial powers in such a situation shall disqualify themselves from all decisions affecting the employment and promotional status of such person.

**Section 244. When Charter Takes Effect.** This Charter shall take effect on the day of the swearing in of the Mayor for the 2006 to 2010 term for the Office of Mayor, but notwithstanding the foregoing, this Charter shall take effect no later than April 3, 2006.

**Section 245. Early Effective Date of Certain Sections of This Charter.** Notwithstanding the effective date of this Charter provided in Section 244 herein, the provisions of Sections 120, 122 and this Section (245) shall take effect when accepted and filed by the Secretary of State as amendments to the current Charter; subsequently, Sections 120, 122 and 245 herein, shall continue in full force and effect under this Article with the same text and same section designations in this Charter, when this Charter takes effect as provided in Section 244 herein. **(Effective March 16, 2005)**

**Section 246. Civil Service Board - Appointment**. A Civil Service Board is hereby created which shall consist of five members who shall be qualified electors of the City and appointed as hereinafter provided. The three members in office on the first Monday in May, 1959, shall continue to serve for the remainder of their respective terms. On July 1, 1958, or as soon thereafter as this Charter

C - 41

amendment becomes effective, the Mayor, with the consent and approval of the Council, shall appoint one member to serve until the first Monday of May, 1959, and one to serve until the first Monday of May, 1961, and thereafter, by rotation in the following manner: Two members shall be appointed on the first Monday of May, 1959, two on the first Monday of May, 1961, and one on the first Monday of May, 1963, each for a term of six years. On the first Monday of May, 1965, and every odd numbered year thereafter, the Mayor with the consent and approval of the Council, shall appoint the same number of members of the Civil Service Board for a term of six years as the number of members whose term of office expires at that time, who shall take office the first Monday of May of said year, or as soon thereafter as appointed and qualified. Members of the Board shall not hold any other public office. *(As added by special election held November 4, 1924 and amended by special election held June 3, 1958.) (City Attorney Opinion No. 95-12; City Attorney Opinion No. 93-7; City Attorney Opinion No. 91-8; City Attorney Opinion No. 91-4)*

**Section 247. Civil Service to Organize and Appoint Secretary.** Immediately after appointment and qualification the Board shall organize by electing one of its members chairperson. The Board shall appoint a Chief Examiner who shall also act as Secretary of the Board. The Board may appoint such subordinates as the City Council may, by ordinance, prescribe. *(City Attorney Opinion No. 95-12; City Attorney Opinion No 91-8; City Attorney Opinion No. 88-9.)*

**Section 248. Classified and Unclassified Civil Service.** The Civil Service of the City of San Bernardino is hereby divided into the unclassified and the classified service:

(1)    The unclassified service shall include:

(a)    All officers elected by the people;
(b)    All officers appointed for a definite term;
(c)    All deputies and assistants of elective officers who hold office during the pleasure of such elective officers;
(d)    City Manager, Assistant City Manager, Deputies and/or other Assistants of the City Manager;
(e)    The heads of departments, and the heads of divisions of departments and members of all appointive boards;
(f)    One secretary for each department and one secretary for the City Manager.

(2) The classified service shall comprise all positions not specifically included in this Charter in the unclassified service. There shall be in the classified service, the following three classes, to be known as the competitive class, the uncompetitive class and the labor class:

(a)    The competitive class shall include all positions and employment for which it is practicable to determine the merit and fitness of applicants by competitive examinations.
(b)    The uncompetitive class shall consist of all positions requiring peculiar and exceptional qualifications of a scientific,

C - 42

managerial, professional or educational character, or may be determined by the rules of the Board.

(c)    The labor class shall include ordinary unskilled labor.

*(City Attorney Opinion No. 97-1; City Attorney Opinion No. 93-7; City Attorney Opinion No. 91-18; City Attorney Opinion No. 91-4; City Attorney Opinion No. 89-15; City Attorney Opinion No. 88-19)*

**Section 249.  Veteran Preference.** In any open examination administered by the Civil Service Board or its Board of Special Examiners or Chief Examiner, any person who has served in the regular armed forces of the United States of America in time of war and who has been honorably placed on inactive status or has been honorably discharged from such service shall receive a bonus of five (5) grade points which will be added to the final examination grade of said person who has obtained a passing grade for such examination. An additional five (5) grade points shall be added to the final examination grade of such person who qualified for the initial five grade points for veteran preference and who have a service-connected disability rated at not less than ten percent (10%) of an authorized agency of the federal government. In any such open examination, ten (10) grade points shall be added to the final examination grade of any successful applicant who is a wife of any such United States veteran honorably discharged from the service who, while in service in time of war, was disabled or crippled, thereby being permanently prevented from engaging in a remunerative occupation; or who is the widow of any such veteran who died or was killed in such service and who has not remarried. The Civil Service Board shall define the phrase "in time of war" in its rules and regulations and such definition shall include each war and any campaign involving the United States for which the federal government allows veterans preference. The Bonus granted under this section shall not apply to promotions or promotional examinations.  *(As added by special election held November 4, 1924 and as amended by election held February 4, 1969)*

**Section 250. Codes of Rules and Regulations**. The Civil Service Board, subject to the approval of the Mayor and Council, shall adopt, amend and enforce a code of rules and regulations, providing for appointment and employments in all positions in the classified service, based on merit, efficiency, character and industry, which shall have the force and effect of law; shall make investigations concerning the enforcement and effect of this article and of the rules adopted.  *(As added by special election held November 4, 1924.) (City Attorney Opinion No. 96-9; City Attorney Opinion No. 96-8; City Attorney Opinion No. 96-6; City Attorney Opinion No. 96-5.; City Attorney Opinion No. 93-8; City Attorney Opinion No. 93-7; City Attorney Opinion No. 91-8; City Attorney Opinion No. 90-31; City Attorney Opinion No. 90-29)*

**Section 251. Examinations.** The examiner shall approve examinations for all positions in the classified service in accordance with regulations of the Civil Service Board, and shall maintain lists of eligibles of each class of service of these meeting the requirements of said regulations. All positions in the classified service shall be filled from such eligible list. In making such appointment, preference shall be given to bona fide residents of the City of San Bernardino who have been such residents for at least one year next preceding the date of their appointment, and who are, on said date, qualified electors of said City; subject, however, to the preference provided for in Section 249 of this Charter. As positions are filled, the

examiner shall certify the fact by proper and prescribed form to the City Treasurer and the heads of the department in which the vacancy exists. *(As added by special election held November 4, 1924) (City Attorney Opinion No. 91-8; City Attorney Opinion No. 88-9)*

**Section 252.   Promotion to Positions.** The Civil Service Board shall provide for promotion to all positions in the classified service, based on records of merit, efficiency, character, conduct and seniority. *(As added by special election held November 4, 1924.) (City Attorney Opinion No. 96-5; City Attorney Opinion No. 90-29; City Attorney Opinion No. 90-17)*

**Section 253. One Year Probation.** An appointment or promotion shall not be deemed complete until an applicable period of probation of not more than one year has elapsed. The probationer may be discharged or reduced at any time within said period upon the recommendation of the head of the department in which said probationer is employed with the approval of a majority of the Civil Service Board. Periods of probation shall be fixed by resolution of the Mayor and Common Council upon the recommendation of the City Manager and procedures for and effective dates of discharges and reductions shall be adopted by the Civil Service Board in its rules and regulations. *(City Attorney Opinion No. 96-13; City Attorney Opinion No. 95-8; City Attorney Opinion No. 93-8; City Attorney Opinion No. 93-7; City Attorney Opinion 93-4; City Attorney Opinion No. 91-8; City Attorney Opinion No. 90-29; City Attorney Opinion No. 90-12)*

**Section 254. Discharge or Reduction of Compensation.** No employee in the classified service shall be discharged or reduced in rank or compensation until he/she has been presented with reasons for such discharge or reduction in rank or compensation specifically stated in writing and has been given an opportunity to be heard before the Board in his/her own defense. The reason for such discharge or reduction and any reply thereto by such employee, shall be in writing and filed with the Civil Service Board. Verified written charges may be filed by any qualified elector of the City of San Bernardino under such rules and regulations as may be prescribed by the Civil Service Board. All charges shall be heard and trials had under such rules as the Civil Service may prescribe. PROVIDED, that the provisions of this section are at all times subject and subordinate to the provisions of Section 256. *(City Attorney Opinion No. 97-1; City Attorney Opinion No. 96-9; City Attorney Opinion No. 96-5; City Attorney Opinion No. 95-11; City Attorney Opinion No. 95-10; City Attorney Opinion No. 94-7; City Attorney Opinion No. 94-5.; City Attorney Opinion No. 93-8; City Attorney Opinion No. 93-7; City Attorney Opinion No. 92-1; City Attorney Opinion No. 91-14; City Attorney Opinion No. 91-8; City Attorney Opinion No. 91-4; City Attorney Opinion No. 90-32; City Attorney Opinion No. 90-12; City Attorney Opinion No. 88-9)*

**Section 255. Appeal of Suspension.** Any employee of any department in the City in the classified service who is suspended, reduced in rank, or dismissed from a department by the City Manager or by the Head of the Department, or by any other authorized supervisor, may appeal from the decision of such officer to the Civil Service Board, and such Board shall define the manner, time and place by which such appeal shall be heard. The judgment of such board shall be final; PROVIDED that the provisions of this section are at all times subject and subordinate to the provisions of Section 256. *(Livingstone v. MacGillivray (1934) 1 Cal.2d 546, 552, 553-554; City Attorney Opinion No. 96-9; City Attorney Opinion No. 95-10; City Attorney Opinion No. 92-27; City Attorney Opinion No. 92-1; City Attorney Opinion No. 91-14; City Attorney*

*Opinion No. 91-8; City Attorney Opinion No. 88-9.)*

### Section 256. Power to Dismiss.

A.     The City Manager, Acting City Manager, Chief of Police, Chief of the Fire Department and any appointive commissioner, board member or committee member of any committee, of the City of San Bernardino, except those commissioners and members appointed for a definite term, and except for any committees of which the membership is composed entirely of members of the Common Council, may summarily be dismissed for the good of the service by the Mayor, with the consent of two-thirds (2/3) of the Common Council.

B.     Any Department Head, Division Head or any employee in the unclassified service except elected officers, officers appointed for a definite term, and except deputies, assistants, clerks, employees, and attachés holding office at the pleasure of an elective officer, may summarily be dismissed for the good of the service by the City Manager with the consent of the Mayor and Common Council. *(Livingstone v. MacGillivray (1934) 1 Cal.2d 546, 553) (City Attorney Opinion No. 93-19; City Attorney Opinion No. 92-18; City Attorney Opinion No. 92-8; City Attorney Opinion No. 92-1; City Attorney Opinion No. 91-33; City Attorney Opinion No. 91-4; City Attorney Opinion No. 88-20; City Attorney Opinion No. 88-19; City Attorney Opinion No. 88-13; City Attorney Opinion No. 88-10)*

**Section 257.  Position in Classified Service.**  All persons in the employ of the City holding positions in the classified service, as established by this Charter, at the time it takes effect, shall retain the same until discharged, reduced, promoted or transferred in accordance herewith.  *(As added by special election held November 4, 1924)*

**Section 258. Payment of Salaries.** The City Treasurer shall not pay any salary or compensation for service to any person holding a position in the classified service unless the payroll or account for such salary or compensation shall bear the certificate of the Civil Service Board, by its Secretary, that the persons named therein have been appointed or employed and are performing a service in accordance with the provisions of this Charter and of the rules established thereunder.  *(As added by special election held November 4, 1924)*

**Section 259. Investigations**. In any investigation conducted by the Civil Service Board, it shall have the power to subpoena and require the attendance of witnesses and the production thereby of books and papers pertinent to the investigation, and to administer oaths to such witnesses.  *(As added by special election held November 4, 1924)* (*City Attorney Opinion No. 93-7; City Attorney Opinion No. 92-29; City Attorney Opinion No. 91-9)*

**Section 261.  Penalties Fixed by Civil Service Board.** The Civil Service Board, subject to the approval of the Mayor and Council, shall determine the penalties for the violation of the Civil Service provision of this Charter; such penalties, when fixed by ordinance by the Mayor and Council, may be changed from time to time as required.  *(As added by special election held November 4, 1924) (City Attorney Opinion No. 91-8)*

**Section 262.  Effectiveness and Repeal of Former Charter.**  Upon the effective date as set forth in Section 244, the provisions of this Charter shall be in full force and

C - 45

effect under the law, except for Sections 120, 122, and 245, which take effect when accepted and filed by the Secretary of State as set forth in Section 245.  Upon the effective date as set forth in Section 244, the former Charter is hereby repealed except that the text in those articles, sections, categories, and subparagraphs which have been reserved by this Charter are not repealed nor otherwise amended and shall continue in full force and effect in this Charter in their same text and same designations.

**Section 263.  Severability.**  The provisions of the Charter are severable, and, if any sentence, section or other part of this Charter should be found to be invalid, such invalidity shall not affect the remaining provisions, and the remaining provisions shall continue in full force and effect.

# EXHIBIT "C"   (City Attorney Opinion)

EXHIBIT C - 109



# CITY OF SAN BERNARDINO
## OFFICE OF THE CITY ATTORNEY

**JAMES F. PENMAN**
*City Attorney*

January 9, 1991
Opinion No. 91-2

TO:  Mayor and Common Council

RE:  Contracting for Police Services

### ISSUE

The question has arisen whether the City may abolish the City's Police Department and contract with the County Sheriff to provide police services within the City limits.

### CONCLUSION

Before contracting with the County for the Sheriff to provide police services within the City, a Charter amendment must be presented and approved by the voters.

### ANALYSIS

The Charter of the City of San Bernardino provides that the Mayor and "Council shall have power to establish and maintain a police force." (Section 40(g)). In addition the Charter grants to the Mayor and Council the "power to appoint and remove such policemen..." (Section 40(s)). Charter Section 180 provides that the police department "shall be under the control and management of the Mayor and Common Council..." The Charter further grants the Mayor and Common Council the power:

> "To fix and prescribe the salaries, qualifications, duties, rank, badges of office and uniforms of the officers, members and employees of said departments; to prescribe rules and regulations for the government and discipline of the same, and to

DAB/ses/Contract.opn          1

TO:   Mayor and Common Council
RE:   Contracting for Police Services
Page 2

> prescribe and enforce penalties for
> violations thereof; subject to the Civil
> Service provisions of this Charter."

The Charter provides for a Chief of Police (Section 181)
appointed by the Mayor subject to the approval of the Council
(Section 182).  The Charter is very clear that the Mayor and
Council "shall supervise and possess power and authority over all
the funds..." of the Police Department (Section 184) and also
entrusts in the Mayor and Council "The organization, government
and discipline of" the Police Department, and gives them the
"control of all the property and equipment belonging to the
same." (Section 184)

It is clear that if the City were to contract with the
County Sheriff to provide police services within the City, that
the Sheriff would be responsible for the "organization,
government and discipline" of the department and not the Mayor
and Council.  Very likely the County would also have control over
the property and equipment of the department, all in violation of
the above noted Charter provisions.  The department would
thereafter be under the control and management of the County
Sheriff rather than the Charter required Mayor and Council.

But in addition, the voters by initiative adopted Charter
Section 186, which establishes a specific process for the setting
of salaries in the Police Department.  This process would not be
obviated by a contract with the Sheriff.  The salary provisions
of Section 186 would still apply to Sheriff employees performing
the City's police functions.  However, upon closer analysis it
may prove impossible to incorporate the Charter Section 186
procedure with that used by the County.

/    /    /

/    /    /

/    /    /

/    /    /

/    /    /

/    /    /

/    /    /

DAB/ses/Contract.opn                2

EXHIBIT C - 111

TO:  Mayor and Common Council
RE:  Contracting for Police Services
Page 3


        The result must be that a contract for police services with
the County first requires a Charter amendment to remove the
responsibility of the Mayor and Council to oversee the funds,
property and equipment of the Police Department, and to either
eliminate the salary provisions of Section 186 entirely or
provide that they don't apply when Police services are contracted
for.   In addition such Charter amendment must eliminate the
requirement that the Police Department must be under the control
and Management of the Mayor and Common Council.

                                Respectfully submitted,


                                DENNIS A. BARLOW,
                                Sr. Asst. City Attorney


Concur:

JAMES F. PENMAN


City Attorney


CC:  Council Members
     Rachel Krasney, City Clerk
     Craig Graves, City Treasurer
     Shauna Edwins, City Administrator


DAB/ses/Contract.opn            3

EXHIBIT C - 112

**B104 (FORM 104) (08/07)**

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| **PLAINTIFFS** | **DEFENDANTS** |
|---|---|

| **ATTORNEYS** (Firm Name, Address, and Telephone No.) | **ATTORNEYS** (If Known) |
|---|---|

| **PARTY** (Check One Box Only)<br>☐ Debtor    ☐ U.S. Trustee/Bankruptcy Admin<br>☒ Creditor    ☒ Other<br>☐ Trustee | **PARTY** (Check One Box Only)<br>☒ Debtor    ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor    ☒ Other<br>☐ Trustee |
|---|---|

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☒ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☒ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq*
☒ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☒ Check if this case involves a substantive issue of state law | ☒ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☒ Check if a jury trial is demanded in complaint | Demand $ |

Other Relief Sought

American LegalNet, Inc.
www.FormsWorkflow.com

**B104 (FORM 104) (08/07), Page 2**

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>City of San Bernardino, CA | BANKRUPTCY CASE NO.<br>6:12-bk-28006-MJ | |
| DISTRICT IN WHICH CASE IS PENDING<br>Central District of California | DIVISION OFFICE<br>Riverside Division | NAME OF JUDGE<br>Meredith A. Jury |
| **RELATED ADVERSARY PROCEEDING (IF ANY)** | | |
| PLAINTIFF<br>San Bernardino City Professional Firefighters,<br>Local 891 | DEFENDANT<br>City of San Bernardino, CA | ADVERSARY<br>PROCEEDING NO.<br>6:15-ap-01116-MJ |
| DISTRICT IN WHICH ADVERSARY IS PENDING<br>Central District of California | DIVISION OFFICE<br>Riverside Division | NAME OF JUDGE<br>Meredith A. Jury |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br>*/s/ David M. Goodrich* | | |
| DATE<br>April 10, 2015 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>David M. Goodrich | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

American LegalNet, Inc.
www.FormsWorkflow.com