The Disclosure Statement accompanying this Plan has not been approved by the Bankruptcy Court. Therefore, the distribution of the Disclosure Statement and Plan at this time is not, and should not be construed to be, the solicitation of votes on the Plan.

PAUL R. GLASSMAN (State Bar No. 76536)
FRED NEUFELD (State Bar No. 150759)
JAMES O. THOMA (State Bar No. 133329)
MARIANNE S. MORTIMER (State Bar No. 296193)
KATHLEEN D. DeVANEY (State Bar No. 156444)
STRADLING YOCCA CARLSON & RAUTH
A Professional Corporation
100 Wilshire Blvd., 4th Floor
Santa Monica, CA 90401
Telephone: (424) 214-7000
Facsimile: (424) 214-7010
E-mail: pglassman@sycr.com
        fneufeld@sycr.com
        jthoma@sycr.com
        kdevaney@sycr.com
        mmortimer@sycr.com

GARY D. SAENZ (State Bar No. 79539)
CITY ATTORNEY
300 North "D" STREET, Sixth Floor
San Bernardino, CA 92418
Telephone: (909) 384-5355
Facsimile: (909) 384-5238
E-mail: saenz_ga@sbcity.org

Attorneys for Debtor
City of San Bernardino

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### RIVERSIDE DIVISION

| | |
|---|---|
| In re | Case No. 6:12-bk-28006-MJ |
| CITY OF SAN BERNARDINO, CALIFORNIA, | Chapter 9 |
| Debtor. | **FIRST AMENDED PLAN FOR THE ADJUSTMENT OF DEBTS OF THE CITY OF SAN BERNARDINO, CALIFORNIA (NOVEMBER 25, 2015)** |

# TABLE OF CONTENTS

**Page**

I.     RULES OF INTERPRETATION; DEFINITIONS; COMPUTATION OF TIME ................. 1
    A.     Rules of Interpretation. ........................................................................... 1
    B.     Definitions ............................................................................................. 1
    C.     Computation of Time. ........................................................................... 16

II.    TREATMENT AND DEADLINE FOR THE ASSERTION OF ADMINISTRATIVE
    CLAIMS AND PROFESSIONAL CLAIMS ................................................... 16
    A.     Treatment of Administrative Claims. .................................................... 16
    B.     Treatment of Professional Claims. ....................................................... 16
    C.     Priority Claims in Chapter 9. ................................................................ 17
    D.     Deadline for the Filing and Assertion of Administrative Claims and Professional
        Claims. ................................................................................................... 17

III.   DESIGNATION OF CLASSES OF CLAIMS ................................................. 17

IV.    TREATMENT OF CLAIMS ........................................................................... 18
    A.     Class 1 – 1996 Refunding Bonds Claims .............................................. 18
    B.     Class 2 – 1999 Refunding Certificates of Participation Claims .............. 19
    C.     Class 3 – Secured Claims: CIEDB Harriman Project Claims ................... 20
    D.     Class 4 – Secured Claims: CIEDB Pavement Project Claims ................... 21
    E.     Class 5 – Secured/Restricted Fund Claims: CIEDB Verdemont Fire Station Project
        Claims ................................................................................................... 21
    F.     Class 6 – Secured Claims: Fire Alerting System Financing Claims .......... 21
    G.     Class 7 – Secured Claims: Police Station AC Financing Claims .............. 22
    H.     Class 8 – Secured Claims: Burgess Claims ............................................. 23
    I.      Class 9 – Claims on Restricted Revenue Bond and Note Payable Obligations ........ 23
    J.      Class 10 – CalPERS Claims .................................................................. 23
    K.     Class 11 – PARS Claims ....................................................................... 24
    L.      Class 12 – Consenting Union Claims ..................................................... 24
    M.    Class 13 – Retiree Health Benefit Claims .............................................. 25
    N.     Class 14 – POB Claim ........................................................................... 25
    O.     Class 15 – General Unsecured Claims .................................................... 26
    P.     Class 16 – Convenience Class Claims .................................................... 26

V.     ACCEPTANCE OR REJECTION; CRAMDOWN ........................................ 26
    A.     Voting of Claims. .................................................................................. 26

VI.    TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES .............. 27
    A.     Assumption of Executory Contracts and Unexpired Leases ..................... 27
    B.     Cure Payments. ..................................................................................... 27
    C.     Rejection of Executory Contracts and Unexpired Leases ........................ 27
    D.     Claims Arising From Rejection. ............................................................ 28
    E.     Amendments to Assumption or Rejection of Contracts and Leases. ......... 28

VII.   IMPLEMENTATION AND MEANS FOR IMPLEMENTATION OF THIS PLAN ......... 28
    A.     In General .............................................................................................. 28
    B.     Means for Execution and Implementation of this Plan ............................ 29
    C.     Restricted Funds .................................................................................... 31
    D.     Insurance. .............................................................................................. 31

VIII.  RETENTION OF THE CITY'S RIGHTS OF ACTION .................................. 31

IX.    DISTRIBUTIONS ........................................................................................ 31

i

# TABLE OF CONTENTS

**Page**

| | | |
|---|---|---|
| A. | Distribution Agent. | 31 |
| B. | Delivery of Distributions. | 32 |
| C. | Distributions of Cash. | 32 |
| D. | Timeliness of Payments. | 32 |
| E. | Compliance with Tax, Withholding, and Reporting Requirements. | 32 |
| F. | Time Bar to Cash Payments. | 33 |
| G. | No *De Minimis* Distributions. | 33 |
| H. | Distributions of Unclaimed Property. | 33 |
| I. | No Distributions on Account of Disputed Claims. | 34 |
| J. | Certain Claims to be Expunged. | 34 |
| K. | No Postpetition Accrual. | 34 |

| | | |
|---|---|---|
| X. | DISPUTED CLAIMS; OBJECTIONS TO CLAIMS; PROSECUTION OF OBJECTIONS TO DISPUTED CLAIMS | 34 |
| A. | Claims Objection; ADR Procedures; Prosecution of Objections. | 34 |
| B. | Payments and Distributions with Respect to Disputed Claims. | 35 |

| | | |
|---|---|---|
| XI. | EFFECT OF CONFIRMATION | 35 |
| A. | Discharge of the City. | 35 |
| B. | Release by Holders of Pre-Confirmation Date Claims. | 36 |
| C. | Injunction. | 37 |
| D. | Term of Existing Injunctions or Stays. | 37 |
| E. | Exculpation. | 37 |
| F. | Comprehensive Settlement of Claims and Controversies. | 38 |

| | |
|---|---|
| XII. | RETENTION OF AND CONSENT TO JURISDICTION | 39 |

| | | |
|---|---|---|
| XIII. | CONDITIONS PRECEDENT | 41 |
| A. | Conditions Precedent to Confirmation. | 41 |
| B. | Conditions Precedent to Effective Date. | 41 |
| C. | Waiver of Conditions to Effective Date. | 41 |
| D. | Effect of Failure of Conditions. | 42 |
| E. | No Admission of Liability. | 42 |

| | | |
|---|---|---|
| XIV. | MISCELLANEOUS PROVISIONS | 42 |
| A. | Modification of Plan. | 42 |
| B. | Dissolution of the Retiree Committee. | 42 |
| C. | Severability. | 43 |
| D. | Governing Law. | 43 |
| E. | Effectuating Documents and Further Transactions. | 43 |
| F. | Request for Waiver of Automatic Stay of Confirmation Order. | 44 |
| G. | Notice of Effective Date. | 44 |

PLAN FOR THE ADJUSTMENT OF DEBTS

The Disclosure Statement accompanying this Plan has not been approved by the Bankruptcy Court.  Therefore, the distribution of the
Disclosure Statement and Plan at this time is not, and should not be construed to be, the solicitation of votes on the Plan.

The City of San Bernardino, California, a debtor under Chapter 9 of the Bankruptcy Code in the case *In re City of San Bernardino, California*, Case No. 6:12-28006, currently pending in the United States Bankruptcy Court for the Central District of California, hereby proposes the following *First Amended Plan of Adjustment of Debts for City of San Bernardino, California (November 25, 2015)*, pursuant to Bankruptcy Code section 941.

Please refer to the Disclosure Statement included with this Plan for a discussion of the City's financial condition, the developments throughout the Bankruptcy Case, and other important information.  The City encourages you to read this Plan and the Disclosure Statement in their entirety before voting to accept or reject this Plan.  The Disclosure Statement, including its various exhibits and schedules (which include a copy of the Plan) are the sole approved documents for use in soliciting acceptance or rejection of this Plan.

I.      **RULES OF INTERPRETATION; DEFINITIONS; COMPUTATION OF TIME**

      **A.      Rules of Interpretation.**

For purposes herein:  (i) the words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to this Plan as a whole and not to an particular section, subsection, or clause contained in this Plan; (ii) unless otherwise specified, all references in this Plan to "Sections" and "Exhibits" (uppercased) are to the respective Section in or Exhibit to this Plan, as the same may be amended or modified from time to time; (iii) the headings in this Plan are for convenience of reference only and do not limit or otherwise affect the provisions of this Plan; (iv) in the appropriate context, words denoting the singular number include the plural number and vice versa; (v) the rules of construction set forth in Bankruptcy Code section 102 apply; (vi) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; and (vii) any reference to an Entity as a holder of a Claim includes such Entity's successors and assigns.

      **B.      Definitions.**

        **1.      1996 Refunding Bonds** means the $16,320,000 San Bernardino Joint Powers Financing Authority Lease Revenue Refunding Bonds (City Hall Project) Series 1996 issued

The Disclosure Statement accompanying this Plan has not been approved by the Bankruptcy Court. Therefore, the distribution of the
Disclosure Statement and Plan at this time is not, and should not be construed to be, the solicitation of votes on the Plan.

pursuant to the 1996 Trust Indenture.

      **2.**    **1996 Refunding Bonds Agreements (City Hall)** means the following executory contracts and unexpired leases to which the City is a party:  (i) the Continuing Disclosure Agreement dated December 18, 1996, by and between the City and the 1996 Refunding Bonds Trustee; (ii) the Ground Lease dated as of December 1, 1996, by and between the City and the RDA; and (iii) the City Hall Lease.

      **3.**    **1996 Refunding Bonds Amendment** means the Amendment to the 1996 Trust Indenture and the City Hall Lease, which will be included as an Exhibit to the Plan Supplement to be filed with the Court.

      **4.**    **1996 Refunding Bonds Trustee** means U.S. Bank National Association, not individually but as successor indenture trustee under the 1996 Trust Indenture with respect to the 1996 Refunding Bonds.

      **5.**    **1996 Trust Indenture** means the Trust Indenture, dated as of December 1, 1996, between the Authority and First Trust of California, National Association, as trustee, entered into in connection with the issuance the 1996 Refunding Bonds.

      **6.**    **1998 Refunding Certificates of Participation** means the $36,230,000 City of San Bernardino Municipal Water Department 1998 Refunding Sewer Revenue Certificates of Participation.

      **7.**    **1998 Refunding Certificates of Participation Agreements (Sewer)** means the following contracts and agreements to which the City is a party:  (i) the Trust Agreement, dated July 1, 1998, by and among the San Bernardino Public Safety Authority, the City and the 1998 Refunding Certificates of Participation Trustee; (ii) the Installment Purchase Agreement, dated July 1, 1998, by and between the City and the San Bernardino Public Safety Authority; and (iii) all other documents or agreements executed in connection with the foregoing and the 1998 Refunding Certificates of Participation as to which the City is a party, beneficiary or obligor.

      **8.**    **1998 Refunding Certificates of Participation Trustee** means U.S. Bank National Association, not individually but as indenture trustee under the 1998 Trust Indenture with respect to the 1998 Refunding Certificates of Participation.

The Disclosure Statement accompanying this Plan has not been approved by the Bankruptcy Court. Therefore, the distribution of the Disclosure Statement and Plan at this time is not, and should not be construed to be, the solicitation of votes on the Plan.

9.     **1999 Refunding Certificates of Participation** means the $15,480,000 Refunding Certificates of Participation (Police Station, South Valle and 201 North E Street Projects) issued pursuant to the 1999 Trust Agreement.

10.     **1999 Refunding Certificates of Participation Agreements (Police Station/201 North E Street/South Valle)** means the following executory contracts and unexpired leases to which the City is a party:  (i) the Continuing Disclosure Agreement dated September 29, 1999 by and between the City and the 1999 Refunding Certificates of Participation Trustee; (ii) the 201 North E Street Lease Agreement dated as of September 1, 1999, by and between the Authority, as lessor, and the City, as lessee; (iii) the Police Station Lease; (iv) the South Valle Lease Agreement, dated as of September 1, 1999, by and between the Authority, as lessor, and the City, as lessee; (v) the South Valle Site and Facility Lease, dated as of September 1, 1999, by and between the City, as lessor, and the Authority, as lessee; (vi) the Agency Agreement, dated as of September 1, 1999, between the City and the RDA; and (vii) the Reimbursement Agreement, dated as of September 29, 1999, by and between the RDA and the City.

11.     **1999 Refunding Certificates of Participation Amendment** means the Amendment to the 1999 Trust Agreement and to the Police Station Lease, which will be included as an Exhibit to the Plan Supplement to be filed with the Court.

12.     **1999 Refunding Certificates of Participation Trustee** means U.S. Bank National Association, not individually but as indenture trustee under the 1999 Trust Agreement with respect to the 1999 Refunding Certificates of Participation.

13.     **1999 Trust Agreement** means the Trust Agreement, dated as of September 1, 1999, between the Authority, the City and U.S. Bank National Association, as trustee, entered into in connection with the issuance of the 1999 Refunding Certificates of Participation.

14.     **415 Trust** means the private trust established pursuant to the City of San Bernardino Excess Benefit Trust Agreement from which the PARS Excess Benefit Plan distributions are made.

15.     **AB 506** means Assembly Bill 506, as codified at California Government Code § 53760 *et seq.*

The Disclosure Statement accompanying this Plan has not been approved by the Bankruptcy Court. Therefore, the distribution of the Disclosure Statement and Plan at this time is not, and should not be construed to be, the solicitation of votes on the Plan.

**16.** **Administrative Claim** means the costs or expenses of administration of the Bankruptcy Case not already paid by the City that are allowed under Bankruptcy Code section 503(b) and entitled to priority under Bankruptcy Code section 507(a)(2) to the extent made applicable in Chapter 9: (i) which the City agrees is an Allowed administrative expense; or (ii) which the Bankruptcy Court determines is an Allowed administrative expense.

**17.** **ADR Procedures** means the alternative dispute resolution procedures described in Exhibit C hereto.

**18.** **Affiliate** has the meaning set forth in Bankruptcy Code section 101(2).

**19.** **Allowed** means, with reference to any Claim, a Claim that

(i) is on the List of Creditors (as may be amended from time to time pursuant to Bankruptcy Rule 1009) and is not listed as unliquidated, contingent or disputed on the List of Creditors, and for which no contrary proof of claim has been filed (subject to objection as set forth in the next subsection);

(ii) is asserted in a proof of claim filed in compliance with Bankruptcy Code section 501 and any applicable Bankruptcy Court order or designated on the List of Creditors and as to which: (A) no objection has been, or subsequently is, filed, or notice given, within the 180 Day Deadline established pursuant to Section X.A of this Plan (as such deadline may be extended by the Bankruptcy Court upon application of the City from time to time); (B) the Bankruptcy Court has entered a Final Order allowing all or a portion of such Claim (but only in the amount so allowed); or (C) the Bankruptcy Court has entered a Final Order under Bankruptcy Code section 502(c) estimating the amount of the Claim for purposes of allowance;

(iii) is subject to a stipulation between the City and the holder of such Claim providing for the allowance of such Claim;

(iv) is deemed "Allowed" pursuant to the terms of this Plan; or

(v) is designated as "Allowed" in a pleading entitled "Designation Of Allowed Claims" (or a similar title) filed with the Bankruptcy Court by the City on or after the Effective Date.

**20.** **Authority** means the San Bernardino Joint Powers Financing Authority.

The Disclosure Statement accompanying this Plan has not been approved by the Bankruptcy Court. Therefore, the distribution of the Disclosure Statement and Plan at this time is not, and should not be construed to be, the solicitation of votes on the Plan.

21.     **Ballot** means the ballot(s), in the form(s) approved by the Bankruptcy Court in this Plan Solicitation Order accompanying the Disclosure Statement and provided to each holder of a Claim entitled to vote to accept or reject this Plan.

22.     **Bankruptcy Case** means the case under Chapter 9 of the Bankruptcy Code commenced by the City, styled *In re City of San Bernardino, California*, Case No. 6:12-28006-MJ, currently pending in the Bankruptcy Court.

23.     **Bankruptcy Code** means title 11 of the United States Code, as amended from time to time, as applicable to the Bankruptcy Case.

24.     **Bankruptcy Court** means the United States Bankruptcy Court for the Central District of California, Riverside Division, or such other court that lawfully exercises jurisdiction over the Bankruptcy Case.

25.     **Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to the Bankruptcy Case, together with the local rules of the Bankruptcy Court applicable to the Bankruptcy Case.  Unless otherwise indicated, references in this Plan to "Bankruptcy Rule _____" are to the specifically identified rule of the Federal Rules of Bankruptcy Procedure.

26.     **Bar Date** means the applicable date by which a particular proof of claim must be filed, as established by the Bankruptcy Court.  There may be multiple Bar Dates for various types or classes of claims.

27.     **Burgess** means Tim Burgess.

28.     **Burgess Claims** means the claims of Burgess arising under the Burgess Documents.

29.     **Burgess Documents** means the transaction documents entered into in connection with the City's financed acquisition of the real property located at 120 South D Street in San Bernardino, including: the Purchase and Sale Agreement; the Authority, San Bernardino City Fire Department Maintenance Facility Note in the original principal sum of $1,200,000 (the "**Burgess Note**"); the Indenture and Loan Agreement, and a Deed of Trust, Security Agreement, Assignment of Leases and Rents, and Financing Statement.

The Disclosure Statement accompanying this Plan has not been approved by the Bankruptcy Court. Therefore, the distribution of the
Disclosure Statement and Plan at this time is not, and should not be construed to be, the solicitation of votes on the Plan.

30. **Business Day** means a day other than a Saturday, a Sunday, or any other day on which banking institutions in Los Angeles, California, are required or authorized to close by law or executive order.

31. **CalPERS** means the California Public Employees' Retirement System.

32. **CalPERS Claims** means the claims of CalPERS arising under the City's contract with CalPERS , as applied or interpreted pursuant to applicable provisions of California law, and any other claims asserted by CalPERS against the City, including under the CalPERS Interim Agreement.

33. **CalPERS Interim Agreement** means the interim agreement between the City and CalPERS regarding the City's obligations to CalPERS that is incorporated in the Mediator's Order issued on June 9, 2014 by the Honorable Gregg W. Zive, U.S. Bankruptcy Judge for the District of Nevada (acting as the court-appointed mediator).  A copy of the CalPERS Interim Agreement is attached hereto as Exhibit A.

34. **Cash** means cash and cash equivalents, including withdrawable bank deposits, wire transfers, checks, and other similar items.

35. **Charter** means the Charter of the City of San Bernardino, State of California, as is currently in effect, and any amendments, replacements or changes thereto.

36. **Charter Committee** means the committee established by the City to draft a proposed revised and/or replacement Charter for consideration by the City's voters (not the voters under this Plan).

37. **CIEDB** means the California Infrastructure and Economic Development Bank.

38. **CIEDB Documents** means the transaction documents pursuant to which CIEDB provided bond financing to the City to fund the City's (i) $2 million Harriman Project, (ii) $10 million Pavement Project, and (iii) $2.55 million Verdemont Fire Station Project.

39. **City** means the City of San Bernardino, California, the debtor in the Bankruptcy Case.

40. **City Hall Lease** means the Lease Agreement dated as of December 1, 1996,

PLAN FOR THE ADJUSTMENT OF DEBTS

The Disclosure Statement accompanying this Plan has not been approved by the Bankruptcy Court.  Therefore, the distribution of the
Disclosure Statement and Plan at this time is not, and should not be construed to be, the solicitation of votes on the Plan.

by and between the Authority, as lessor, and the City, as lessee.

41.     **Claim** has the meaning set forth in Bankruptcy Code section 101(5).

42.     **Class** means any group of Claims classified herein pursuant to Bankruptcy Code section 1123(a).

43.     **Common Council** means the duly elected legislative body of the City.

44.     **Confirmation Date** means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the Docket.

45.     **Confirmation Hearing** means the hearing to be conducted by the Bankruptcy Court regarding confirmation of this Plan, as such hearing may be adjourned, reconvened or continued from time to time.

46.     **Confirmation Order** means the order of the Bankruptcy Court confirming this Plan pursuant to Bankruptcy Code section 943.

47.     **Consenting Union** means those formally recognized bargaining units of City employees that have entered into modified or new collective bargaining agreements with the City or that will enter into modified or new collective bargaining agreements prior to the confirmation of the Plan.

48.     **Consenting Union Claims** means the Allowed Claims of the Consenting Unions and the employees represented by such unions arising in connection with any new or modified MOU.

49.     **Contract Rejection Claim** means a claim arising from the rejection of an executory contract or unexpired lease of non-residential real property.

50.     **Convenience Class Claim** means any Allowed Claim that is greater than zero but is equal to or less than $100 in Allowed amount or irrevocably reduced to $100 in Allowed amount at the election of the holder of the Allowed Claim as evidenced by the Ballot submitted by such holder; *provided, however*, that an Allowed Claim may not be subdivided into multiple Claims of $100 or less for purposes of receiving treatment as a Convenience Class Claim.

51.     **CSWRCB Revenue Bond Claim** means the secured claim asserted by the California State Water Resources Control Board in the proof of claim marked as document number

PLAN FOR THE ADJUSTMENT OF DEBTS

The Disclosure Statement accompanying this Plan has not been approved by the Bankruptcy Court.  Therefore, the distribution of the
Disclosure Statement and Plan at this time is not, and should not be construed to be, the solicitation of votes on the Plan.

311 in the register of claims and filed February 6, 2014.

52.    **CSWRCB Revenue Bond** means the bond, issued on or about April 1, 2000, reflecting the City's assignment of a portion of obligations under the State Revolving Fund Loan, originally executed on or about April 12, 1994, by and between the State Water Resources Control Board and the Santa Ana Watershed Project Authority, for the construction of a Regional Tertiary Treatment System.

53.    **Disallowed** means a Claim or portion thereof that:  (i) is disallowed by a Final Order of the Bankruptcy Court; (ii) is on the List of Creditors (as amended from time to time in accordance with Bankruptcy Rule 1009): (A)  in the amount of $0.00; or (B) as contingent, disputed, or unliquidated; and as to which no proof of claim has been filed by the applicable Bar Date; (iii) the holder has agreed is equal to $0.00 or is to be withdrawn, disallowed or expunged; or (iv) is not on the List of Creditors and as to which no proof of claim has been filed by the applicable Bar Date.

54.    **Disclosure Statement** means the first amended disclosure statement, and all exhibits and schedules incorporated therein, as approved by the Bankruptcy Court pursuant to Bankruptcy Code section 1125, made applicable to this Bankruptcy Case pursuant to 11 U.S.C. § 901(a), in an order entered on _____[Docket No. ____], as the same may be amended, modified, or supplemented in accordance with the Bankruptcy Code.

55.    **Disputed Claim** means any Claim or portion thereof that has not become Allowed and that is not Disallowed.  In the event that any part of a Claim is a Disputed Claim, except as otherwise provided in this Plan, such Claim shall be deemed a Disputed Claim in its entirety for purposes of distribution under this Plan unless the City otherwise agrees in writing in its sole discretion.  Without limiting the foregoing, a Claim that is the subject of a pending application, motion, complaint, objection, or any other legal proceeding seeking to disallow, limit, reduce, subordinate, or estimate such Claim shall be deemed to be a Disputed Claim.

56.    **Docket** means the docket of the Bankruptcy Case maintained by the Clerk of the Bankruptcy Court and, unless otherwise indicated, "Docket No." references mean to that Docket.

57.    **Effective Date** means the first Business Day after the Confirmation Date on which the conditions specified in Section XIII.B of this Plan have been satisfied or waived.

The Disclosure Statement accompanying this Plan has not been approved by the Bankruptcy Court. Therefore, the distribution of the Disclosure Statement and Plan at this time is not, and should not be construed to be, the solicitation of votes on the Plan.

**58.** **Eligibility Contest** means, collectively, the proceedings on the City's eligibility to be a debtor under Chapter 9 of the Bankruptcy Code and the related pleadings, arguments, formal and informal discovery, hearings, orders and appeals.

**59.** **Employee Wage and Benefit Claims** means the claims of current and former employees of the City and their collective bargaining representatives for unpaid wages and benefits, but not including Claims included in any other category of Claims.

**60.** **Exculpated Party** means the Entities referred to in Section XI.E of this Plan.

**61.** **Final Order** means a judgment, order, ruling, or other decree issued and entered by the Bankruptcy Court which judgment, order, ruling, or other decree has not been reversed, stayed, modified, or amended and as to which:  (i) the time to appeal or petition for review, rehearing, or certiorari has expired and no appeal or petition for review, rehearing, or certiorari is then pending; or (ii) any appeal or petition for review, rehearing, or certiorari has been finally decided and no further appeal or petition for review, rehearing, or certiorari can be taken or granted.

**62.** **Financial Plan** means the City's Long-Range Financial Plan, attached to the Disclosure Statement as Exhibit C.

**63.** **Fire Alerting System Financing Agreement** means the Master Equipment Lease/Purchase Agreement entered into as of December 16, 2009, between the City and Western Alliance (as assignee of Bank of America, National Association), with respect to certain equipment and fire station alerting systems for twelve of the City's fire stations and one dispatch center.

**64.** **Franchise Agreements** means the franchise agreements to which the City is a party, and which were entered into prior to the Petition Date between the City and certain utility and similar service providers.

**65.** **General Fund** means the City's chief operating fund, which is used to account for all financial resources except those required to be accounted for in another fund (such as the Restricted Funds).

**66.** **General Unsecured Claim** means any unsecured Claim that is not (i) an Administrative Claim; (ii) a Consenting Union Claim, (iii) a Retiree Health Benefit Claim, (iv) a PARS Claim (v) a POB Claim, (vi) a Convenience Class Claim, (vii) payable from a Restricted

PLAN FOR THE ADJUSTMENT OF DEBTS

The Disclosure Statement accompanying this Plan has not been approved by the Bankruptcy Court.  Therefore, the distribution of the Disclosure Statement and Plan at this time is not, and should not be construed to be, the solicitation of votes on the Plan.

Fund, (viii) a Claim in Class 1 (1996 Refunding Bonds Claims), (ix) a Claim in Class 2 (1999 Refunding Certificates of Participation Claims), or (x) a CalPERS Claim.  General Unsecured Claims include, without limitation, Employee Wage and Benefit Claims, Contract Rejection Claims, Litigation Claims, Other Postpetition Claims, and the deficiency or discharged portion, if any, of the claims of the holders of the Claims in Classes 1 through 8, 11, 12 and 13.

67.    **Harriman Project** means the "Harriman Place Street Extension Project – Phase I," a $2,000,000 project to extent the eastern end of Harriman Place to align with a nearby intersection, in order to facilitate the development of a regional commercial shopping center and the improvement of a local blighted area.

68.    **HUD** means the U.S. Department of Housing and Urban Development.

69.    **Impaired** means a Claim or interest that is impaired within the meaning of Bankruptcy Code section 1124.

70.    **Impositions** means those modified terms and conditions of employment implemented by the City pursuant to Common Council Resolutions 2013-19, 2013-20 and 2014-364, and additional modifications, if any, to the terms and conditions of employment implemented by the City, that are in place on the Confirmation Date, including pursuant to this Plan.

71.    **Indemnification** means rights of indemnity, defense, reimbursement, and advancement of fees and expenses of current and former officers and employees of the City with respect to any claims or lawsuits brought against such officers and employees by third parties, in each case arising out of an act or omission occurring within the scope of such officer's or employee's employment as an employee of the City.

72.    **Indemnified Parties** means the current and former officers and employees of the City who are entitled to Indemnification.

73.    **Insured Portion** means that portion of any Workers Compensation Claim that is covered by one or more of the City's insurance policies or one or more of the risk-sharing or excess risk sharing pools of which the City is a member, up to the amount of the policy limits, including any excess coverage policies.

74.    **Litigation Claims** means those lawsuits against the City that are still pending

The Disclosure Statement accompanying this Plan has not been approved by the Bankruptcy Court.  Therefore, the distribution of the
Disclosure Statement and Plan at this time is not, and should not be construed to be, the solicitation of votes on the Plan.

as of the Confirmation Date and which are listed and included as an Exhibit to the Plan Supplement.

75.    **List of Creditors** means the First Amended List of Creditors filed by the City on November 8, 2013 (Docket No. 869), as such list may be amended, supplemented or otherwise modified.

76.    **MOU** means a Memorandum of Understanding comprising a collective bargaining agreement between the City and a union representing City employees.

77.    **National** means National Public Finance Guarantee Corporation, a New York stock insurance corporation.

78.    **Notice of the Effective Date** shall have the meaning ascribed to such phrase in Section XIV.F of this Plan.

79.    **Objection Deadline** means the deadline fixed by the Bankruptcy Court for filing objections to confirmation of this Plan.

80.    **Other Postpetition Claims** means unpaid Claims asserted against the City for services rendered to, goods delivered to or obligations incurred by the City after the Petition Date that do not constitute Administrative Claims.

81.    **PARS Claim** means the Claim due and owing to each PARS Participant in relation to the PARS Plans and the City's proposed treatment hereunder, including any General Unsecured Claim for the remaining obligation otherwise owed to each respective PARS Participant under one or more of the PARS Plans.

82.    **PARS Enhancement Plan** means the City of San Bernardino Public Agency Retirement System Retirement Enhancement Plan, which was amended and restated effective July 1, 2007.

83.    **PARS Excess Benefit Plan** means the City of San Bernardino Excess Benefit Plan, effective January 1, 2008.

84.    **PARS Participant** means a participant in either the PARS Enhancement Plan or the PARS Excess Benefit Plan.

85.    **PARS Plans** means, collectively, the PARS Enhancement Plan and the PARS Excess Benefit Plan.

PLAN FOR THE ADJUSTMENT OF DEBTS

The Disclosure Statement accompanying this Plan has not been approved by the Bankruptcy Court. Therefore, the distribution of the Disclosure Statement and Plan at this time is not, and should not be construed to be, the solicitation of votes on the Plan.

86. **PARS Trust** means the trust, related to a multi-employer plan PARS Trust Agreement to which the City, along with other municipalities, is a party, from which the distributions under the PARS Enhancement Plan are paid.

87. **Pavement Project** means the "Pavement Reconstruction and Rehabilitation Project," a $10,000,000 project to finance the construction, acquisition and installation of pavement in or around the public streets throughout the City.

88. **Petition Date** means August 1, 2012.

89. **Plan** means this *First Amended Plan of Adjustment of Debts of the City of San Bernardino, California (November 25, 2015)*, together with any exhibits (including any Plan Supplement and exhibits annexed to any Plan Supplement), each in their present form or as they may be altered, amended or modified from time to time in accordance with the provisions of this Plan, the Confirmation Order, the Bankruptcy Code, and the Bankruptcy Rules.

90. **Plan Document** means any agreement or instrument contemplated by, or to be entered into pursuant to, this Plan, that is in form and substance acceptable to the City, has been duly and validly executed and delivered, or deemed executed by the parties thereto, and for which all conditions to its effectiveness have been satisfied or waived.

91. **Plan Solicitation Order** means the *Order Approving (1) First Amended Disclosure Statement with Respect to First Amended Plan for the Adjustment of Debts of the City of San Bernardino (November 25, 2015); (2) Setting Confirmation Procedures; and (3) Scheduling Filing Dates and the Confirmation Hearing* [Docket No. _], entered on _, 2016, by which the Bankruptcy Court approved the Disclosure Statement as containing adequate information for the purpose of dissemination and solicitation of votes on and confirmation of this Plan and established certain rules, deadlines, and procedures for the solicitation of votes with respect to and the balloting on this Plan.

92. **Plan Supplement** means the *Supplement to the First Amended Plan for the Adjustment of Debts of the City of San Bernardino California (November 25, 2015)*, to which are attached Plan Documents intended to be additional Exhibits to this Plan, and which Plan Supplement will be filed at a later date, in no event [___].

The Disclosure Statement accompanying this Plan has not been approved by the Bankruptcy Court.  Therefore, the distribution of the Disclosure Statement and Plan at this time is not, and should not be construed to be, the solicitation of votes on the Plan.

93. **POBs** mean the Series A-1 and Series A-2 Taxable Pension Obligation Bonds issued by the City pursuant to a Trust Agreement dated October 1, 2005.

94. **POB Claims** means those Allowed Claims of the holders of the outstanding POBs.

95. **Police Station Lease** means the Police Station Lease Agreement, dated as of September 1, 1999, by and between the Authority, as lessor, and the City, as lessee.

96. **Police Station AC Financing Agreement** means the Master Equipment Lease/Purchase Agreement entered into as of October 1, 2004, between the City and Western Alliance (as assignee of Koch Financial Corporation), with respect to four water-cooled air conditioners in use in the City's police headquarters.

97. **Pre-Confirmation Date Claims** means all Claims against the City that arose prior to the Confirmation Date.

98. **Professional Claim** means a Claim required to be filed pursuant to Section II.B. of this Plan, for approval of as yet unpaid amounts to be paid after the Effective Date, for services or expenses incurred in relation to the Bankruptcy Case or incident to this Plan, to the extent not reimbursed beforehand.  Professional Claims will not include any fees paid by the City in the ordinary course during the Bankruptcy Case, to its various counsel including bankruptcy counsel, labor counsel, litigation counsel, and elections counsel, as well as the fees of management and financial professionals, and the fees of counsel for the Retiree Committee.

99. **RDA** means the Redevelopment Agency of the City of San Bernardino (also referred to as the Economic Development Agency).

100. **Recovery Plan** means the "Recovery Plan in Support of the Plan of Adjustment," adopted by the Common Council on May 18, 2015 pursuant to Resolution No. 2015-103, as subsequently supplemented and/or amended, and attached to the Disclosure Statement as Exhibit B.

101. **Restricted Funds** means those funds whose use is restricted by applicable law for a particular purpose or otherwise legally restricted by their providers (such as grantors, bondholders and other governmental units).

The Disclosure Statement accompanying this Plan has not been approved by the Bankruptcy Court. Therefore, the distribution of the Disclosure Statement and Plan at this time is not, and should not be construed to be, the solicitation of votes on the Plan.

**102.**   **Restricted Revenue Bond and Note Payable Obligations** means any and all bond and/or note payable obligations that are secured by a pledge of and lien on "restricted" and/or "special" revenues (as defined in Bankruptcy Code section 902(2)), including the 1998 Refunding Certificates of Participation and the CSWRCB Revenue Bond Claim, and including obligations that arise pursuant to all installment purchase agreements, security agreements, trust indentures, reimbursement agreements, fee letters, and other agreements with respect thereto to which the City is a party and which are payable from and secured by special and restricted sources of revenues.

**103.**   **Retirees** means those retirees of the City that are covered by the Retiree Settlement.

**104.**   **Retiree Committee** means the Official Committee of Retirees, appointed in the Bankruptcy Case on October 11, 2013 [Docket No. No. 828], by the Office of the United States Trustee pursuant to Bankruptcy Code sections 1102(a)(1) and 1102(b)(1), as the membership thereof may have been reconstituted from time to time by the Office of the United States Trustee, which represents only the interests of retirees from the City and does not represent current employees or any other creditors.

**105.**   **Retiree Health Benefit Claims** means those Allowed Claims of the Retirees pursuant to the Retiree Settlement.

**106.**   **Retiree Settlement** means the settlement entered into between the City and the Retiree Committee on behalf of the Retirees, a copy of which is attached hereto as Exhibit B.

**107.**   **Rights of Action** means any claims, causes of action, rights of recovery, rights of offset or recoupment, defenses, rights to refunds, and similar rights owned by, accruing to, or assigned to the City pursuant to the Bankruptcy Code or pursuant to any contract, statute, or legal theory, including without limitation any rights to, claims, or causes of action for recovery under any policies of insurance issued to or on behalf of the City.

**108.**   **Rust Omni** means Rust Consulting/Omni Bankruptcy, the ballot tabulator in the Bankruptcy Case.

**109.**   **Secured Claim** means a Claim that is secured, in whole or in part, (i) by a lien that is not subject to avoidance or subordination under the Bankruptcy Code or applicable non-

The Disclosure Statement accompanying this Plan has not been approved by the Bankruptcy Court.  Therefore, the distribution of the
Disclosure Statement and Plan at this time is not, and should not be construed to be, the solicitation of votes on the Plan.

bankruptcy law; or (ii) as a result of rights of setoff under section 553; but in any event only to the extent of the value, determined in accordance with Bankruptcy Code section 506(a), of the holder's interest in the City's interest in property or to the extent of the amount subject to such setoff, as the case may be.

110.   **State** means the state of California, unless otherwise indicated.

111.   **Unimpaired** means a Claim that is not Impaired within the meaning of Bankruptcy Code section 1124.

112.   **Uninsured Portion** means the amount in excess of the Insured Portion of an Allowed Workers Compensation Claim.

113.   **Verdemont Fire Station Project** means the "Verdemont Fire Station Project," a $2,550,000 project to finance the construction, acquisition and installation of the Verdemont Fire Station, located on real property owned by the City, as well as the purchase of two new fire engines.

114.   **Water Department** means the San Bernardino Municipal Water Department.

115.   **Water Funds**  means funds received by the City/Water Department in the form of bank accounts, cash, investments or otherwise derived from any or all of the following sources:  (i) the payments from rate payers for water and water related services; (ii) any reasonable reserves held by or for the Water Department; (iii) proceeds of any water bond issuances, including, without limitation the 1998 Sewer Bonds; (iv) the monies paid pursuant to the settlement agreement between the City and the United States pursuant to *State of California Department of Toxic Substances Control v. United States Department of the Army*, United States District Court Case No. 96-5205(MRP) consolidated with *City of San Bernardino Municipal Water Department v. United States Department of the Army*, United States District Court Case No. 96- 8867(MRP); and (v) any water related development fees or water related capital fees.

116.   **Western Alliance** means Western Alliance Equipment Finance, Inc., or any subsequent assignee.

117.   **Western Alliance Fire Alerting System Settlement** means the settlement agreement and/or amendment to the Fire Alerting System Financing Agreement, to be attached to

The Disclosure Statement accompanying this Plan has not been approved by the Bankruptcy Court.  Therefore, the distribution of the Disclosure Statement and Plan at this time is not, and should not be construed to be, the solicitation of votes on the Plan.

the Plan and/or Plan Supplement, which will restructure the Fire Alerting System Agreement as set forth therein.

**118.**    **Western Alliance A/C Settlement** means that certain settlement agreement, to be attached to the Plan and/or Plan Supplement, which set forth the settlement between the City and Western Alliance in relation to the Police Station AC Financing Agreement.

**119.**    **Workers' Compensation Claims** means those Claims pursuant to California workers compensation law (California Labor Code section 3200 *et seq.*) of current and former City employees who have suffered an eligible injury while employed by the City.

**C.**    **Computation of Time.**

In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) apply.

**II.**    **TREATMENT AND DEADLINE FOR THE ASSERTION OF ADMINISTRATIVE CLAIMS AND PROFESSIONAL CLAIMS**

**A.**    **Treatment of Administrative Claims.**

Except to the extent that the holder of an Allowed Administrative Claim agrees to a different treatment, the City or its agent shall pay to each holder of an Allowed Administrative Claim, in full satisfaction, release, and discharge of such Allowed Administrative Claim, Cash in an amount equal to such Allowed Administrative Claim on the later of (i) the Effective Date or (ii) the date on which such Claim becomes an Allowed Administrative Claim, or as soon thereafter as is practicable.  The City's consent to the Bankruptcy Court adjudicating Administrative Claim status is given without the City in any way consenting or agreeing that Claims for postpetition obligations of the City are or would be entitled to status as Administrative Claims as "the actual necessary costs and expenses of preserving the estate" under Bankruptcy Code section 503(b), and the City reserves its right to maintain that such Claims are Other Postpetition Claims under this Plan.

**B.**    **Treatment of Professional Claims.**

Pursuant to Bankruptcy Code section 943(b)(3), all amounts paid following the Effective Date or to be paid following the Effective Date, for services or expenses incurred in the Bankruptcy Case, or incident to this Plan, and not previously paid, must be fully disclosed and must be

The Disclosure Statement accompanying this Plan has not been approved by the Bankruptcy Court.  Therefore, the distribution of the
Disclosure Statement and Plan at this time is not, and should not be construed to be, the solicitation of votes on the Plan.

reasonable.  After the Effective Date, there shall be paid to each holder of a Professional Claim, in full satisfaction, release, and discharge of such Claim, Cash in an amount equal to that portion of such Claim that the Bankruptcy Court approves as reasonable.  Such payment shall be made on or as soon as reasonably practicable following the date on which the Bankruptcy Court enters a Final Order determining such reasonableness.  The City, in the ordinary course of its business, and without the requirement for Bankruptcy Court approval, may pay for professional services that are rendered and costs that are incurred following the Effective Date.

### C.     Priority Claims in Chapter 9.

The only priority claims incorporated into Chapter 9 through Bankruptcy Code section 901 are Administrative Claims allowed under Bankruptcy Code section 503(b) and entitled to priority under Bankruptcy Code section 507(a)(2).  The treatment of all such Administrative Claims is set forth immediately above in Sections II.A and II.B.  No other kinds of priority claims set forth in Bankruptcy Code section 507 are recognized in this Bankruptcy Case, and Claims that are not Administrative Claims herein and that would constitute administrative expenses in a case under another chapter of the Bankruptcy Code, including Other Postpetition Claims, are treated in Chapter 9 and in this Plan as General Unsecured Claims.

### D.     Deadline for the Filing and Assertion of Administrative Claims and Professional Claims.

All requests for payment or any other means of preserving and obtaining payment of Administrative Claims that have not been paid, released, or otherwise settled, and all requests for approval of Professional Claims, must be filed with the Bankruptcy Court and served upon the City no later than 30 days after the date on which the Notice of Effective Date is served.  Any proof of claim for payment of an Administrative Claim or a Professional Claim, that is not timely filed by such date will be forever barred, and holders of such Claims shall be barred from asserting such Claims in any manner against the City.

### III.     DESIGNATION OF CLASSES OF CLAIMS

Pursuant to Bankruptcy Code sections 1122 and 1123(a)(1), all Claims other than Administrative Claims and Professional Claims are classified for all purposes, including voting,

PLAN FOR THE ADJUSTMENT OF DEBTS

The Disclosure Statement accompanying this Plan has not been approved by the Bankruptcy Court.  Therefore, the distribution of the Disclosure Statement and Plan at this time is not, and should not be construed to be, the solicitation of votes on the Plan.

confirming, and distribution pursuant to this Plan, as follows:

| | | |
|---|---|---|
| Class 1 - | 1996 Refunding Bonds Claims | (Impaired/Voting) |
| Class 2 - | 1999 Refunding Certificates of Participation Claims | (Impaired/Voting) |
| Class 3 - | Secured Claims: CIEDB Harriman Project Claims | (Unimpaired/Nonvoting) |
| Class 4 - | Secured Claims: CIEDB Pavement Project Claims | (Unimpaired/Nonvoting) |
| Class 5 - | Secured/Restricted Fund Claims: CIEDB Verdemont Fire Station Project Claims | (Unimpaired/Nonvoting) |
| Class 6 - | Secured Claims: Fire Alerting System Financing Claims | (Impaired/Voting) |
| Class 7 - | Secured Claims: Police Station AC Financing Claims | (Impaired/Voting) |
| Class 8 - | Secured Claims: Burgess Claims | (Impaired/Voting) |
| Class 9 - | Claims on Restricted Revenue Bond and Note Payable Obligations | (Unimpaired/Nonvoting) |
| Class 10 - | CalPERS Claims | (Unimpaired/Nonvoting) |
| Class 11 - | PARS Claims | (Impaired/Voting) |
| Class 12 - | Consenting Union Claims | (Impaired/Voting) |
| Class 13 - | Retiree Health Benefit Claims | (Impaired/Voting) |
| Class 14 - | POB Claims | (Impaired/Voting) |
| Class 15 - | General Unsecured Claims | (Impaired/Voting) |
| Class 16 – | Convenience Class Claims | (Impaired/Voting) |

## IV.   TREATMENT OF CLAIMS

### A.   Class 1 – 1996 Refunding Bonds Claims

**Impairment and Voting.**  Class 1 is Impaired by this Plan because the treatment of this Class will affect the legal, equitable, or contractual rights of the holders of the Claims.  Accordingly, National, as the deemed holder of the Claims in this Class, is entitled to vote to accept or reject this Plan.

**Treatment.**  Subject to the terms and conditions of the 1996 Refunding Bonds Amendment, on the Effective Date, the 1996 Trust Indenture and the City Hall Lease will be amended and

The Disclosure Statement accompanying this Plan has not been approved by the Bankruptcy Court. Therefore, the distribution of the Disclosure Statement and Plan at this time is not, and should not be construed to be, the solicitation of votes on the Plan.

supplemented.  In addition, in connection with the 1996 Refunding Bonds Amendment, the City will

assume the 1996 Refunding Bond Agreements (City Hall) and will cure, or provide adequate

assurance for the prompt cure, of all defaults under the 1996 Refunding Bond Agreements (City

Hall) that are required to be cured under section 365(b)(1)(A) of the Bankruptcy Code.  The

effectiveness of the 1996 Refunding Bonds Amendment will also be subject to a number of terms

and conditions as set forth therein.  Subject to the 1996 Refunding Bonds Amendment, the 1996

Refunding Bonds Trustee shall retain all of its rights, remedies, security interests and collateral

under the 1996 Trust Indenture, as amended, and any bonds, notes, security agreements, or any other

instruments or agreements executed in connection with the 1996 Refunding Bonds or otherwise

providing, granting or perfecting a lien in connection with the 1996 Refunding Bonds.

## B.      Class 2 – 1999 Refunding Certificates of Participation Claims

**Impairment and Voting.**  Class 2 is Impaired by this Plan because the treatment of this

Class will affect the legal, equitable, or contractual rights of the holders of the Claims.  Accordingly,

National, as the deemed holder of the Claims in this Class, is entitled to vote to accept or reject this

Plan.

**Treatment.**  Subject to the terms and conditions of the 1999 Refunding Certificates of

Participation Amendment, on the Effective Date, the 1999 Trust Agreement and the Police Station

Lease will be amended and supplemented.  Pursuant to the 1999 Refunding Certificates of

Participation Amendment, on the Effective Date, funds from the "Reserve Fund" (in excess of the

"Reserve Requirement") and the "Capital Reserve Fund" (as such terms are defined in the 1999

Trust Agreement) will be used to pay in full all remaining lease payments due from the City under

the Police Station Lease.  In addition, pursuant to Section 10.02 of the Police Station Lease, the City

will give notice of an optional redemption of the 1999 Refunding Certificates of Participation in an

amount equal to the amount of the Police Station Lease prepayment hereunder, with such

redemption to occur at the earliest practicable date following the occurrence of the Effective Date.

Such notice will specify the order of redemption of the 1999 Refunding Certificates of Participation,

which order will ensure that the remaining payments required to be made by the City under the 1999

Refunding Certificates of Participation Agreements (Police Station/201 North E Street/South Valle)

The Disclosure Statement accompanying this Plan has not been approved by the Bankruptcy Court.  Therefore, the distribution of the
Disclosure Statement and Plan at this time is not, and should not be construed to be, the solicitation of votes on the Plan.

will be sufficient to pay the principal of and interest on the 1999 Refunding Certificates of

Participation when due, as certified by an independent financial consultant of the City reasonably

acceptable to National and the 1999 Refunding Certificates of Participation Trustee.  On the

Effective Date, the City will deposit the proceeds of the prepayment of the Police Station Lease with

the 1999 Refunding Certificates of Participation Trustee to hold in trust pursuant to the terms of the

1999 Trust Agreement pending the redemption of the 1999 Refunding Certificates of Participation

required hereunder.

   In connection with the 1999 Refunding Certificates of Participation Amendment, the City

will also assume the 1999 Refunding Certificates of Participation Agreements (Police Station/201

North E Street/South Valle), including the Police Station Lease, as amended by the 1999 Refunding

Certificates of Participation Amendment, and will cure, or provide adequate assurance for the

prompt cure, of all defaults under the 1999 Refunding Certificates of Participation Agreements

(Police Station/201 North E Street/South Valle) that are required to be cured under section

365(b)(1)(A) of the Bankruptcy Code.  The effectiveness of the 1999 Refunding Certificates of

Participation Amendment will also be subject to a number of terms and conditions, as set forth

therein.  Subject to the 1999 Refunding Certificates of Participation Amendment, the 1999

Refunding Certificates of Participation Trustee shall retain all of its rights, remedies, security

interests and collateral (other than with respect to the  Police Station) under the 1999 Trust

Agreement, as amended, and any bonds, notes, security agreements, or any other instruments or

agreements executed in connection with the 1999 Refunding Certificates of Participation or

otherwise providing, granting or perfecting a lien in connection with the 1999 Refunding Certificates

of Participation.

   **C.**  **Class 3 – Secured Claims: CIEDB Harriman Project Claims**

   **Impairment and Voting.**  Class 3 is not Impaired by this Plan because the treatment of this

Class will not affect the legal, equitable, or contractual rights of the holders of the Claims.

Accordingly, the holders of Claims in this Class are not entitled to vote to accept or reject this Plan.

   **Treatment.**  The Claims of CIEDB in respect of the Harriman Project will be paid in

accordance with those CIEDB Documents relating to the CIEDB's financing of the Harriman

The Disclosure Statement accompanying this Plan has not been approved by the Bankruptcy Court. Therefore, the distribution of the Disclosure Statement and Plan at this time is not, and should not be construed to be, the solicitation of votes on the Plan.

Project.

### D. Class 4 – Secured Claims: CIEDB Pavement Project Claims

**Impairment and Voting.** Class 4 is not Impaired by this Plan because the treatment of this Class will not affect the legal, equitable, or contractual rights of the holders of the Claims. Accordingly, the holders of Claims in this Class are not entitled to vote to accept or reject this Plan.

**Treatment.** The Claims of CIEDB in respect of the Pavement Project will be paid in accordance with those CIEDB Documents relating to the CIEDB's financing of the Pavement Project.

### E. Class 5 – Secured/Restricted Fund Claims: CIEDB Verdemont Fire Station Project Claims

**Impairment and Voting.** Class 5 is not Impaired by this Plan because the treatment of this Class will not affect the legal, equitable, or contractual rights of the holders of the Claims. Accordingly, the holders of Claims in this Class are not entitled to vote to accept or reject this Plan.

**Treatment.** The City's payment obligations in respect of the CIEDB Verdemont Fire Station Project Claims are payable from restricted revenues. The Claims of CIEDB in respect of the Verdemont Fire Station Project will be paid in accordance with those CIEDB Documents relating to the CIEDB's financing of the Verdemont Fire Station Project.

### F. Class 6 – Secured Claims: Fire Alerting System Financing Claims

**Impairment and Voting.** Class 6 is Impaired by this Plan because the treatment of this Class will affect the legal, equitable, or contractual rights of the holders of the Claims, and, accordingly, the holders of the Claims in this Class are entitled to vote to accept or reject this Plan.

**Treatment.** The Fire Alerting System Financing Agreement shall be restructured, as set forth in the Western Alliance Fire Alerting System Settlement, to provide for the payment of any remaining principal and interest as set forth therein. In particular, the Western Alliance Fire Alerting System Settlement shall provide that (i) the City will continue to make the periodic debt service due under the Fire Alerting System Financing Agreement as of December 1, 2015, in the amount of approximately $44,260.70, (ii) if the Effective Date occurs on or before June 1, 2016, Western Alliance will restructure the final two payments (collectively $85,620.98 in principal) over a two

The Disclosure Statement accompanying this Plan has not been approved by the Bankruptcy Court.  Therefore, the distribution of the
Disclosure Statement and Plan at this time is not, and should not be construed to be, the solicitation of votes on the Plan.

year period payable on a semi-annual basis at an interest rate of 4.5%, (iii) if the Effective Date

occurs after June 1, 2016, the City will make the periodic debt service due under the Fire Alerting

System Financing Agreement as of June 1, 2016, in the amount of approximately $44,260.70, (iv) if

the Effective Date occurs after June 1, 2016, Western Alliance will restructure the final payment

($44,260.70) over a two year period payable on a semi-annual basis at an interest rate of 4.5%, and

(v) the terms of the Western Alliance Fire Alerting System Settlement will be implemented  pursuant

to an amendment to the Fire Alerting System Financing Agreement, which amendment be attached

to the Plan Supplement, and executed by the City and Western Alliance effective as of the Effective

Date.

### G.        Class 7 – Secured Claims: Police Station AC Financing Claims

**Impairment and Voting.**  Class 7 is Impaired by this Plan because the treatment of this

Class will affect the legal, equitable, or contractual rights of the holders of the Claims, and,

accordingly, the holders of the Claims in this Class are entitled to vote to accept or reject this Plan.

**Treatment.**  The Claims in this class will be treated as follows.  Pursuant to the Western

Alliance A/C Settlement, (i) the City will reject, as an unexpired lease, the Police Station AC

Financing Agreement, (ii) Western Alliance shall have a General Unsecured Claim for such rejection

in  the amount of $476,092.64, (iii) Western Alliance will release any and all liens and/or security

interests in the Police Station ACs, (iv) the Police Station ACs shall remain on City property (or

property controlled by the City) and shall be deemed abandoned to the City, without liability to

Western Alliance, (v) Western Alliance shall waive its rights with respect to any other claim(s)

against the City, including but not limited to an Administrative Claim, in relation to the Police

Station AC Financing Agreement and will waive any rights that Western Alliance has in the

repossession of the Police Station ACs, and (vi) the City will, in turn, waive any claims or causes of

action it could otherwise assert against Western Alliance in relation to any damages the City may

otherwise incur in relation to removal of the Police Station ACs.  Pursuant to the Western Alliance

A/C Settlement, the City will be entitled to retain, sell, or otherwise dispose of the Police Station

ACs as it deems fit.

The Disclosure Statement accompanying this Plan has not been approved by the Bankruptcy Court. Therefore, the distribution of the Disclosure Statement and Plan at this time is not, and should not be construed to be, the solicitation of votes on the Plan.

**H.     Class 8 – Secured Claims: Burgess Claims**

**Impairment and Voting.** Class 8 is Impaired by this Plan because the treatment of this Class will affect the legal, equitable, or contractual rights of the holders of the Burgess Claims, and, accordingly, the holders of the Burgess Claims are entitled to vote to accept or reject this Plan.

**Treatment.** The maturity date on the Burgess Note is in 2019, at which time a large balloon payment is due. The Burgess Documents will be amended to extend the maturity date until 2022, and the balloon payment will amortized over that 3-year period. All other payment terms shall remain as presently stated pursuant to the Burgess Documents.

**I.     Class 9 – Claims on Restricted Revenue Bond and Note Payable Obligations**

**Impairment and Voting.** Class 9 is not Impaired by this Plan because the treatment of this Class will not affect the legal, equitable, or contractual rights of the holders of the Claims. Accordingly, the holders of Claims in this Class are not entitled to vote to accept or reject this Plan.

**Treatment.** The City's Restricted Revenue Bond and Notes Payable Obligations, which include the 1998 Refunding Certificates of Participation and the CSWRCB Revenue Bond Claim, are secured by a pledge of and lien on revenues of several of the City's systems and enterprises, which are restricted revenues and "special revenues" as defined in Bankruptcy Code section 902(2). The City will pay Restricted Revenue Bond and Notes Payable Obligations in the ordinary course of business pursuant to the applicable documents (which, including the 1998 Refunding Certificates of Participation Agreements (Sewer), will be assumed by the City on the Effective Date, with any defaults, to the extent any defaults exist as of the Effective Date, that are required to be cured under section 365(b)(1)(A) of the Bankruptcy Code cured, or adequate provision made for the prompt cure thereof). The 1998 Refunding Certificates of Participation Trustee shall retain all of its rights, remedies, security interests and collateral under the 1998 Trust Indenture, and any bonds, notes, security agreements, or any other instruments or agreements executed in connection with the 1998 Refunding Certificates of Participation or otherwise providing, granting or perfecting a lien in connection with the 1998 Refunding Certificates of Participation.

**J.     Class 10 – CalPERS Claims**

**Impairment and Voting.** Class 10 is not Impaired by this Plan because the treatment of this

The Disclosure Statement accompanying this Plan has not been approved by the Bankruptcy Court.  Therefore, the distribution of the Disclosure Statement and Plan at this time is not, and should not be construed to be, the solicitation of votes on the Plan.

Class will not affect the legal, equitable, or contractual rights of the holder of such Claims, and, accordingly, the holders of the Claims in this Class are not entitled to vote to accept or reject this Plan.

**Treatment.**  The CalPERS Claims will be paid in accordance with the CalPERS Interim Agreement.  Notwithstanding anything in this Plan to the contrary, nothing in this Plan is intended to or does impair or interfere with the rights of the City and CalPERS under the CalPERS Interim Agreement, which CalPERS Interim Agreement is incorporated into this Plan.

### K.    Class 11 – PARS Claims

**Impairment and Voting.**  Class 11 is Impaired by this Plan because the treatment of this Class will affect the legal, equitable, or contractual rights of the holders of the Claims, and, accordingly, the holders of the Claims in this Class are entitled to vote to accept or reject this Plan.

**Treatment.**  (i) the PARS Plans will be rejected, and the City will waive any and all claims to the funds held within the PARS Trust and the 415 Trust as of the date of termination of the PARS Plans, (ii) the amounts remaining in the PARS Trust and the 415 Trust will be distributed to the PARS Participants pursuant to agreed-upon allocations, and the City will endeavor to make each such distributions in a manner that will minimize adverse tax consequences for each PARS Participant, (iii) each PARS Participant will have a General Unsecured Claim for the unfunded liability owed by the City under each respective PARS Plan as of the date distributions are made to the PARS Participants, and (iv) the City will be discharged from any and all obligations to further fund any PARS Plan.  The City anticipates documenting an agreement with the Retiree Committee and PARS Participants setting forth the above treatment, and the terms of any such agreement will be reflected in a Plan Document to be attached and incorporated as part of the Plan or Plan Supplement.

### L.    Class 12 – Consenting Union Claims

**Impairment and Voting.**  Class 12 is Impaired by this Plan because the treatment of this Class will affect the legal, equitable, or contractual rights of the holders of the Claims, and, accordingly, the holders of the Claims in this Class are entitled to vote to accept or reject this Plan.

**Treatment**.  Upon reaching agreement with a union representing City employees on

The Disclosure Statement accompanying this Plan has not been approved by the Bankruptcy Court.  Therefore, the distribution of the Disclosure Statement and Plan at this time is not, and should not be construed to be, the solicitation of votes on the Plan.

the terms of a new or modified memorandum of understanding, such agreement will be reflected in a Plan Document to be attached and incorporated as part of the Plan Supplement.  The Claims of the employees and the formally recognized bargaining agent that are, by agreement, discharged under the Plan, will be included in Class 15 General Unsecured Claims and will be treated accordingly. To date, the City has entered into settlements with the SBPOA, IUOE, Management/Confidential Association and the Police Management Association.  The MOUs and other agreements governing such settlements are described in Section V.A.2.*l.* of the Disclosure Statement.

**M.    Class 13 – Retiree Health Benefit Claims**

**Impairment and Voting.**  Class 13 is Impaired by this Plan because the treatment of this Class will affect the legal, equitable, or contractual rights of the holders of the Claims, and, accordingly, the holders of the Claims in this Class are entitled to vote to accept or reject this Plan.

**Treatment**.  Pursuant to the Retiree Settlement, the holders of the Retiree Health Benefit Claims shall receive the rights and benefits set forth in the Retiree Settlement and all terms of the Retiree Settlement are deemed incorporated into this Plan.  The Retiree Settlement is attached to this Plan as Exhibit B.  Pursuant to the Retiree Settlement, the holders of the Retiree Health Benefit Claims shall be entitled to Employee Wage and Benefit Claims, as General Unsecured Claims, for any of the benefits eliminated under the Retiree Settlement.

**N.    Class 14 – POB Claim**

**Impairment and Voting.**  Class 14 is Impaired by this Plan because the treatment of this Class will affect the legal, equitable, or contractual rights of the holders of the Claims.  Accordingly, the holders of Claims in this Class are entitled to vote to accept or reject this Plan.

**Treatment.**  The holder of the POB Claims will receive an unsecured note, in the principal amount of $655,000, with a term 20 years from the Effective Date, that shall provide the following: (i) the note will accrue interest at a rate of 5.649%, (ii) no payments will be made on principal or interest for the first 5 years of the term of the note, (iii) interest-only payments will be made semiannually in years six through the term of the note, payable each April 1 and October 1, and    (iv) principal amortization payments will be made annually, beginning in year eleven of the note, through the term of the note, payable each October 1.

The Disclosure Statement accompanying this Plan has not been approved by the Bankruptcy Court.  Therefore, the distribution of the Disclosure Statement and Plan at this time is not, and should not be construed to be, the solicitation of votes on the Plan.

### O.   Class 15 – General Unsecured Claims

**Impairment and Voting.**  Class 15 is Impaired by this Plan because the treatment of this Class will affect the legal, equitable, or contractual rights of the holders of the Claims.  Accordingly, the holders of Claims in this Class are entitled to vote to accept or reject this Plan.  This Class includes, without limitation, Employee Wage and Benefit Claims, Contract Rejection Claims, Other Postpetition Claims and Litigation Claims; but not including Administrative Claims and Claims placed in Classes 1 through 14 and 16, unless otherwise specified herein.

**Treatment.**  On the Effective Date, or as soon as reasonably practicable after the Effective Date, Holders of Allowed Class 15 Claims will receive a *pro rata* portion of a fixed amount of Cash in an amount of approximately $1.3 million, which amount shall equal an approximate distribution of 1% of their Allowed General Unsecured Claims.

### P.   Class 16 – Convenience Class Claims

**Impairment and Voting.**  Class 16 is Impaired by this Plan because the treatment of this Class will affect the legal, equitable, or contractual rights of the holders of the Claims, and, accordingly, the holders of the Claims in this Class are entitled to vote to accept or reject this Plan.

**Treatment.**  Within 30 days after the Effective Date, each holder of an Allowed Convenience Class Claim shall receive the lesser of the Allowed amount of the Claim or $100 at the election of the holder of the Allowed Convenience Class Claim.

## V.   ACCEPTANCE OR REJECTION; CRAMDOWN

### A.   Voting of Claims.

Each holder of an Allowed Claim classified into the following Classes shall be entitled to vote each such Claim to accept or reject this Plan:  Class 1 – 1996 Refunding Bonds Claims;   Class 2 – 1999 Refunding Certificates of Participation Claims; Class 6 – Fire Alerting System Financing Claims; Class 7 – Police Station AC Financing Claims; Class 8 – Burgess Claims; Class 11 – PARS Claims; Class 12- Consenting Union Claims; Class 13 – Retiree Health Benefit Claims;  Class 14 – POB Claims;  Class 15 – General Unsecured Claims; and Class 16 – Convenience Class Claims.

With respect to any Class of Impaired Claims that fails to accept this Plan, the City, as proponent of this Plan, will request that the Bankruptcy Court nonetheless confirm this Plan pursuant

The Disclosure Statement accompanying this Plan has not been approved by the Bankruptcy Court. Therefore, the distribution of the Disclosure Statement and Plan at this time is not, and should not be construed to be, the solicitation of votes on the Plan.

to the so-called "cramdown" powers set forth in Bankruptcy Code section 1129(b).

## VI.    TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### A.    Assumption of Executory Contracts and Unexpired Leases.

Upon the Effective Date, without the need to file any motions, the City will assume all of the executory contracts and unexpired leases listed in the "List of Assumed Contracts and Leases," that will be reflected in a Plan Document to be attached and incorporated as part of the Plan Supplement. The City shall be entitled to modify or supplement the List of Assumed Contracts and Leases any time up to 7 days prior to the Confirmation Hearing.  The City will not assume: (i)  those unexpired leases and executory contracts specified in subsection C. below to be rejected; (ii) those unexpired leases and executory contracts that are or have been rejected by an order of the Bankruptcy Court on a stipulation or motion filed in the Bankruptcy Case; and/or (iii) any other unexpired leases or executory contracts that are otherwise treated under this Plan.

### B.    Cure Payments.

The Bankruptcy Court shall resolve all disputes regarding:  (i) the amount of any cure payment to be made in connection with the assumption of any contract or lease; (ii) the ability of the City to provide "adequate assurance of future performance" within the meaning of Bankruptcy Code section 365 under the contract or lease to be assumed; and (iii) any other matter pertaining to such assumption and assignment.  Any party to an executory contract or unexpired lease that is to be assumed by the City that asserts that any payment or other performance is due as a condition to the proposed assumption shall file with the Bankruptcy Court and serve upon the City a written statement and accompanying declaration in support thereof, specifying the basis for its Claim on the date that objections to confirmation of this Plan are due, _____ __, 2016.  The failure to timely file and serve such a statement in accordance with this Plan shall be deemed to be a waiver of any and all objections to the proposed assumption and of any claim for cure amounts of the agreement at issue.

### C.    Rejection of Executory Contracts and Unexpired Leases.

Except with respect to the 1996 Refunding Bonds Agreements (City Hall), the 1999 Refunding Certificates of Participation Agreements (Police Station/201 North E Street/South Valle)

PLAN FOR THE ADJUSTMENT OF DEBTS

The Disclosure Statement accompanying this Plan has not been approved by the Bankruptcy Court. Therefore, the distribution of the Disclosure Statement and Plan at this time is not, and should not be construed to be, the solicitation of votes on the Plan.

and the 1998 Refunding Certificates of Participation Agreements (Sewer), the assumption of which is addressed in Classes 1, 2 and 9 of this Plan, all executory contracts and unexpired leases not listed in the "List of Assumed Contracts and Leases," including without limitation the contracts and leases listed on the Plan Document "List of Rejected Contracts and Leases," that will be reflected in a Plan Document to be attached and incorporated as part of the Plan Supplement, are rejected under this Plan, as of the Effective Date, without the need to file any motions.

The City shall be entitled to modify or supplement the List of Rejected Contracts and Leases any time up to 7 days prior to the Confirmation Hearing. **Each executory contract or unexpired lease of the City that has not expired by its own terms before the Effective Date or previously been rejected by the City, and is not listed on the "List of Assumed Contracts and Leases," or the "List of Rejected Contracts and Leases," is rejected as of the Effective Date.**

### D.    Claims Arising From Rejection.

Proofs of claim arising from the rejection of executory contracts or unexpired leases must be filed with the Bankruptcy Court and served on the City no later than 30 days after the Effective Date if the contract or lease is described on the "List of Rejected Contracts and Leases" or is not otherwise listed on the "List of Rejected Contracts and Leases" or the "List of Assumed Contracts and Leases". Any Claim for rejection damages for which a proof of claim is not filed and served within such time will be forever barred and shall not be enforceable against the City or its assets, properties, or interests in property. All rejection damage claims will be treated as a Claim in Class 15 (General Unsecured Claims).

### E.    Amendments to Assumption or Rejection of Contracts and Leases.

Any time, within 120 days after the Effective Date, in order to rectify an inadvertent assumption or rejection of an executory contract or unexpired lease pursuant to the provisions of Section VI.A. or VI.C. hereof, the City may file a motion to make such modification, as to which motion Bankruptcy Code Section 1127(d) shall apply.

## VII.    IMPLEMENTATION AND MEANS FOR IMPLEMENTATION OF THIS PLAN

### A.    In General.

On or as soon as reasonably possible after the Effective Date, the City will execute all Plan

The Disclosure Statement accompanying this Plan has not been approved by the Bankruptcy Court.  Therefore, the distribution of the
Disclosure Statement and Plan at this time is not, and should not be construed to be, the solicitation of votes on the Plan.

Documents requiring execution, deliver same to the counterparties to such Plan Documents and perform thereunder.

On and after the Effective Date, the City will continue to operate pursuant to the Charter, the California Constitution, and other applicable laws.

On and after the Effective Date, the City will take all actions required under the ADR Procedures, provided, however, that the settlement of any Claims pursuant to the ADR Procedures will be subject to the required consents, if any, of any applicable insurance carrier.

**B.**    **Means for Execution and Implementation of this Plan.**

The implementation of this Plan will be accomplished through the following.

**1.**    **Revenue Enhancement.**

While revenue enhancement is severely constrained under California Law, there are a number of (mainly administrative) best practices which can be implemented by the City to generate revenues.  These are detailed in the Recovery Plan.  The Recovery Plan evaluated 14 new revenue sources. Many require voter approval. The Plan itself contemplates implementation of approximately 7 new fee adjustments. The City has already implemented revisions to the water/sewer utilities franchise fee structure, and is well along with the solid waste collection franchise fee.  In addition the City fire service annexation application is requesting annexation into a service zone with an approximate $143 per parcel fee, which would generate approximately $7.8 million for Fire Services.

**2.**    **Contracting Out of Services.**

Contracting out of certain municipal services currently being provided by direct City labor is a keystone of the Plan.  While historically, the City has done relatively little contracting, it has had success with contracting parks maintenance functions in the last several years.  More recently, the City has initiated a process under the City would be annexed into the San Bernardino County Fire Protection District, and County Fire would provide Fire Services directly to the City's resident, all as described in more detail in the Disclosure Statement and the Recovery Plan.  Recently, the City Council also authorized the City to proceed with contracting out solid waste disposal services to a private contractor, which the City believes has the support of City employees currently providing

The Disclosure Statement accompanying this Plan has not been approved by the Bankruptcy Court. Therefore, the distribution of the Disclosure Statement and Plan at this time is not, and should not be construed to be, the solicitation of votes on the Plan.

such services.  The contracting out of solid waste disposal services also is discussed in greater detail in the Disclosure Statement and the Recovery Plan.

### 3.   City Charter.

As set forth in more detail in the Recovery Plan, the City has historically experienced a wide range of operational and other problems pursuant to the existing Charter structure.   There is in existence a Charter Committee, and the City anticipates that the Charter Committee will draft a proposed new Charter.  The City intends to place such proposed new Charter before the City voters (not the voters under the Plan) for their consideration on the November 2016 ballot (or earlier if legally possible).  In the interim the City is operating under the Operating Practices for Good Government protocol recently adopted by the City that streamlines decision making, increases efficiency and provides for better accountability.  The City hopes that Charter reform will enable further streamlining of operations and increased efficiency and accountability of City government.  However, the City's Plan is not in any way conditioned upon approval of any Charter reforms, and the City's financial model and feasibility analysis does not assume or require that any Charter reforms will be implemented.

### 4.   Continued Operations.

Following the Effective Date, the City will continue to operate under its Charter (subject to any changes, repeal or amendments pursuant to voter action), the California Constitution, and other applicable laws.  The City will continue to collect real property tax revenues, sales tax revenues, the user utility tax, and other taxes, fees, and revenues following the Effective Date, spending such revenues on municipal services.  In accordance with existing policies and operational guidelines, the City will continue to pay ordinary course debt, including, without limitation, Workers' Compensation Claims (the Uninsured Portion, where the Insured Portion is covered by insurance), trade and/or vendor claims, and amounts due other governmental agencies (e.g., HUD, and Environmental Protection Agency) providing ongoing funding to the City.  In addition, following the Effective Date, the City will continue to provide Indemnification in accordance with the City's prepetition practices (as revised from time to time).  The City reserves the right to provide or deny requests or demands for Indemnification in accordance with its practices.

PLAN FOR THE ADJUSTMENT OF DEBTS

The Disclosure Statement accompanying this Plan has not been approved by the Bankruptcy Court.  Therefore, the distribution of the
Disclosure Statement and Plan at this time is not, and should not be construed to be, the solicitation of votes on the Plan.

**C.** **Restricted Funds.**

This Plan does not alter the obligations of those City funds that are restricted by grants, federal law or state law.  Therefore, securities or claims payable solely from Restricted Funds are unimpaired by this Plan and will be paid in the ordinary course.  Without limiting the foregoing, those claims against the City/Water Department payable solely from Water Funds are unimpaired by the Plan and will be paid in the ordinary course.

**D.** **Insurance.**

The Big Independent Cities Excess Pool Joint Powers Authority, together with Great American Insurance Company, Wesco Insurance Company and Starr Indemnity & Liability Co., provide the City with insurance and reinsurance coverage for, among other things, personal liability and bodily injury claims, subject to the terms and conditions of the applicable insurance policies (the "Liability Insurance"). The rights of creditors to the Liability Insurance shall not be impaired by confirmation of the Plan.

**VIII.** **RETENTION OF THE CITY'S RIGHTS OF ACTION**

All of the City's Rights of Action shall be retained by the City after the Effective Date.  The failure to list in this Plan, Disclosure Statement, the Plan Supplement or any Plan Document any potential or existing Right of Action retained by the City is not intended to and shall not limit the rights of the City to pursue any such Right of Action.  Unless a Right of Action is expressly waived, relinquished, released, compromised, or settled in this Plan or otherwise, the City expressly reserves all Rights of Action for later adjudication, and as a result, no preclusion doctrine, including without limitation the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Rights of Action upon confirmation or consummation of this Plan or thereafter.  Without limiting the foregoing, the City expressly reserves the right to pursue against any Entity any claims alleged in any lawsuit in which the City is a defendant or an interested party.

**IX.** **DISTRIBUTIONS**

**A.** **Distribution Agent.**

On and after the Effective Date, the City shall act as the Distribution Agent under this Plan.

The Disclosure Statement accompanying this Plan has not been approved by the Bankruptcy Court.  Therefore, the distribution of the
Disclosure Statement and Plan at this time is not, and should not be construed to be, the solicitation of votes on the Plan.

The City may also retain one or more agents (including Rust Omni) to perform or assist it in performing the distributions to be made pursuant to this Plan, which agents may serve without bond. The City may provide reasonable compensation to any such agent(s) without further notice or Bankruptcy Court approval.

### B.   Delivery of Distributions.

All distributions to any holder of an Allowed Claim shall be made at the address of such holder as set forth in the books and records of the City or its agents, unless the City has been notified by such holder in a writing that contains an address for such holder different from the address reflected in the City's books and records that is mailed to Rust Consulting/Omni Bankruptcy, 5955 DeSoto Avenue, Suite 100, Woodland Hills, CA 91367 at least two weeks prior to such distribution. All distributions to Indenture Trustees or similar Entities shall be made in accordance with the relevant indenture or agreement, as applicable.

### C.   Distributions of Cash.

Any payment of Cash to be made by the City or its agent pursuant to this Plan shall be made by check drawn on a domestic bank or by wire transfer, at the sole option of the City.

### D.   Timeliness of Payments.

Any payments or distributions to be made pursuant to this Plan shall be deemed to be timely made if made within 30 days after the dates specified in this Plan.  Whenever any distribution to be made under this Plan shall be due on a day that is not a Business Day, such distribution instead shall be made, without interest on such distribution, on the immediately succeeding Business Day, but shall be deemed to have been timely made on the date due.

### E.   Compliance with Tax, Withholding, and Reporting Requirements.

The City shall comply with all tax, withholding, reporting, and like requirements imposed on it by any government unit, and all distributions pursuant to this Plan shall be subject to such withholding and reporting requirements.  In connection with each distribution with respect to which the filing of an information return (such as Internal Revenue Service Forms W-2, 1099, or 1042) or withholding is required, the City shall file such information return with the Internal Revenue Service and provide any required statements in connection therewith to the recipients of such distribution, or

The Disclosure Statement accompanying this Plan has not been approved by the Bankruptcy Court.  Therefore, the distribution of the Disclosure Statement and Plan at this time is not, and should not be construed to be, the solicitation of votes on the Plan.

effect any such withholding and deposit all moneys so withheld to the extent required by law.  With respect to any entity from whom a tax identification number, certified tax identification number, or other tax information that is required by law to avoid withholding has not been received by the City, the City at its sole option may withhold the amount required and distribute the balance to such entity or decline to make such distribution until the information is received.

### F.  Time Bar to Cash Payments.

Checks issued by the City on account of Allowed Claims shall be null and void if not negotiated within 91 days from and after the date of issuance thereof.  Requests for reissuance of any check shall be made directly to the City by the holder of the Allowed Claim with respect to which such check originally was issued.  Any claim in respect of such a voided check must be made on or before the second anniversary of the Effective Date.  After such date, all Claims in respect of voided checks will be discharged and forever barred and the City will retain all moneys related thereto.

### G.  No *De Minimis* Distributions.

Notwithstanding any other provision of this Plan, no Cash payment of less than $10 will be made by the City on account of any Allowed Claim.

### H.  Distributions of Unclaimed Property.

If any distribution to any holder of a Claim is returned to the City or its agent as undeliverable, no further distributions shall be made to such holder unless and until the City is notified in writing of such holder's then-current address. Any unclaimed distributions shall be set aside and maintained by the City. On the first business day after the first anniversary of the Effective Date and after each subsequent anniversary until all Plan distributions are completed, the City shall post on its official website a list of unclaimed distributions, together with a schedule that identifies the name and last-known addresses of the holders of any unclaimed distributions. The City shall not be required to make any further attempt to locate the holders of any unclaimed distributions. Any distribution under this Plan that remains unclaimed after 120 days following the date of the first posting on the website may be deemed by the City not to have been made and, together with any accrued interest or dividends earned thereon, may, at the City's sole discretion, be transferred to and vest in the City to be used by the City for any purpose. The City shall not be obligated to make any

PLAN FOR THE ADJUSTMENT OF DEBTS

The Disclosure Statement accompanying this Plan has not been approved by the Bankruptcy Court. Therefore, the distribution of the
Disclosure Statement and Plan at this time is not, and should not be construed to be, the solicitation of votes on the Plan.

further distributions on account of any Claim with respect to which an undeliverable distribution was made or was to be made, and such Claim shall be treated as a Disallowed Claim. Nothing contained herein shall affect the discharge of the Claim with respect to which such distribution was to be made, and the holder of such Claim shall be forever barred from enforcing such Claim against the City or its assets, estate, properties, or interests in property.

> **I.  No Distributions on Account of Disputed Claims.**

Notwithstanding anything to the contrary in this Plan, no distributions shall be made on account of any part of any Disputed Claim until such Claim becomes Allowed (and then only to the extent so Allowed). Distributions made after the Effective Date in respect of Claims that were not Allowed as of the Effective Date (but which later became Allowed) shall be deemed to have been made as of the Effective Date.

> **J.  Certain Claims to be Expunged.**

Any Claim that has been or is hereafter listed in the List of Creditors as contingent, unliquidated or disputed, and for which no proof of Claim is or has been timely filed, is not considered to be an Allowed Claim and shall be expunged without further action by the City and without further notice to any party or any action, approval or order of the Bankruptcy Court.

> **K.  No Postpetition Accrual.**

Unless otherwise specifically provided in this Plan, in an executed Plan Document or otherwise required by order of the Bankruptcy Court, the City will not be required to pay to any holder of a Claim any interest, penalty, or late charge accrued or accruing with respect to such claim from the Petition Date through the Confirmation Date.

X.  **DISPUTED CLAIMS; OBJECTIONS TO CLAIMS; PROSECUTION OF OBJECTIONS TO DISPUTED CLAIMS**

> **A.  Claims Objection; ADR Procedures; Prosecution of Objections.**

The City will have the right to object to the allowance of Claims with respect to which liability or allowance is disputed in whole or in part and to subject any Disputed Claim to the ADR Procedures. The City shall have until the later of (x) 180 days after the Effective Date or (y) 180 days after a Claim was filed or scheduled, to either: (a) file and serve objections to Claims, or (b)

The Disclosure Statement accompanying this Plan has not been approved by the Bankruptcy Court. Therefore, the distribution of the Disclosure Statement and Plan at this time is not, and should not be construed to be, the solicitation of votes on the Plan.

give notice to the holder of a Disputed Claim that the City intends to try and resolve allowance of the Claim pursuant to the ADR Procedures (the "180 Day Deadline").  Upon the request of the City, the Bankruptcy Court shall be authorized to extend the 180 Day Deadline.  The City anticipates there will be additional Bar Dates for certain Claims classified under this Plan.  The ADR Procedures are attached hereto as Exhibit C.

### B.    Payments and Distributions with Respect to Disputed Claims.

After the Effective Date has occurred, at such time as a Disputed Claim becomes an Allowed Claim, in whole or in part, the City or its agent will distribute to the holder thereof the distribution(s), if any, to which such holder is then entitled under this Plan.  Such distribution(s), if any, will be made as soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing such Disputed Claim becomes a Final Order (or such other date as the Claim becomes an Allowed Claim).  Unless otherwise specifically provided in this Plan, no interest will be paid on Disputed Claims that later become Allowed Claims.

## XI.    EFFECT OF CONFIRMATION

### A.    Discharge of the City.

Upon the Effective Date, the City will be discharged from all Debts of the City and Claims against the City as of the Confirmation Date, including without limitation all Pre-Confirmation Date Claims, other than (i) any Debt specifically and expressly excepted from discharge by this Plan or the Confirmation Order, or (ii) any Debt owed to an entity that, before the Confirmation Date, had neither notice, including notice by publication, as applicable, nor actual knowledge of the Bankruptcy Case.  The rights afforded in this Plan and the treatment of all holders of Pre-Confirmation Date Claims, whether such Claims are Impaired or Unimpaired under this Plan, will be in exchange for and in complete satisfaction, discharge, and release of all Claims of any nature whatsoever arising on or before the Confirmation Date, known or unknown, including any interest accrued or expenses incurred thereon from and after the Petition Date, whether against the City or any of its properties, assets, or interests in property.  Except as otherwise provided herein, upon the Effective Date, all Pre-Confirmation Date Claims will be and shall be deemed to be satisfied, discharged, and released in full, be they Impaired or Unimpaired under this Plan.

The Disclosure Statement accompanying this Plan has not been approved by the Bankruptcy Court.  Therefore, the distribution of the
Disclosure Statement and Plan at this time is not, and should not be construed to be, the solicitation of votes on the Plan.

**B.**      **Release by Holders of Pre-Confirmation Date Claims.**

AS OF THE EFFECTIVE DATE, IN CONSIDERATION FOR THE OBLIGATIONS OF

THE CITY UNDER THE PLAN, EACH HOLDER OF A PRE-CONFIRMATION DATE CLAIM

IS DEEMED TO FOREVER RELEASE, WAIVE AND DISCHARGE ANY AND ALL CLAIMS,

ACTIONS, CAUSES OF ACTION, DEBTS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES,

ACTIONS, REMEDIES, JUDGMENTS, AND LIABILITIES WHATSOEVER (INCLUDING

WITHOUT LIMITATION THE AB 506 PROCESS AND THE ELIGIBILITY CONTEST)

AGAINST THE CITY AND THE INDEMNIFIED PARTIES, WHETHER KNOWN OR

UNKNOWN, FORESEEN OR UNFORESEEN, LIQUIDATED OR UNLIQUIDATED, FIXED OR

CONTINGENT, MATURED OR UNMATURED, EXISTING AS OF THE EFFECTIVE DATE

OR THEREAFTER ARISING, IN LAW OR AT EQUITY, WHETHER FOR TORT, CONTRACT,

OR OTHERWISE, BASED IN WHOLE OR IN PART UPON ANY ACT OR OMISSION,

TRANSACTION, EVENT OR OTHER OCCURRENCE OR CIRCUMSTANCES EXISTING OR

TAKING PLACE PRIOR TO OR ON THE EFFECTIVE DATE ARISING FROM OR RELATED

IN ANY WAY IN WHOLE OR IN PART TO THE CITY, THE INDEMNIFIED PARTIES AND

THEIR ASSETS AND PROPERTY, THE BANKRUPTCY CASE, THE DISCLOSURE

STATEMENT, THIS PLAN OR THE SOLICITATION OF VOTES ON THIS PLAN THAT SUCH

HOLDER OF A PRE-CONFIRMATION DATE CLAIM WOULD HAVE BEEN LEGALLY

ENTITLED TO ASSERT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR THAT ANY

HOLDER OF A CLAIM OR OTHER ENTITY WOULD HAVE BEEN LEGALLY ENTITLED TO

ASSERT FOR OR ON BEHALF OF SUCH HOLDER OF A PRE-CONFIRMATION DATE

CLAIM (WHETHER DIRECTLY OR DERIVATIVELY); ***PROVIDED***, ***HOWEVER***, THAT THIS

SECTION XI.B. SHALL NOT OPERATE TO WAIVE, DISCHARGE OR RELEASE THE

RIGHTS OF HOLDERS OF PRE-CONFIRMATION DATE CLAIMS TO ENFORCE THIS PLAN

AND THE CONTRACTS, INSTRUMENTS, RELEASES, AND OTHER AGREEMENTS OR

DOCUMENTS DELIVERED UNDER THIS PLAN OR ASSUMED PURSUANT TO THIS PLAN

OR ASSUMED PURSUANT TO FINAL ORDER OF THE BANKRUPTCY COURT.

The Disclosure Statement accompanying this Plan has not been approved by the Bankruptcy Court. Therefore, the distribution of the Disclosure Statement and Plan at this time is not, and should not be construed to be, the solicitation of votes on the Plan.

**C.    Injunction.**

Except as otherwise expressly provided in this Plan, all Entities who have held, hold, or may hold Pre-Confirmation Date Claims shall be permanently enjoined from and after the Confirmation Date, with respect to such Pre-Confirmation Date Claims, from:  (i) commencing or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind against the City or its property or any or all of the Indemnified Parties or any of their property; (ii) enforcing, levying, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against the City or its property or any or all of the Indemnified Parties or any of their property; (iii) creating, perfecting, or enforcing any lien or encumbrance of any kind against the City or its property or any or all of the Indemnified Parties or any of their property; (iv) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due to the City or any or all of the Indemnified Parties, except as otherwise permitted by Bankruptcy Code section 553; (v) proceeding in any manner in any place whatsoever that does not conform to or comply with the provisions of this Plan or the settlements provided for in the Plan Documents; and (vi) taking any actions to interfere with implementation or consummation of this Plan.

**D.    Term of Existing Injunctions or Stays.**

All injunctions or stays provided for in the Bankruptcy Case pursuant to Bankruptcy Code sections 105, 362, or 922, or otherwise, and in existence immediately prior to the Confirmation Date, shall remain in full force and effect until the Effective Date; and shall continue in full force and effect after the Effective Date with respect to the ADR Procedures, determination of the City's liability (or lack thereof) on any Pre-Confirmation Date Claim and the allowance or disallowance thereof.

**E.    Exculpation.**

Each of the following is an Exculpated Party under this Plan: (i) the City and each of the persons (including their staff) acting in the following capacities during the Bankruptcy Case: Mayor, City Attorney, City Manager, Assistant City Manager, member of the Common Council, and any employee of the City that submitted a declaration in support of any pleading filed by the City in the Bankruptcy Case; (ii) any of the City's financial advisors, attorneys, accountants, investment

**The Disclosure Statement accompanying this Plan has not been approved by the Bankruptcy Court. Therefore, the distribution of the Disclosure Statement and Plan at this time is not, and should not be construed to be, the solicitation of votes on the Plan.**

1   bankers or advisors, consultants, representatives and other professionals, including but not limited to

2   the following: (A) Management Partners, Inc.; (B) Urban Futures, Inc.; (C) Stradling Yocca Carlson

3   & Rauth, a Professional Corporation; (D) Law Office of Linda L. Daube, A Professional

4   Corporation, and (E) Rust Omni; (iii) the members of the Retiree Committee, (iv) U.S. Bank

5   National Association, in its capacities as indenture trustee; and (v) counsel for the Retiree

6   Committee, Bienert Miller & Katzman, PLC.  Except with respect to obligations specifically arising

7   pursuant to or preserved in this Plan, no Exculpated Party shall have or incur, any liability to any

8   person or Entity for any act taken or omitted to be taken in connection with, relating to or arising out

9   of the City's restructuring efforts and the Bankruptcy Case, including the authorization given to file

10  the Bankruptcy Case, the formulation, preparation, negotiation, dissemination, consummation,

11  implementation, confirmation or approval (as applicable) of this Plan, the solicitation of votes and

12  acceptances for this Plan, the property to be distributed under this Plan, the settlements implemented

13  under this Plan, the Exhibits, the Disclosure Statement, any contract, instrument, release or other

14  agreement or document provided for or contemplated in connection with the consummation of the

15  transactions set forth in this Plan or the management or operation of the City; ***provided, however***,

16  that nothing in this Section XI.E shall be deemed to release or exculpate any Exculpated Party for its

17  willful misconduct or gross negligence.  Each Exculpated Party shall be entitled to reasonably rely

18  upon the advice of counsel and financial advisors with respect to its duties and responsibilities under,

19  or in connection with, the Bankruptcy Case, the administration thereof and this Plan.

20  **F.      Comprehensive Settlement of Claims and Controversies.**

21          In consideration for the distributions and other benefits provided under this Plan, the

22  provisions of this Plan, including the exculpation and release provisions contained in this Section XI,

23  constitute a good faith compromise and settlement of all Claims, causes of action or controversies

24  relating to the rights that a holder of a Claim may have with respect to any Claim against the City

25  and/or the Indemnified Parties, any distribution to be made pursuant to this Plan on account of any

26  such Claim and any and all Claims or causes of action of any party arising out of or relating to the

27  Eligibility Contest.  The entry of the Confirmation Order constitutes the Bankruptcy Court's

28  approval, as of the Effective Date, of the compromise or settlement of all such Claims or

The Disclosure Statement accompanying this Plan has not been approved by the Bankruptcy Court.  Therefore, the distribution of the
Disclosure Statement and Plan at this time is not, and should not be construed to be, the solicitation of votes on the Plan.

controversies and the Bankruptcy Court's finding that all such compromises and settlements are in the best interests of the City and the holders of Claims, and are fair, equitable, and reasonable.

## XII.    RETENTION OF AND CONSENT TO JURISDICTION

Following the Effective Date, the Bankruptcy Court shall retain and have exclusive jurisdiction over any matter arising under the Bankruptcy Code and relating to the City, or arising in or related to the Bankruptcy Case or this Plan, including, without limitation:

1.      to resolve any matters related to the assumption, assumption and assignment, rejection or other disposition of any contract or lease to which the City is a party or with respect to which the City may be liable, and to hear, determine and, if necessary, liquidate any Claims arising therefrom;

2.      to enter such orders as may be necessary or appropriate to implement or consummate the provisions of this Plan, and all other contracts, settlement agreements, instruments, releases, exculpations, and other agreements or documents related to this Plan;

3.      to determine any and all motions, adversary proceedings, applications, and contested or litigated matters that may be pending on the Effective Date or that, pursuant to this Plan, may be instituted by the City after the Effective Date or that are instituted by any holder of a Claim before or after the Effective Date concerning any matter based upon, arising out of, or relating to the Bankruptcy Case, whether or not such action initially is filed in the Bankruptcy Court or any other court;

4.      to ensure that distributions to holders of Allowed Claims are accomplished as provided herein;

5.      to hear and determine any objections to Claims or to proofs of Claim filed, both before and after the Effective Date, including any objections to the classification of any Claim, and to allow, disallow, determine, liquidate, classify, estimate, or establish the priority of or secured or unsecured status of any Claim, in whole or in part;

6.      to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, reversed, or vacated;

7.      to issue such orders in aid of execution of this Plan, to the extent authorized

The Disclosure Statement accompanying this Plan has not been approved by the Bankruptcy Court.  Therefore, the distribution of the
Disclosure Statement and Plan at this time is not, and should not be construed to be, the solicitation of votes on the Plan.

by Bankruptcy Code section 1142(b);

   8. to consider any modifications of this Plan, to cure any defect or omission, or to reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order;

   9. to the extent that the City elects to bring such matters before the Bankruptcy Court, to hear and determine all disputes regarding compensation for City professionals for services rendered and expenses incurred prior to the Effective Date;

   10. to hear and determine all disputes or controversies arising in connection with or relating to this Plan or the Confirmation Order or the interpretation, implementation, or enforcement of this Plan or the Confirmation Order or the extent of any Entity's rights or obligations incurred in connection with, or released, discharged enjoined, or exculpated under, this Plan or the Confirmation Order;

   11. to issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any entity with respect to the consummation, implementation or enforcement of this Plan;

   12. to determine any other matters that may arise in connection with or are related to this Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release or other agreement or document related to this Plan or the Disclosure Statement (including whether the conditions to confirmation or the effectiveness of the Plan have been met, and any ancillary matters that are necessary or integral to the confirmation or effectiveness of the Plan, such as interpretation of the City Charter).

   13. to hear any other matter for any purpose specified in the Confirmation Order that is not inconsistent with the Bankruptcy Code;

   14. to hear and determine all disputes or controversies arising in connection with or relating to the terms or enforcement of any relevant agreements related to the Plan and Confirmation Order; and

   15. to enter a final decree closing the Bankruptcy Case.

The Disclosure Statement accompanying this Plan has not been approved by the Bankruptcy Court.  Therefore, the distribution of the Disclosure Statement and Plan at this time is not, and should not be construed to be, the solicitation of votes on the Plan.

XIII.   **CONDITIONS PRECEDENT**

      A.        <u>**Conditions Precedent to Confirmation.**</u>

      The condition precedent to confirmation of this Plan is the entry of the Confirmation Order in form and substance satisfactory to the City.

      B.        <u>**Conditions Precedent to Effective Date.**</u>

      The "effective date of this Plan," as used in Bankruptcy Code section 1129, shall not occur, and this Plan shall be of no force and effect, until the Effective Date.  The occurrence of the Effective Date is subject to the satisfaction (or waiver as set forth in Section XIII.C) of the following conditions precedent:

      1.      <u>**Confirmation Order**</u>.  The Confirmation Order shall have been entered, shall be in full force and effect, and shall be a Final Order (but the requirement that the Confirmation Order be a Final Order may be waived by the City at any time).

      2.      <u>**Plan Documents**</u>.  All agreements and instruments contemplated by, or to be entered into pursuant to, this Plan shall be in form and substance acceptable to the City; shall have been duly and validly executed and delivered, or deemed executed by the parties thereto; and all conditions to their effectiveness shall have been satisfied or waived.

      3.      <u>**1996 Refunding Bonds Amendment and 1999 Refunding Certificates of Participation Amendment.**</u>  All conditions to the effectiveness of the 1996 Refunding Bonds Amendment and the 1999 Refunding Certificates of Participation Amendment have been satisfied or waived in accordance with the terms of such amendments.

      4.      <u>**Authorizations, Consents, Etc**</u>.  The City shall have received any and all authorizations, consents, regulatory approvals, rulings, no-action letters, opinions, and documents that are necessary to implement this Plan and that are required by law, regulation or order.

      5.      <u>**Timing**</u>.  The Effective Date shall occur on the first Business Day after the City determines that all conditions precedent of Section XIII.B. are satisfied or waived.

      C.      <u>**Waiver of Conditions to Effective Date.**</u>

      The City may waive in whole or in part any condition to effectiveness of this Plan *provided*, *however*, that the City may only waive the condition to the effectiveness set forth in Section XIII.B.3

PLAN FOR THE ADJUSTMENT OF DEBTS

The Disclosure Statement accompanying this Plan has not been approved by the Bankruptcy Court.  Therefore, the distribution of the
Disclosure Statement and Plan at this time is not, and should not be construed to be, the solicitation of votes on the Plan.

with the express prior written consent of National, the 1996 Refunding Bonds Trustee (which

consent shall not be unreasonably withheld) and the 1999 Refunding Certificates of Participation

Trustee (which consent shall not be unreasonably withheld).    Any such waiver of a condition may

be effected at any time, without notice or leave or order of the Bankruptcy Court and without any

formal action, other than the filing of a notice of such waiver with the Bankruptcy Court.

### D.    Effect of Failure of Conditions.

In the event that the conditions to effectiveness of this Plan have not been timely satisfied or

waived, and upon notification submitted by the City to the Bankruptcy Court, (i) the Confirmation

Order shall be vacated, (ii) no distributions under this Plan shall be made, (iii) the City and all

holders of Claims shall be restored to the status quo ante as of the day immediately preceding the

Confirmation Date as though the Confirmation Date never occurred, and (iv) all of the City's

obligations with respect to the Claims shall remain unchanged and nothing contained herein shall be

deemed to constitute a waiver or release of any claims by or against the City or any other entity or to

prejudice in any manner the rights, remedies, or claims of the City or any entity in any further

proceedings involving the City.

### E.    No Admission of Liability.

This Plan constitutes a settlement and compromise between and among the City and various

parties.  This Plan shall not be deemed an admission or concession by any party with respect to any

factual or legal contention, right, defense, or position taken by the City.

### XIV.    MISCELLANEOUS PROVISIONS

### A.    Modification of Plan.

The City reserves the right to modify the Plan both before and after confirmation of the Plan

as permitted by Bankruptcy Code Section 1127(d) and the other applicable provisions of the

Bankruptcy Code and Bankruptcy Rules.

### B.    Dissolution of the Retiree Committee.

On the Effective Date, the Retiree Committee shall be released and discharged of and from

all further authority, duties, responsibilities, and obligations relating to and arising from and in

The Disclosure Statement accompanying this Plan has not been approved by the Bankruptcy Court. Therefore, the distribution of the Disclosure Statement and Plan at this time is not, and should not be construed to be, the solicitation of votes on the Plan.

connection with the Bankruptcy Case, and the Retiree Committee shall be deemed dissolved and its appointment terminated.

**C.** **Severability.**

If after entry of the Confirmation Order, any term or provision of this Plan is held by any court having jurisdiction, including on appeal, to be invalid, void, or unenforceable, the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding as long as the economic and legal substance of the Claims treatment and other transactions that the Plan contemplates are not affected in any manner materially adverse to the City.  At the election of and with the consent of the City, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been subsequently altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**D.** **Governing Law.**

Except where the Bankruptcy Code or other federal law applies, or where an exhibit hereto or Plan Document provides otherwise, the rights, duties, and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of California, without giving effect to principles of conflicts of laws.

**E.** **Effectuating Documents and Further Transactions.**

The City is authorized (and its appropriate officers and employees are authorized and directed) to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms, provisions and intent of this Plan.

The Disclosure Statement accompanying this Plan has not been approved by the Bankruptcy Court. Therefore, the distribution of the Disclosure Statement and Plan at this time is not, and should not be construed to be, the solicitation of votes on the Plan.

**F.      Request for Waiver of Automatic Stay of Confirmation Order.**

This Plan shall serve as a motion seeking a waiver of the automatic stay of the Confirmation Order imposed by Bankruptcy Rule 3020(e).  Any objection to this request for waiver shall be Filed and served on or before the Objection Deadline.

**G.      Notice of Effective Date.**

On or before 14 days after occurrence of the Effective Date, the City or its agent shall mail or cause to be mailed to all holders of Claims the Notice of the Effective Date, which will inform such holders of:  (i) entry of the Confirmation Order; (ii) the occurrence of the Effective Date; (iii) the assumption and rejection of the City's executory contracts and unexpired leases pursuant to this Plan, as well as the deadline for the filing of Claims arising from such rejection; (iv) the deadline established under this Plan for the filing of Professional and Administrative Claims; (v) the procedures for changing an address of record pursuant to Section IX; and (vi) such other matters as the City deems to be appropriate.

DATED:  November 25, 2015                    CITY OF SAN BERNARDINO, CALIFORNIA


By: _____
        Allen Parker
        City Manager


Submitted By:
STRADLING YOCCA CARLSON &
RAUTH, P.C.

By: */s/ Paul R. Glassman*
        Paul R. Glassman
        Fred Neufeld
        James O. Thoma
        Marianne S. Mortimer
        Kathleen D. DeVaney

Attorneys for the City of San Bernardino

44

The Disclosure Statement accompanying this Plan has not been approved by the Bankruptcy Court. Therefore, the distribution of the Disclosure Statement and Plan at this time is not, and should not be construed to be, the solicitation of votes on the Plan.

**EXHIBITS TO THE FIRST AMENDED PLAN FOR THE ADJUSTMENT OF DEBTS OF THE CITY OF SAN BERNARDINO, CALIFORNIA (NOVEMBER 25, 2015)**

**Exhibit A**      CalPERS Interim Agreement

**Exhibit B**      Retiree Settlement

**Exhibit C**      ADR Procedures