# Exhibit 26

Settlement with Pension Obligation Bond Creditors

## SETTLEMENT AGREEMENT

This Settlement Agreement (the "**Settlement Agreement**"), dated as of March **23**, 2016, is entered into by and among the City of San Bernardino, California (the "**City**"), COMMERZBANK Finance & Covered Bond S.A. (formerly known as Erste Europäische Pfandbrief-Und Kommunalkreditbank AG in Luxembourg) ("**EEPK**"), and Ambac Assurance Corporation ("**Ambac**").

### Background

The City is a debtor under chapter 9 of title 11 of the United States Code (the "**Bankruptcy Code**"), pursuant to a petition filed on August 1, 2012, commencing *In re City of San Bernardino, California*, case number 6:12-bk-28006-MJ (the "**Bankruptcy Case**"), in the United States Bankruptcy Court for the Central District of California, Riverside Division (the "**Bankruptcy Court**").

Pursuant to a Trust Agreement, dated as of August 1, 2005 (the "**Trust Agreement**"), between the City and Wells Fargo Bank, National Association, as indenture trustee (the "**Trustee**"), the City issued certain Taxable Pension Obligation Bonds (the "**Pension Obligation Bonds**") in the initial aggregate principal amount of $50,401,582.90. EEPK purchased all of the Pension Obligation Bonds, consisting of (a) 2005 Series A-1 (Standard Bonds), in the initial aggregate principal amount of $36,050,000 (the "**Series A-1 Bonds**"), and (b) 2005 Series A-2 (Capital Appreciation Bonds), in the initial aggregate principal amount of $14,351,582.90 (the "**Series A-2 Bonds**"). Ambac represents that it insures the regularly scheduled principal and interest payments with respect to the Series A-2 Bonds pursuant to Financial Guaranty Insurance Policy No. S24928BE (the "**Insurance Policy**"). Ambac and EEPK are hereinafter sometimes referred to collectively as the "**POB Creditors**."

On February 5, 2014, the Trustee, on behalf of EEPK and Ambac, filed a proof of claim in the Bankruptcy Case with respect to the Pension Obligation Bonds (the "**EEPK Proof of Claim**"). On February 5, 2014, Ambac filed a proof of claim in the Bankruptcy Case with respect to the Pension Obligation Bonds (the "**Ambac Proof of Claim**" and, together with the EEPK Proof of Claim, the "**Proofs of Claim**").

On January 7, 2015, EEPK and Ambac filed a Complaint in the Bankruptcy Court (the "**Complaint**") against the City, seeking relief under 28 U.S.C. § 2201, and commencing adversary proceeding number 6:15-ap-01004-MJ (the "**Adversary Proceeding**").

On March 13, 2015, the City filed a Motion to Dismiss the Complaint (the "**Motion to Dismiss**") under Federal Rule 12(b)(6), made applicable to the Adversary Proceeding by Bankruptcy Rule 7012(b), for failure to state a claim. EEPK and Ambac opposed the Motion to Dismiss, and the Bankruptcy Court held a hearing on May 11, 2015. On May 26, 2015, the Bankruptcy Court, entered an order (the "**Order**") granting the Motion to Dismiss. EEPK and Ambac appealed from the Order by filing a Notice of Appeal on June 8, 2014 (the "**Appeal**") to the Bankruptcy Appellate Panel for the Ninth

1

circuit (the "**BAP**").  After obtaining two extensions of the briefing schedule for the Appeal while the parties explored settlement, EEPK and Ambac filed their opening brief in the Appeal on January 5, 2016.  Ambac and EEPK have consented to extensions of time for the City to file its responsive appellate brief (the "**Response Deadline**").

Since the commencement of the Adversary Proceeding, the parties have engaged in an extensive exchange of information, and participated in in-person mediation sessions with Judge Gregory Zive (the "**Mediator**").  As a result of the sessions, on January 5, 2016, the parties reached an agreement to settle the claims asserted by EEPK and Ambac in the Adversary Proceeding and the Appeal, and the treatment of the claims of the POB Creditors under a confirmed chapter 9 plan.  The City has agreed to file an amended Plan of Adjustment of Debts that incorporates the terms of this Settlement Agreement (a "**Conforming Plan**"), and EEPK and Ambac have agreed to: vote their claims in favor of and support confirmation of such Conforming Plan; enter into additional stipulations to further extend the Response Deadline when requested by the City so long as the City is in compliance herewith; and to dismiss the Appeal with prejudice when an order confirming such Conforming Plan becomes final and non-appealable, and the Conforming Plan has become effective.

NOW, THEREFORE, in consideration of the promises contained herein and for other good and valuable consideration, the parties, intending to be legally bound, agree as follows, subject to Bankruptcy Court confirmation of the Conforming Plan:

1.  **Settlement Treatment of Claims in the Adversary Proceeding and Under the Pension Obligation Bonds.**

In full satisfaction of all claims, proofs of claim and causes of action (a) that were or could have been asserted in the Adversary Proceeding, the Appeal, or in the Bankruptcy Case by either of the POB Creditors (the "**Pension Obligation Bond Claims**"), the City shall provide in all iterations of a plan of adjustment filed after the date hereof by the City the following treatment for the Pension Obligation Bond Claims:

a.  During the first year after the effective date (the "**Effective Date**") of the Conforming Plan, the City shall not be obligated to make any payments with respect to the Pension Obligation Bond Claims.

b.  During the second year after the Effective Date, the City shall distribute to the POB Creditors with respect to the Pension Obligation Bond Claims the sum of $1,000,000 (One Million Dollars) payable in a single installment due on the first anniversary of the Effective Date.

c.  During the third year after the Effective Date, the City shall distribute to the POB Creditors with respect to the Pension Obligation Bond Claims the sum of $1,300,000 (One Million Three Hundred Thousand Dollars), payable in two equal semi-annual installments.

d.  During each of the fourth year after the Effective Date through and including the tenth year after the Effective Date, the City shall distribute to the POB Creditors

2

with respect to the Pension Obligation Bond Claims the sum of $1,375,000 (One Million Three Hundred Seventy-Five Thousand Dollars), payable each year in two equal semi-annual installments.

e.   During each of the eleventh year after the Effective Date, through and including the fifteenth year after the Effective Date, the City shall distribute to the POB Creditors with respect to the Pension Obligation Bond Claims the sum of $1,500,000 (One Million Five Hundred Thousand Dollars), payable each year in two equal semi-annual installments.

f.   During each of the sixteenth year after the Effective Date, through and including the twentieth year after the Effective Date, the City shall distribute to the POB Creditors with respect to the Pension Obligation Bond Claims the sum of $1,750,000 (One Million Seven Hundred Fifty Thousand Dollars), payable each year in two equal semi-annual installments.

g.   During each of the twenty-first year after the Effective Date, through and including the twenty-fifth year after the Effective Date, the City shall distribute to the POB Creditors with respect to the Pension Obligation Bond Claims the sum of $2,000,000 (Two Million Dollars), payable each year in two equal semi-annual installments.

h.   During each of the twenty-sixth year after the Effective Date, through and including the thirtieth year after the Effective Date, the City shall distribute to the POB Creditors with respect to the Pension Obligation Bond Claims the sum of $2,500,000 (Two Million Five Hundred Thousand Dollars), payable each year in two equal semi-annual installments.

i.   The due dates for the semi-annual installments set forth above shall be scheduled at such time as the Effective Date is known, so as to in each case occur in a single fiscal year.

j.   The documentation to be executed and delivered under the Conforming Plan to evidence and effect the City's financial obligations under paragraphs 1.a through 1.i. shall conform to the terms hereof and shall otherwise be in form and substance reasonably satisfactory to the parties hereto; and such documents shall include any necessary consent or acknowledgement of the Trustee with respect to the terms hereof and thereof to the extent required by the documents evidencing the Pension Obligation Bonds.

2.   **No Admission; Reinstatement of Positions.**

The parties hereto acknowledge that the execution of this Settlement Agreement and consummation of the transactions contemplated herein do not constitute an admission of liability or of any facts by any of such parties, but rather are intended to be in compromise and settlement of disputed and unliquidated claims. Nothing herein shall constitute or be asserted as constituting any admission of liability by or against any party hereto, and this Settlement Agreement shall not be offered or received in evidence

3

in any action or proceeding in any court, administrative action or other tribunal for any purpose other than to obtain approval of or to enforce this Settlement Agreement.

### 3.  **Confirmation of Plan.**

EEPK and Ambac shall support approval of a disclosure statement consistent with the Conforming Plan, shall vote their claims to accept the Conforming Plan when such votes are solicited pursuant to a Court-approved disclosure statement, and shall support confirmation of the Conforming Plan. As long as the City complies with this Settlement Agreement, EEPK and Ambac shall consent and stipulate to further extensions of the Response Deadline when requested by the City and shall dismiss the Appeal with prejudice when an order confirming the Conforming Plan becomes final and non-appealable and the Conforming Plan has become effective.

The City shall seek confirmation of the Conforming Plan as soon as reasonably practicable, taking into consideration developments in the City's chapter 9 case and other possible material constraints, and shall use reasonable efforts to achieve confirmation of such Conforming Plan by December 31, 2016. Any dispute over the City's progress towards confirmation of a Conforming Plan shall be resolved pursuant to the dispute resolution procedures in paragraph 8 below. In the event that (1) the City's chapter 9 case is dismissed, (2) the San Bernardino Professional Firefighters, Local 891 ("SBCPF"), San Bernardino Police Officers Association or the California Public Employees' Retirement System has been terminated or released from its respective settlement with the City or, the City does not annex into the San Bernardino County Fire Protection District as contemplated by the settlement agreement dated in February 2016 amongst the City, the SBCPF and others and, at the request of both of the POB Creditors, the Bankruptcy Court determines that any such event would render it reasonably likely that the Conforming Plan will not be confirmed or become effective, (3) the Conforming Plan is not confirmed, or (4) the Conforming Plan is confirmed but fails to become effective, then this Settlement Agreement shall be deemed null and void, no party hereto shall have any obligation to any other party arising out of this Settlement Agreement, and the parties hereto shall be returned to the respective positions they were in prior to the execution of this Settlement Agreement.

Until approval of a disclosure statement consistent with the Conforming Plan, this Settlement Agreement and the negotiation of the terms hereof is not a solicitation of votes in favor of any chapter 9 plan, and Ambac's and EEPK's agreement herein to vote in favor of the Conforming Plan is subject to the prior approval of a disclosure statement consistent with a Conforming Plan by the Bankruptcy Court.

### 4.  **Withdrawal of Appeal; Releases.**

At such time as an order of the Bankruptcy Court confirming the Conforming Plan becomes a final, non-appealable order and the Conforming Plan has become effective (the "**Release Date**"):

a.      EEPK and Ambac shall dismiss the Appeal with prejudice;

4

b.      The POB Creditors on behalf of themselves and their respective present and former directors, officers, employees, agents, representatives, advisors, and affiliates (collectively the "**POB Parties**"), shall be deemed to release and forever discharge the City and its present and former elected and appointed officials, employees, agents, representatives, and advisors (the "**City Parties**") from any and all claims, causes of action, liabilities and obligations arising under or in connection with the Pension Obligation Bonds, other than the claims, causes of action, liabilities, and obligations arising under this Settlement Agreement (and attendant documents referenced in paragraph 1.j. hereof) and the Conforming Plan;

c.      The City Parties shall be deemed to release and forever discharge the POB Parties from any and all claims, causes of action, liabilities, and obligations arising under or in connection with the Pension Obligation Bonds, other than the claims, causes of action, liabilities, and obligations arising under this Settlement Agreement (and attendant documents referenced in paragraph 1.j. hereof) and the Conforming Plan;

d.      The release of the City Parties contained herein shall be deemed to include, or, if required to be effective, such of the POB Parties as have the right to direct the Trustee shall direct the Trustee at closing of the documents referenced in paragraph 1.j. hereof (with the consent of all parties hereto) to deliver a release by the Trustee, in its capacity as trustee under the Trust Agreement, of all claims, causes of action, liabilities and obligations arising under or in connection with the Pension Obligation Bonds, other than the claims, causes of action, liabilities, and obligations arising under this Settlement Agreement (and attendant documents referenced in paragraph 1.j. hereof) and the Conforming Plan.

e.      With respect to the releases contained in paragraphs 4.b, 4.c. and 4.d. hereof, the POB Parties and the City Parties each hereby stipulate and agree that upon the Release Date they shall have expressly waived the provisions, rights, and benefits of California Civil Code Section 1542, or any other similar state law, federal law, or principle of common law, which may have the effect of limiting the releases set forth above.  Section 1542 of the California Civil Code provides:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

5. **Representations.** Each party hereto hereby represents and warrants that: (a) such party has not heretofore assigned or transferred or purported to transfer or assign any claim settled or released hereby; (b) such party, subject to Bankruptcy Court approval, has all corporate, governmental, and other necessary power and authority to enter into this Settlement Agreement and to perform its obligations hereunder, (c) the individual signing this Settlement Agreement on behalf of such party has been duly authorized to so execute and deliver this Settlement Agreement; (d) such party has

carefully read this Settlement Agreement and understands the contents hereof, and (e) such party has been represented by counsel throughout the negotiation of this Settlement Agreement, and has freely and voluntarily entered into this Settlement Agreement without any threat, coercion, or intimidation by any person, or any promise or inducement not set forth herein.

6. **Future Cooperation.** The parties hereto agree to cooperate fully, to execute any and all supplementary documents, and to take all additional actions that may be necessary or appropriate, to give full force and effect to the terms and intent of this Settlement Agreement.

7. **Fees and Costs.** The parties hereto shall each bear their own respective attorney fees and costs arising in connection with the Appeal and this Settlement Agreement, including the execution, delivery, and performance hereof.

8. **Governing Law; Submission to Jurisdiction.** This Settlement Agreement shall be governed by and interpreted in accordance with the provisions of the Bankruptcy Code and, where not inconsistent therewith, the laws of the State of California, without giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction. Each of the parties hereto hereby irrevocably consents to the jurisdiction of the Bankruptcy Court with respect to any action to enforce the terms or provisions of this Settlement Agreement, and expressly waives any right to commence any such action in any other forum; provided, however, that any dispute regarding the interpretation of this Settlement Agreement shall first be submitted to the Mediator for an attempt by the parties to resolve the dispute consensually.

9. **Rules of Construction.** The parties hereto stipulate and agree that this Settlement Agreement was negotiated on an arm's-length basis between parties of equal bargaining power. Accordingly, this Settlement Agreement shall not be construed in favor of or against any of the parties.

10. **Integration and Modification.** The foregoing constitutes the entire agreement between the parties, and there are no written or oral understandings, promises, or agreements directly or indirectly related to this Settlement Agreement that are not incorporated herein in full. This Settlement Agreement may not be modified except in a writing signed by the parties and approved by the Bankruptcy Court.

11. **Counterparts.** This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Copies of originally signed counterparts of this Settlement Agreement may be delivered by facsimile or by "PDF" file as an attachment to electronic mail, and each such signature shall be treated as an original signature.

12. **Headings.** The headings contained in this Settlement Agreement are for convenience only and shall not affect the interpretation of it.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their duly authorized representatives as of the day and year first above written.

THE CITY OF SAN BERNARDINO

By: _Mark Scott_____

   Name: _Mark Scott_
   Title: _City Manager_

COMMERZBANK FINANCE & COVERED BOND S.A. (FORMERLY KNOWN AS ERSTE EUROPÄISCHE PFANDBRIEF-UND KOMMUNALKREDITBANK AG IN LUXEMBURG)

By:_____

   Name:
   Title:

AMBAC ASSURANCE CORPORATION

By:_____

   Name:
   Title:

7

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their duly authorized representatives as of the day and year first above written.

THE CITY OF SAN BERNARDINO

By:_____

    Name:

    Title:

COMMERZBANK FINANCE & COVERED BOND S.A. (FORMERLY KNOWN AS ERSTE EUROPÄISCHE PFANDBRIEF- UND KOMMUNALKREDITBANK AG IN LUXEMBURG)

By:_____

    Name: THOMAS PEHR    André Heidloff

    Title:

AMBAC ASSURANCE CORPORATION

By:_____

    Name:

    Title:

7

1765

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their duly authorized representatives as of the day and year first above written.

THE CITY OF SAN BERNARDINO

By:_____
    Name:
    Title:

COMMERZBANK FINANCE &
COVERED BOND S.A. (FORMERLY
KNOWN AS ERSTE EUROPÄISCHE
PFANDBRIEF- UND
KOMMUNALKREDITBANK AG IN
LUXEMBURG)

By:_____
    Name:
    Title:

AMBAC ASSURANCE CORPORATION

By: *Stephen P. Rochford*
    Name: STEPHEN P ROCHFORD
    Title: MANAGING DIRECTOR

7

1766